# Exhibit 26



**NATIONAL GEOSPATIAL-INTELLIGENCE AGENCY**

7500 GEOINT Drive
Springfield, Virginia 22150

U-081-14/ODE

Office of Diversity Management and                    March 13, 2014
Equal Employment Opportunity

Mr. Stan Laber
9412 Athens Road
Fairfax, VA 22032

Notice of Receipt in Complaint of
Stan Laber vs. Chuck Hagel,
Secretary of Defense, NGA Case# NGAE-14-O03

Dear Mr. Laber:

This letter acknowledges receipt of your discrimination complaint filed on March 10, 2014 dated March 10, 2014 and provides you a written notice of your rights and the time requirements for exercising those rights.

If the issues of your complaint are accepted, the complaint will enter into investigation. The investigation must be completed within 180 calendar days of the filing of this complaint unless you agree in writing to extend the period to an additional 90 calendar days. You will receive a copy of the investigative file.

If the issues of your complaint are dismissed, the dismissal is considered to be a final agency decision on the complaint, and you will be advised at that time of your rights of appeal. If part of the complaint is dismissed, the dismissed portion will not be investigated, but will remain in the complaint file. In a later stage of review, the Equal Employment Opportunity Commission (EEOC) has the authority to disagree with the partial dismissal and examine the complaint in its entirety. You will be notified in writing if this occurs.

If at any time a settlement of this complaint is reached, the terms of the settlement will be agreed to in writing by all parties, and you will be given a copy of the settlement terms. If the complaint remains unresolved, you will receive a copy of the Report of Investigation upon completion of the investigation.

You will then have 30 calendar days to request (a) a hearing by an EEOC administrative judge who will issue findings and conclusions, or (b) a final agency decision on the existing complaint file without a hearing.

000053

If you desire a hearing, you must request it directly from the EEOC. If you desire a final agency decision without a hearing, you must send written notification of such election within 30 calendar days of your receipt of this letter to the National Geospatial-Intelligence Agency, Office of Diversity Management and Equal Employment Opportunity; ATTN: Ms. Patsy A. Coleman/ Mail Stop L-11; 3838 Vogel Road; Arnold, MO 63010-6238

If you request a hearing and the EEOC administrative judge determines that there are no issues of material fact, the administrative judge may issue findings and conclusions without holding a hearing. Should the administrative judge make such a determination, you will be notified and provided an opportunity to respond in writing within 15 calendar days of the notice.

If, within 30 calendar days after you receive the investigative file, you fail to request an EEOC hearing or a final agency decision, a final agency decision on the merits of the complaint will be made on the available record.

If you are dissatisfied with the final agency action (with or without a hearing) you may file a notice of appeal to the EEOC Office of Federal Operations (OFO) within 30 days after receiving the final NGA action. You must provide a copy of the appeal to the undersigned. Also, you may submit a statement to support your appeal to the OFO, with a copy to the undersigned, within 30 calendar days after filing the notice of appeal. In or attached to the appeal to the NGA Office of Diversity Management and Equal Employment Opportunity with the date and method of service.

Any appeal to the EEOC should be addressed to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013.

Instead of appealing to the EEOC, you may file a civil action in the proper U.S. District Court within 90 calendar days after receiving the final NGA decision, or if NGA has not issued a final decision on this complaint, after 180 calendar days from the date the formal complaint was filed. If you file a civil action, you must name the appropriate department head (Chuck Hagel, Secretary of Defense) or agency head (Ms. Letitia A. Long, Director of National Geospatial-Intelligence Agency) as the defendant and provide his or her official title. Failure to name the department head or agency head or to state his/her official title may result in the dismissal of your case.

If you decide to appeal to the EEOC OFO, you will still have the opportunity to file a civil action in a U.S. District Court within 90 calendar days after receiving EEOC's final decision or 180 calendar days after the date of your initial appeal to the EEOC if the EEOC has not rendered a final decision.

2

**42**

Enclosed is a copy of the EEO Counselor's Report completed by the EEO Counselor during the informal stage of your complaint.  If you have any questions, please contact Mrs. Gloria J. Cunningham, EEO Program Manager by telephone at (571) 557-9692, by fax to (571) 558-3172, by e-mail to Gloria.J.Cunningham@nga.mil, or by mail to National Geospatial-Intelligence Agency, Office of Diversity Management Equal Employment Opportunity Attn: Mrs. Gloria J. Cunningham, Mail Stop N72, 3838 Vogel Road, Arnold, MO 63010-6238.

Sincerely,

Patsy A. Coleman
Chief, Equal Employment Opportunity Division
Office of Diversity Management and
Equal Employment Opportunity

Enclosure:
EEO Counselor's Report

3

**43**

000055

# Exhibit 27



**NATIONAL GEOSPATIAL-INTELLIGENCE AGENCY**
7500 GEOINT Drive
Springfield, Virginia 22150

U-089-14/ODE

Office of Diversity Management and                         April 2, 2014
Equal Employment Opportunity

Mr. Stan Laber                          **(Stan Laber v.**
9412 Athens Road                        **(Chuck Hagel, Secretary of Defense**
Fairfax, VA 22032                       **(NGA Case Number:  NGAE-14-O03**

SUBJECT:  Notice of Partial Acceptance of Discrimination Complaint

Dear Mr. Laber:

This refers to your discrimination complaint filed on March 10, 2014.  You initially contacted the Office of Diversity Management and Equal Employment Opportunity on October 15, 2013.  You elected to participate in the Alternative Dispute Resolution (ADR) process on November 14, 2014.  Mediation was held on February 11, 2014. There was no resolution to your complaint.  You received the Notice of Right to File a Formal Complaint of Discrimination on February 18, 2014.

In your formal complaint of discrimination filed on March 10, 2014, and received on March 10, 2014, you alleged that you were discriminated against by the National Geospatial-Intelligence Agency on the bases of age (February 1945), disability (refuse to disclose nature of disability), religion (Jewish), sex (male), and reprisal (request for information covered under the Freedom of Information Act and Privacy Act) when on September 6, 2013, you were not interviewed or selected for the position of Contract Specialist, Pay Band 5, AON 20130928.

I have reviewed all of the information in the case file and have accepted your complaint based on age, sex, and religion, but have dismissed your claim based on reprisal. Discrimination based on reprisal is prohibited by Title VII of the Civil Rights Act of 1964. Reprisal occurs when employees are treated differently because they are, or were, involved in the EEO complaint process or expressed opposition to discrimination.  Upon review of the allegations of your formal complaint, you have failed to allege an adverse action was taken against you based on prohibited protected activity that would be covered by applicable statutes and as such this claim has been dismissed pursuant to 29 Code of Federal Regulations (C.F.R.)§ 1614.107 (a) (1).

I have also dismissed your claim based on disability for failure to state a claim pursuant to 29 (C.F.R.) § 1614.107 (a) (1).  In order to state a claim for disability discrimination as a protected basis you must identify the nature of your claimed disability and state whether it is a physical or mental disability.

**45**

You stated in an email to the EEO counselor dated March 26, 2014, that disclosing your disability as physical or mental would be considered private medical information and that you would only provide this information to medical personnel. Due to your failure to provide information to the EEO Counselor regarding your potential disability claim, the Agency is unable to determine if you may be a qualified individual with a disability sufficient to state a claim pursuant to 29 C.F.R.§ 1614.107(a)(1). Therefore, your claim of disability discrimination is hereby dismissed.

The reprisal and disability claims will not be investigated, but will be included in the investigative file. An Administrative Judge shall review the dismissal determination if you request a hearing on the remainder of the complaint, but you may not appeal the dismissal until a final action is taken by the agency on the remainder of the complaint.

The acceptance of your complaint for investigation is based upon an application of regulatory criteria contained in 29 C.F.R. § 1614.107 and does not reflect a decision on the merits of your complaint. Any decision on the merits of your complaint will be made later in the formal complaint process by a third party authorized to do so.

If you believe the claims in this complaint have not been correctly identified, please notify me in writing within five calendar days after you receive this letter and specify why you believe the claims have not been correctly identified. If you fail to contact me, I will conclude that you agree that the claims have been properly identified above. Any statement submitted in this regard will be placed in the complaint file.

Your complaint will be assigned to an investigator for formal investigation of the accepted claims. Once assigned, you will be informed of the investigator's identity and when the investigation is expected to begin. The investigation must be completed within 180 calendar days of the filing of this complaint, unless you agree in writing to extend the period an additional 90 calendar days. In accordance with 29 CFR, Part 1614.108(e), the Agency may unilaterally extend the 180-day time period, or any period, for not more than 30 calendar days when it must sanitize a complaint file that contains classified information. If the need for an extension should arise, you will be informed of the extension.

After completion of the investigation and if the case has not been settled, the National Geospatial-Intelligence Agency will provide you with the Notice of Post-Investigative Options and a copy of the investigative file. This notice will inform you that you have the right to, within 30 calendar days from your receipt of the notice, (1) request a hearing before an Equal Employment Opportunity Commissioner (EEOC) Administrative Judge, who will issue a decision subject to final action by the Agency, or (2) the right to request a final agency decision be issued on the record.
You may also request a hearing at any time after 180 days have elapsed from the filing of this complaint. The enclosed Request for a Hearing form should be sent directly to the Equal Employment Opportunity Commission, Washington Field Office Hearings Unit, 131 M Street, NE, Fourth Floor, Suite 4NWO2F, Washington, DC 20507-0100.

000058

A copy of the Request for a Hearing form must be provided to the National Geospatial-Intelligence; Office of Diversity Management and Equal Employment Opportunity, at the address indicated on the Request for a Hearing form.

You may amend a complaint at any time prior to the conclusion of the investigation to include claims like or related to those identified above. When a complaint has been amended, the agency is required to conduct an impartial investigation within 180 calendar days after the last amendment of the complaint or 360 calendar days after the filing of the original complaint. You may request a hearing from an EEOC Administrative Judge after 180 calendar days have passed from the filing of the original complaint if the investigation has not been completed. Any amendment must be submitted in writing to the undersigned for a determination as to whether the new claim(s) warrants inclusion in the pending complaint or if processing a new complaint is necessary. Additionally, after requesting a hearing, you have the right to file a motion with the Administrative Judge to amend the complaint to include claims like or related to those raised in the original complaint.

If a new claim(s) arises, not like or related to a previously filed complaint and provide(s) the basis for a separate complaint, the new claim(s) will be referred to an EEO counselor and will be subject to all regulatory requirements regarding the EEO complaint process. In cases where complaints are consolidated, the agency is required to conduct an investigation within 180 calendar days after the filing of the last complaint or 360 calendar days after the filing of the original complaint. You may request a hearing from an EEOC administrative judge on the consolidated complaint any time after 180 calendar days from the date of the filing of the first complaint.

If you fail to request an EEOC hearing or a final agency decision from the Agency within 30 calendar days after you receive the report of investigation, the processing of this case will proceed, and the Office of Diversity Management and Equal Employment Opportunity will submit the entire complaint file to the EEO Officer or designee for a final agency decision on the merits of the complaint based on the record as it stands.

If you are dissatisfied with the final agency decision/action (with or without a hearing), you may file a notice of appeal to the Equal Employment Opportunity Commission (EEOC), Office of Federal Operations, P.O. Box 77960, Washington, D.C. 20013 within 30 calendar days after receiving the final agency decision/action with a copy to the National Geospatial-Intelligence Agency; Office of Diversity Management and Equal Employment Opportunity; Attn: Patsy A. Coleman, Mail Stop L-1; 3838 Vogel Road; Arnold, MO 63010-6238. Also, any statement in support of the appeal should be sent to the Equal Employment Opportunity Commissioner; Office of Federal Operations, with a copy to the National Geospatial-Intelligence Agency; Office of Diversity Management and Equal Employment Opportunity, within 30 calendar days after filing the notice of appeal. Attached to the appeal to the EEOC, you must certify that a copy of the appeal was served to the National Geospatial-Intelligence; Office of Diversity Management and Equal Employment Opportunity with the date and method of service used to send the appeal.

000059

Instead of appealing to the EEOC, you may file a civil action in the proper U.S. District Court within 90 calendar days after receiving the final agency decision/action, or, if the agency has not issued a final decision on this complaint, after 180 calendar days from the date the formal complaint was filed.  If you file a civil action under Title VII of the Civil Rights Act of 1964, as amended, or the Rehabilitation Act of 1973, as amended, and you do not have or are unable to obtain the services of an attorney, you may request the court to appoint an attorney to represent you.  In such circumstances, the court may appoint an attorney and may authorize the commencement of the action without the payment of fees, costs, or security.  Any such request must be made within the above referenced 90-day time limit for filing suit and in such form and manner as the court may require.

You are further notified that if a civil action is filed by you, you must name the appropriate department head (Chuck Hagel, Secretary of Defense) or agency head (Ms. Letitia A. Long, Director of the National Geospatial-Intelligence Agency) as the defendant and provide his or her official title.  Failure to name the department head or agency head or to state his or her official title may result in the dismissal of your case.

If you decide to appeal to the EEOC OFO, you will still have an opportunity to file a civil action in U.S. District Court within 90 calendar days after receiving the EEOC final decision or 180 calendar days after the date of filing the appeal with the EEOC if there has been no final decision by the EEOC.

The agency representative in this complaint is Edward A. Kendall, Jr.; His mailing address is NGA/Office of General Counsel; Mail Stop S71 OGCA; 7500 GEOINT Drive, Springfield, VA 22150; Phone: 571-557-7540, fax number: 571-558-3312, and e-mail address is edward.a.kendall@nga.mil.  You are advised that copies of all official correspondence must be served to the EEO Officer and to the agency representative.

If at any time a settlement or resolution of this formal complaint is reached, the terms of the settlement or resolution will be agreed to in writing by all parties and you will be given a copy.

If you have any questions, please contact Mrs. Gloria J. Cunningham, EEO Specialist by telephone at (571) 557-9692; by fax to (571-558-3172; by e-mail to gloria.j.cunningham@nga.mil, or by mail to National Geospatial-Intelligence Agency; Office of Diversity Management and Equal Employment Opportunity; Attn: Mrs. Gloria Cunningham, Mail Stop L-11, 3838 Vogel Rd, Arnold, MO 63010.

000060

Sincerely,

Patsy A. Coleman
Chief, Equal Employment Opportunity Division
Office of Diversity Management and
Equal Employment Opportunity

Enclosure:
Request for Hearing

cc:  Edward A. Kendall, Agency Representative

**49**

# Exhibit 28

# REPORT OF INVESTIGATION

**Agency Number:**                    NGAE-14-O03

**Activity Filed Against:**            National Geospatial-
                                       Intelligence Agency (NGA)
                                       Office of the Director (D)
                                       Office of the Deputy Director (DD)
                                       Office of Contract Services (OCS)
                                       Compliance and Operations
                                       Group (OCSP)
                                       Springfield, VA

**Complainant's Name and Address:**    Stan Laber
                                       9412 Athens Road
                                       Fairfax, VA 22032

**Representative's Name and Address:** None

**Date Complaint Filed:**              March 10, 2014

**Dates of Investigation:**            July 3 – August 8, 2014

**Claim[1]:** Was Complainant discriminated against on the bases of age (Born ███
1945), religion (Jewish), sex (male), disability (unstated), and reprisal (protected EEO
activity[2]) when, on September 6, 2013 he was not interviewed or selected for the position
of Contract Specialist, Pay Band 05 (AON 20130928) (Investigative File [IF] pages [pp]
45-46, 53-64)?

## PART I - BACKGROUND

During the period at issue, Complainant was an NGA employee and Contract Specialist -
DAWIA, IA-1102-04, in the OCS Policy Branch (OCSP) (IF page [p] 53; see employee
data at IF p 156; see OCS Organizational Charts at IF pp 140-151). The Vacancy
Announcement (20130928) for Contract Specialist - DAWIA, IA-1102-05 opened on
June 24 and closed on July 5, 2013 (see IF pp 166-169). The selectee for the position at
issue was expected to develop, plan, organize, manage, solicit, negotiate, award,
terminate, administer, and close out acquisitions to meet customer needs. The incumbent

---

[1] Complainant sought to include disability as a basis although he refused to identify what his disabling
condition was. Complainant stated in testimony that his EEO activity is "known," although no one hassled
him about it.

would be expected to interact with contractors and customers to meet customer needs. The incumbent would possibly be required to hold a warrant authorizing them to obligate government funds (see Position Description [PD] at IF pp 164-165).

One member of the selection panel for Contract Specialist was **Mr. Richard Unis**, Contracts Division Chief (OCSR), IA-1102-05, OCS, NGA, Springfield, VA (IF pp 81-82). A second member of the selection panel for Contract Specialist was **Ms. Tammy Verdon**, Supervisory Contract Specialist, IA-1102-05, Chief, Contracting Division (OCSU), OCS, NGA, Springfield, VA (IF pp 92-93). A third member of the selection panel for Contract Specialist was **Ms. Johnetta Williams**, Supervisory Contract Specialist, IA-1102-05, Division Chief, Office of Contract Services (OCSJ), OCS, NGA, Springfield, VA (IF pp 105-106). The selecting official for the position of Contract Specialist was **Mr. Daniel Hinchberger**, Group Chief, IA-1102-DISL, OCS, NGA, Springfield, VA. Mr. Hinchberger was also Complainant's second-level supervisor (IF p 66). The approving official for the position of Contract Specialist was **Ms. Tonya Crawford**, Director of Contracts, SES-III, OCS, NGA, Springfield, VA (IF p 117). Between September 6 and 9, 2013, Complainant learned that he was not selected for the position at issue (see IF pp 137-138, 247-248). Effective September 22, 2013, Ms. Karen Eichelberger was officially placed into the position at issue (see IF pp 245-246).

For detailed information on the investigative process, witnesses called, and documents collected, see the Investigator's Declaration (IF pp 292-293).

## PART II – SUMMARY OF EVIDENCE

**Complainant's testimony and documentary evidence:**
Complainant assumes that Mr. Hinchberger, Mr. Unis, Ms. Verdon, Ms. Williams, and Ms. Crawford were responsible for discriminating against him (IF pp 53-55). Complainant filed between 50 and 100 EEO complaints between 1979 and 2006, when he joined NGA. This claim is the first he has filed since he joined NGA, and Complainant emphasizes that he is not alleging "instant" reprisal. Complainant asserts that NGA officials were aware of his EEO activity when the selection action took place. Complainant does not know how or when NGA agency officials learned about his history of EEO activity although he is certain they must have known due to the volume of claims he has filed. Complainant believes that NGA officials think his body of EEO complaints is frivolous. With respect to the selection action at issue, Complainant believes NGA officials did not select him because of his EEO complaint history. Generally, NGA officials held a negative opinion of Complainant, presuming that his managerial style and ability would be overwhelmingly negative. Specifically, NGA officials did not want to contend with non-selection complaint, so they made sure that Complainant would not even be interviewed. As a result, Complainant was harmed by not being selected for the position (IF pp 55-57, 63).

Complainant alleges he was discriminated against based on a physical disability, although he will not disclose or describe what disabling condition he has. Because Complainant

will not disclose the details of his condition, he cannot explain how or why he was discriminated against because of it. Complainant does not believe anyone in NGA had knowledge of his disabling condition. Nevertheless, he believes his disabling condition may have been a factor in the non-selection. Although no one at NGA ever said anything to him about having a disability, Complainant thinks that NGA employees perceived that his behavior was driven by a disabling condition (IF p 63).

Complainant asserts that he should have been interviewed and selected for the position because, in his mind, he had more experience, training, and knowledge than anyone inside or outside of government service; he was also the oldest person who applied (IF p 58; see Complainant's resume at IF pp 176-180). Complainant acknowledges that he does not know anything about the candidates who applied; he did not see their application materials or have knowledge about their qualifications or personal traits. Nevertheless, Complainant believes he is far superior to the selectee and anyone who passed the threshold to be interviewed. Complainant believes it is impossible that any other applicant could have had the number of DAWIA certificates he held, or have more formal education than he did; Complainant points to his completion of more than one Acquisition Leadership Program as an example. At one time or another Complainant worked in five different positions that were relevant to the position at issue, in five different contracting offices (IF pp 58-59).

Complainant believes that NGA agency officials scored him unfairly and inaccurately during the selection process. Complainant acknowledges he has not seen the scoring created by the selection panel. He presumes, however, that the panel did not score him accurately according to his eminent qualifications. NGA officials must have scored his application based on their opinion of him rather than on the merits of his qualifications. The position at issue was the first at NGA for which Complainant applied but was not selected for an interview. Complainant cannot believe agency officials could have objectively scored him lower than the applicants who were selected for interviews. Complainant has no witnesses or concrete proof he was discriminated against based on his age, religion, sex, disability, or EEO activity. However, Complainant is convinced that NGA is a top-down organization in which agency officials act with impunity. In order to avoid interviewing Complainant, NGA officials must have deliberately scored him lower than others, and then drew the line for interviews above him on the list of ranked applicants. There is no other scenario by which Complainant could have been objectively excluded from being interviewed (IF pp 59-60).

Complainant alleges that OCS leadership prefers younger employees and leaders such as **Mr. Johnathan Mostowski**[3] (IF p 61). OCS leadership has a history of shoving older employees into dead-end positions and not promoting them (IF p 61). Although Complainant does not know the religion of any applicants for the position at issue, he believes he is the only NGA employee who exhibits the religious dress and behaviors that he does. As such, Complainant presumes that no one else who applied had his religious

---

[3] Although the EEO Office submitted demographic data on OCS employees, the names of employees were withheld. As a result the Investigator has no way of definitively identifying Mr. Mostowki's  position title, pay plan, job series, grade, organization, age, religion, sex, known disability or EEO activity.

characteristics (IF pp 61-62). Complainant alleges that he is viewed as professionally uncooperative when he refuses to do something in the workplace based on his religious values and tenants. Complainant does not compare himself to any female candidates who were interviewed or selected; he is alleging discrimination based on sex so that any future allegations are not dismissed because of failure to state them at the earliest possible opportunity. Complainant believes that most selectees in OCS are women with military experience (IF pp 62-63).

**Management's testimony and documentary evidence:**
**Mr. Hinchberger (born 1964, [religion] none, male)** regards Complainant to be a Jewish male in his early sixties. Mr. Hinchberger has no knowledge of Complainant's disabling condition; he first learned about Complainant's EEO activity five or six months ago (IF pp 66-68). The referral certificate contained no information about applicants' age, religion, sex, disabilities, or EEO activity (IF pp 68-70; see agency records of applicants' demographic data[4] at IF pp 282-286, 288-290). Each member of the selection panel rated and ranked the applicants' resumes. If two or more panel members rate an applicant more than one point apart, the panel must convene to discuss their rating decisions. After the resume scores are consolidated and averaged, the panel meets to identify a logical break point in the overall numeric rankings, to decide who will be interviewed. In this case, the panel decided to interview the top seven of 16 referred candidates; the break point for interviews was a score of seven or higher (IF pp 68-70; see IF p 187).

Mr. Hinchberger states that all four panel members independently rated Complainant's resume as "5," which meant his overall score was also a "5" (IF p 70; see Complainant's resume at IF pp 176-180). Three applicants scored "4" or lower, while three others received average scores of "5," like Complainant. Ten applicants received scores of "6" or higher. The selectee, Ms. Eichelberger received an average score of "9," which was the highest of all applicants. Overall, Complainant was rated in the bottom-third of all applicants reviewed (IF p 70; see Ms. Eichelberger's resume at IF pp 172-175). The panel decided to interview the top seven candidates because there was a clear break at eight to sixteen. Seven interviews was a large pool of solid candidates, and the panel felt it was unnecessary and impractical to interview all 16. The seven candidates who were interviewed included men and women in their mid-30's to early-50's. The nine applicants who were not interviewed included men and women who were in their early 30's to early-60's. The religion, disability, and EEO activity of all candidates was unknown (IF pp 71-731; see panel members' interview notes at IF pp 188-244).

Mr. Hinchberger explains that Band 05 employees are expected to supervise 3-15 people. Complainant had none (or very limited) supervisory experience in an operational contracting role. Despite his current title as a Supervisory Contract Specialist, Complainant's position is not an operational contracting role; instead, he administers the NGA Contracting Officers Representative (COR) program. Although Complainant had a leadership role in one operational contracting position, it was as a "Team Lead" which is only an informal, quasi-supervisory position; at most, he supervised only one or two

---

[4] This demographic data was collected after the selection action at the request of the Investigator.

employees.  Complainant's lack of substantive and substantial supervisory experience was the greatest weakness of his application.  Other applicants, including the selectee has a greater degree of supervisory experience and at a higher level.  Although Complainant had decent contracting experience, it was not of the same depth or breadth as other available candidates (IF pp 70-71).  By contrast, Ms. Eichelberger had enormous contracting and source-selection experience.  Ms. Eichelberger has also successfully managed large teams at the Division level; as Deputy Division Chief of OCS-R she managed over 20 people.  The Panel recommended Ms. Eichelberger for selection, and Ms. Crawford concurred on the selection; Ms. Crawford had no role in reviewing resumes or deliberating over candidates (IF p 72; see selection recommendation at IF p 170).  Complainant's personal traits and EEO activity played no role in the decision not to interview or select him for the position (see IF pp 72-77).

**Mr. Unis (born 1962, Protestant Christian [Lutheran], male)** regards Complainant to be a Jewish male around sixty years of age.  Mr. Unis has no knowledge of Complainant's disabling condition; he first learned about Complainant's EEO activity in April 2014 (IF pp 81-83).  Mr. Unis attests to the same information as Mr. Hinchberger regarding the selection process (see IF pp 83-90).  The vacant position was identified as one of the most senior within the office of contracts, and the panel was looking for an applicant with significant breadth and depth of contract experience, particularly within multiple buying divisions of NGA.  Complainant's experience, duties, and assignments were outside of the normal buying realm; his source-selection experience on the international team had been restricted to Information Technology (IT) (IF p 83).  Complainant's personal traits and EEO activity played no role in the decision not to interview or select him for the position (IF pp 85-87).

**Ms. Verdon (born 1960, Non-practicing Catholic, female)** regards Complainant to be a Jewish male who is slightly younger than herself.  Ms. Verdon has no knowledge of Complainant's disabling condition; she first learned about Complainant's EEO activity in April 2014 (IF pp 92-94).  Ms. Verdon attests to the same information as Mr. Hinchberger and Mr. Unis regarding the selection process (IF pp 94-102).  The vacancy was set to fill a senior leadership position that required contracting and leadership experience as well as strategic thinking/agility, and the ability to lead large groups of people.  The weakest part of Complainant's application was his lack of leadership and strategic involvement; leading and managing medium and large teams across organizational lines (IF p 95).  At one point Complainant approached Ms. Williams for feedback about why he was not selected, although the end of the fiscal year precluded both of them from discussing the selection outcome (IF pp 94-95).  By contrast, Ms. Eichelberger had been in leadership positions at least since 2002 (IF pp 95-96).  Complainant's personal traits and EEO activity played no role in the decision not to interview or select him for the position (IF pp 97-99).

**Ms. Williams (born 1959, Catholic, female)** regards Complainant to be a Jewish male in his mid-sixties. Ms. Williams has no knowledge of Complainant's disabling condition; she first learned about Complainant's EEO activity in June 2014 (IF pp 105-107).  Ms. Williams attests to the same information as Mr. Hinchberger, Mr. Unis, and Ms. Verdon

regarding the selection process.  Ms. Williams does not recall the specifics of rating or ranking Complainant's resume, although she recalls that he did not make the cutoff for the interviews (IF pp 107-114).  Complainant was not lacking any qualifications for the position per se; his application was just not as strong as those of the candidates who were interviewed.  Ms. Eichelberger had served as a Deputy Division Chief and been involved in a lot of different projects.  Ms. Eichelberger had worked on major contracts of great significance to the agency, she had mentored other employees, and she had a strong grasp of contracting and its regulations (IF pp 107-111).  Complainant's personal traits and EEO activity played no role in the decision not to interview or select him for the position (IF pp 108-110).

**Ms. Crawford (born 1971, Christian, female)** regards Complainant to be a Jewish male; she does not know his age.  Ms. Crawford has no knowledge of Complainant's disabling condition; she first learned about Complainant's EEO activity sometime after April 2014 (IF pp 116-117).  As part of her role as approving official, Ms. Crawford checked to ensure that the selection panel had complied with agency rules on diversity in hiring, which it had.  Ms. Crawford also reviewed the panel's procedures for assessing applicant's skills and qualifications; she concluded that they had properly rated and ranked the applicants and established a cutoff for deciding on interviews.  Ms. Crawford concluded that the selection panel had used objective criteria and applied them consistently.  Overall, Ms. Crawford approved of the selection process and the way it was run; she concurred and upheld the recommendation of selecting Ms. Eichelberger.  Ms. Crawford did not see any red flags or feel the need to provide course corrections to the Mr. Hinchberger or the panel members.  Ms. Crawford felt that the panel went out of its way to interview a large number of qualified candidates; more than it was required to interview (IF pp 118-119).

Ms. Crawford attests that Ms. Eichelberger had more extensive supervisory experience than did Complainant.  Ms. Eichelberger had the strong technical, leadership, and collaboration skills needed for the job.  Ms. Eichelberger also had a deep network throughout the agency and the intelligence community as a whole; that enabled her to collaborate and drive for results in a way that Complainant could not have done.  Although Complainant was an "Excellent" performer, he did not have (IF p 119).  Complainant's personal traits and EEO activity played no role in Ms. Crawford's decision to concur with the selection of Ms. Eichelberger (IF pp 119-120).  Ms. Crawford emphasizes that she has selected people who were over 40, under 40, male and female.  She does not know the religion, disability status, or EEO activity of most people she encounters in the agency or those who she has selected (IF pp 120-121; see OCS employee data at IF pp 152-160; see data on competitive selections by NGA officials at IF pp 161-163).  Ms. Crawford points out that Johnathan Mostowski is a Jewish male, just like Complainant (IF p 123).

**Complainant's Rebuttal:**
Complainant did not return a rebuttal statement by the time this report was due (IF pp 132, 348, 350).

**Other witness's testimony and documentary evidence:**
A Human Resources subject-matter-expert who was involved in the selection action was
**Ms. Natasha Grant (born 1977, Christian (Baptist), female)** Human Resources
Specialist, IA-0201-03, Recruitment, Human Resource Pilot Management Division
(HDRT), DD, D, NGA, Springfield, VA (IF pp 127-129).  Ms. Grant reviewed the
resumes submitted for the vacancy announcement to determine which applicants were
qualified for referral and potential selection.  HR personnel were not involved in the
panel rating/rankings, interviews, or deliberations.  The panel members, selecting official,
and approving official receive no demographic data on applicant's personal traits or EEO
activity.  Agency officials carried out the selection action at issue according to applicable
rules and regulations (see Ms. Grant's description of the selection process at IF pp 129-
131; see selection guidelines at IF pp 181-186, 250-278).

Mark Lewis

Mark Lewis
Investigator

7

000010

# Exhibit 29

# INDEX
Investigative File
Complaint of Stan Laber
Agency Number NGAE-14-O03

Page

**EXHIBIT A - Formal Complaint Documents**
Formal Complaint ....................................................................................................1

**EXHIBIT B - EEO Counseling Documents**
1. EEO Counselor's Report, with attachments ....................................................5
2. Notice of Rights and Responsibilities................................................................33
3. Notice of Right to File Formal Discrimination Complaint.............................36

**EXHIBIT C - Claims to be Investigated**
1. Notice of Receipt of Formal Complaint..........................................................40
2. Notice of Partial[1] Acceptance of Discrimination Complaint .........................44

**EXHIBIT D - Attempts at Resolution**
Reserved....................................................................................................................50

**EXHIBIT E - Appellate Activity**
Reserved....................................................................................................................51

**EXHIBIT F – Evidence**
**Testimony**
**1.** Declaration, Complainant ....................................................................................52
**2.** Declaration, Daniel Hinchberger, *with review notes* ......................................65
**3.** Declaration, Richard Unis...................................................................................80
**4.** Declaration, Tammy Verdon ...............................................................................91
**5.** Declaration, Johnetta Williams.........................................................................104
**6.** Declaration, Tonya Crawford ...........................................................................115
**7.** Declaration, Natasha Grant ..............................................................................126
**8.** Declaration, Complainant's Rebuttal, *reserved[2]* ..........................................132

**9. Documents Relocated from the EEO Counselor's Report**.......................133
   a).*Emails Between Complainant and Mr. Hinchberger, September 6-9, 2013...........137
   b).*Organizational Charts, National Geospatial Intelligence Agency (NGA) ..............140
   c).*Employee Data, Office of Contract Services (OCS) ...............................................152
   d).*Data on Competitive Selections by Agency Officials................................................161
   e).*Position Description (PD), Contract Specialist - DAWIA ......................................164
   f).*Vacancy Announcement, Supervisory Contract Specialist – DAWIA,
      June 24 to July 5, 2013 .........................................................................166

---

[1] The EEO Office dismissed the bases of Disability and Reprisal, although the Investigator included those bases as part of the Investigation per Complainant's claims. See Investigator's Declaration for more detail.
[2] Complainant was afforded the opportunity to rebut the testimony of management officials, although he did not return his completed rebuttal statement by the time this report was due.

i

000011

# INDEX
Investigative File
Complaint of Stan Laber
Agency Number NGAE-14-O03

g).*Referral and Selection Document, September 2013..................................................170
h).*Internal Resume of Selectee, Karen Eichelberger ..................................................172
i).*Internal Resume of Complainant...............................................................................176
j).*NGA Accountability Statement for Hiring Panels, September 2013 .....................181
k).*Panel Member's Rating Forms and Interview Notes..............................................187
l).* Notification of Personnel Action (SF-50),
    Promotion of Karen Eichelberger, September 22, 2013 .........................................245
m).*Notification of Complainant's Non-Selection, September 6, 2013.......................247
n).*NGA Policy Notice, Number 1405.1,
    Selection Panel Membership, November 5, 2012.....................................................250
o).*NGA Instruction for Filling Civilian Positions Including Promotions,
    NI1405.8, November 9, 2007 .................................................................................251

**10. Documents Submitted by the EEO Office – June 16, 2014**......................................279
a). Applicants' Demographic Data, with Sex, Age, and Religion. ..............................282
b). Demographic Data of Agency Officials, with Sex, Age, and Religion...................286

**11. Documents Submitted by the EEO Office – July 29, 2014** ......................................287
a). Demographic Data of Agency Officials, with Disability and EEO Activity............289
b). Applicant's Demographic Data, with Disability and EEO Activity........................290

**12.** Investigator's Declaration .........................................................................................291

**EXHIBIT G - Documents Relating to Processing of Investigation**
General Correspondence and Related Documents.............................................................295

**EXHIBIT H - Documents Relating to Compensatory Damages**
Reserved............................................................................................................................351

*** Denotes documents relocated from EEO Counselor's Report**

The documents in this file were provided by the Complainant and/or agency sources and have not been altered.  Duplicate documents have been removed from the file and any reorganization of documents is noted in the record.

000012

# Exhibit 30

UNCLASSIFIED



**NATIONAL GEOSPATIAL-INTELLIGENCE AGENCY**

7500 GEOINT Drive
Springfield, Virginia 22150

U-041-15/ODE

November 21, 2014

Mr. Stan Laber
9412 Athens Road
Fairfax, Virginia 22032

> Final Agency Decision in the
> Complaint of Stan Laber
> <u>v. Chuck Hagel</u>, Secretary of
> Defense, Agency No. NGAE-14-O03

Dear Mr. Laber:

This is to inform you of the National Geospatial-Intelligence Agency (NGA), Department of Defense's (hereinafter referred to as the "Agency") final agency decision (FAD), regarding the Equal Employment Opportunity (EEO) discrimination complaint you, Mr. Stan Laber, (hereinafter, referred to as "you" or "the complainant") filed on March 10, 2014.

## <u>Claim</u>

You assert that you were subjected to discrimination on the basis of age (over 40), religion (Jewish), sex (male), disability (undesignated), and reprisal (protected EEO activity), when on September 6, 2013, you were not selected to be interviewed for, nor subsequently selected for the position of Contract Specialist, Pay Band 05, (AON 20130928).

## <u>Finding</u>

You have failed to establish a factual basis from which to conclude that you were subjected to discrimination based on any of the claimed protected bases, as further explained below.

UNCLASSIFIED

UNCLASSIFIED

## Procedural History

You filed a formal complaint of discrimination dated March 10, 2014, and a Notice of Receipt of the Complaint was mailed to you on March 13, 2014. On April 2, 2014, NGA issued a Notice of Partial Acceptance of the Discrimination Complaint, specifically dismissing the claim of discrimination based on disability for failure to state a claim pursuant to statute, and dismissal of the claim of discrimination based on reprisal for failure to allege any adverse action that was taken against you based upon prohibited activity covered by applicable statutes. You were advised to contact the EEO office if you believed the claims had not been correctly identified and that any failure to do so within five calendar days would be treated as a concurrence as to the accuracy of the accepted claims. Notwithstanding the notice that the dismissed claims would not be investigated, the investigator did inquire as to all claims made by complainant in the formal complaint (See Investigative File (IF), p 292, for Investigator's explanation).

The complaint was investigated from July 3, 2014 through August 8, 2013. You were mailed the Report of Investigation (ROI) on August 27, 2014 by overnight Fedex. A copy of a notice defining your right within 30 days, to request either: (1) a hearing before an Equal Employment Opportunity (EEOC) administrative judge, or (2) an immediate FAD, without a hearing, in accordance with 29 C.F.R. 1614.110, was also forwarded to you with the ROI.

You requested a FAD on September 22, 2014 via an email to the EEO counselor. The Agency is now issuing this FAD to render a final decision on your complaint, to complete the record, and to provide you with your appellate rights.

## Background

The complainant is employed with the National Geospatial-Intelligence Agency and commenced his employment with the Agency in November, 2006 (IF p 54). During the period of service which gave rise to the complaint, he served as a Contract Specialist-DAWIA, IA-1102-04, in the OCS Policy Branch (OCSP) of the Office of Contract Services (OCS) (IF p 54). His first line supervisor was Howard Pierce; his second line supervisor was Daniel Hinchberger (IF p 54). At some point in time, three of the four named discriminating officials served in a supervisory role as to complainant (IF pp 54, 55). The remainder of complainant's chain of command consisted of Susan Pollmann, his third level supervisor, and Tonya Crawford, Director of Office of Contract Services, and approving official of the selected applicant screened by the selection panel (IF p 117).

The vacancy announcement for Contract Specialist-DAWIA, IA-1102-05, opened on June 24, 2013; closed on July 5, 2013 (IF pp 166-169). Complainant alleges that he was discriminated against based on the grounds identified in the selection screening process of the applications by the relevant managing officials (IF pp 2, 7). Though the EEO Office did not accept the allegations of discrimination on the basis of reprisal for EEO activity and disability status, the ROI includes the investigator's factual inquiry into

all allegations of discrimination in the complaint (IF p 292). No other specific example or allegation of discrimination appears from the ROI.

In conducting the investigation, documentary evidence and declarations were compiled. In addition to the complainant, the investigator interviewed Mr. Daniel Hinchberger, Mr. Richard Unis, Ms. Tammy Verdon, Ms. Johnetta Williams, and Ms. Tonya Crawford, collectively, the management officials alleged to have discriminated against complainant. The advising Human Development specialist, Ms. Natasha Grant, also furnished a declaration.

Declarations were obtained from: Complainant (IF pp 53-64); Mr. Daniel Hinchberger, Group Chief, (IF pp 66-78; job title @ p 67); Mr. Richard Unis, Contract Division Chief, (IF pp 81-90; job title @ p 82); Ms. Tamara Verdon, Supervisory Contract Specialist, (IF pp 92-103; job title @ p 93); Ms. Johnetta Williams, Supervisory Contract Specialist, (IF pp 105-114; job title @ p 106); Ms. Tonya Crawford, Director of Contracting, SES (III), Office of Contract Services (IF pp 116-125; title @ p 117); and Ms. Natasha Grant, Human Resource Specialist, Recruitment, Human Resource Pilot Management Division (IF pp 127-131; job title @ p 128). No other witnesses appear to have been requested by either the agency representative or the complainant.

In addition to the testimonies through declarations, the ROI contained documentary evidence consisting of the formal complaint (IF pp 2-3); the EEO counselor's report with attachments (IF pp 6-13); associated procedural documents involved in the processing of the current complaint (IF pp 34-49); organizational charts/workplace profile (IF pp 140-150); resumes of the selectee and of the complainant (IF pp 172-179); and additional exhibits related to the position description, application processes and procedures, and relevant NGA policy and guidance (IF pp 153-278). Complainant's electronic mail transmissions (IF pp 137-138) and tables reflective of interviewee demographic data delineated by basis of discriminatory claim (IF pp 280-290), are also included. Finally, the ROI contains the "NGA Instruction for Filling Civilian Positions Including Promotions" and the Agency's "Policy Notice: Selection Panel Membership", the Agency's response to additional requests for information from the investigator, and documentation related to the investigator's processing of this investigation (See Index, ROI, @ p ii).

## Applicable Law

**Age (Born ▮▮▮▮ 1945) Claim**

One aspect of the complaint arises under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq. (hereinafter the ADEA) which prohibits employers, including the Federal government, from discriminating against employees or applicants for employment age 40 and older in hiring, discharge or conditions of employment. The ADEA also prohibits reprisal or retaliation against participation in the

3

EEO process or for opposing any unlawful employment practices covered by the ADEA. 29 U.S.C. § 623(d). The ADEA requires complainants to demonstrate that employment decisions were made "because of age." Complainant's ultimate burden, therefore, is to establish that age was a determinative factor in the Agency's decisions of which he is complaining. *Loeb v. Textron, Inc.*, 600 F. 2d 1003 (1st Cir. 1979) and *Johnson v. USPS*, EEOC Request No. 05910560 (September 17, 1991).

In order to prevail in an age discrimination claim under the ADEA, Complainant must generally show membership in the group of persons protected under the ADEA (i.e., persons age 40 or over); that Complainant was subjected to an adverse employment action; and that Complainant was disadvantaged in favor of a younger person similarly situated to Complainant. *Simpson v. Midland-Ross Corp.*, 823 F. 2d 937, 44 FEP Cases 418 (6th Cir. 1987); *Polstorff v. Fletcher*, 452 F. 2d 17, 17 FEP Cases 123 (D. Ala. 1978) (citing *Marshall v. Goodyear Tire & Rubber Co.*, 554 F. 2d 730, 15 FEP Cases 139 (5th Cir. 1977). Further, in identifying members of Complainant's protected group, the Supreme Court has held that comparative employees do not have to be outside of Complainant's protected group (i.e., younger than 40 years of age). There simply has to be a sufficient disparity in age to suggest that an employee younger than Complainant received favored treatment. *O'Connor v. Consolidated Caterers*, 517 U.S. 308 (1996).

**Disability (Unstated Physical or Mental) Claim**

To establish a *prima facie* case of disability discrimination under the Rehabilitation Act, complainant must demonstrate that (1) he is a person with a disability, (2) he is qualified for and can perform the position at issue, and (3) he received an adverse employment action as a result of his disability. *Maxwell v. Department of Veterans Affairs,* EEOC Appeal No. 01960916, 1998 WL 321127 (June 5, 1998). The Rehabilitation Act (29 C.F.R. s 1614.405(a)) decrees that it is unlawful to discriminate on the basis of a disability against a qualified person with a disability. To be a qualified individual with a disability, complainant must establish that he has (1) an impairment that substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. *Ocon v. Department of Transportation*, EEOC Appeal No. 01A35397, 2006 WL 1209735 (April 27, 2006).

An agency official must have knowledge of the complainant's disability or perceive the complainant to have a disability for a lack of knowledge of a disabling condition severs a causal connection between the complainant's disability and any personnel action. *Ahmad v. Postmaster General*, EEOC No. 01871714 (1987).

**Retaliation (Protected EEO Activity)**

To state a prima facie case of retaliation the complainant must allege that: (1) he is engaged in a protected activity, (2) the employer subjected him to an adverse

UNCLASSIFIED

employment action, and (3) there is a causal connection between the protected activity and the adverse action. _Weston v. Pennsylvania_, 251 F. 3d 420, 430 (ed Cir. 2001); see also _Agular v. Morgan Corp._, 27 F. App 110, 112 (e3d Cir. 2002); _Glenn v. Horgan Bros., Inc._ No. Civ. A. 03-6578, 2005 WL 1503428 (E.D. Pa. June 24, 2005). Knowledge by the employer of the employee's engagement in protected activity is crucial to establishing the causal link.

The first step in the process is for the complainant to present evidence sufficient to establish an inference of retaliation. Testimony grounded on speculation is not enough to create a genuine issue of material fact. _Buie v. Quad/Graphics,Inc.,_ 366 F.3d 496 (7th Cir. 2004). Essentially, complainant has to show knowledge by the retaliating party of the protected activity in which the aggrieved claims a basis for reprisal. _Petersen v. Utah Dept. of Corrections_, 301 F.3d 1182, 1188 (10th Cir. 2002); _Sitar v. Ind. Dept. of Transportation_, 344 F.3d 720, 727(7th Cir. 2003). The inference of retaliation is negated in the absence of any evidence that the decision-maker was aware of the protected activity, even if others that were not involved in any adverse determination may have had some knowledge of the protected activity.

A second critical element that must be established by the complainant for creating the inference of retaliation is a demonstration of temporal proximity between the adverse action and the protected activity, and the time frame needs to be proximate. _Clark County School District v. Breeden_, 532 U.S. 268 (2001). Generally, the more of a lapse in time between the employee's engagement in the activity and the imposition of an adverse action, the less import is afforded to the inference.

## Religion (Jewish) and Sex (Male) Claims

Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., prohibits discriminatory practices in employment with the federal government, based on religion and sex. In the absence of direct evidence of discrimination, the three-part analysis detailed in _McDonnell Douglas Corp. v. Green,_ 411 U.S. 792 @ 802 (1973), encompasses claims of religious or sex discrimination alleging disparate treatment. The complainant is required to establish a _prima facie_ case by presenting facts reasonably giving rise to an inference of discrimination when otherwise not explained. The burden is on complainant to establish his case of unlawful discrimination by a preponderance of the evidence. _McDonnell Douglas Corp._; _Board of Trustees of Keene State College v. Sweeney,_ 439 U.S. 24 (1978); _Furnco Construction Corporation v. Waters,_ 438 U.S. 567 (1978). This means that Complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur. _Teamsters v. U.S.,_ 431 U.S. 324 (1977).

If Complainant meets this burden, the burden of production shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. _Texas Department of Community Affairs v. Burdine,_ 450 U.S. 248 (1981). This burden is not a burden of proving that there was no discriminatory motive, but is simply one of production.

UNCLASSIFIED

_Burdine_, at 254-56.  Once the agency articulates a legitimate, non-discriminatory reason for the challenged action, the _prima facie_ case disappears.  _St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Reeves v. Sanderson Plumbing Products, Inc._, 530 U.S. 133 (2000).  The Complainant then has the burden to prove by preponderant evidence that the agency's proffered reasons are merely a pretext for discrimination and that discrimination was the motivating factor . _Burdine_, at 256; see also, _St. Mary's Honor Center, supra; Price Waterhouse v. Hopkins_, 490 U.S. 228 (1989).   At all times, Complainant has the burden of proof. _St. Mary's Honor Center, supra._

The essence of the _prima facie_ case is that Complainant presents direct or circumstantial evidence sufficient to generate a reasonable inference by the fact-finder that a prohibited consideration, such as sex or religion, was a factor in the adverse employment action. _Furnco Construction Co. v. Waters_, 438 U.S. 567 (1978); _McNeil v. Department of Defense_, EEOC Appeal No. 01980212 (June 13, 2001).

Complainant must also establish that a managing official knew of complainant's sex or religion for intentional discrimination based upon either.  If the responsible agency official was unaware of the religion or sex of the complainant, then there is no basis for intentional discrimination. _Ahmad v. Postmaster General_, EEOC 01871714 (1987).

## Facts

### Complainant's Testimony

The complainant was a supervisory contract specialist, IA-1102-04, in the Office of Contract Services Policy Branch (CSP), Office of Contract Service, NGA, at the time of his application for a vacant position as a Pay Band 05 supervisory contract specialist (IF pp 53, 54).  His second line supervisor was Daniel Hinchberger and the two interacted once every few months (IF p 54).  Complainant had no organizational relationship with Mr. Unis but did speak infrequently with him on business subjects.  Complainant had been supervised in the past for some period of time by Ms. Verdon, having daily contact then, but their contact was much less frequent after she stopped serving as his supervisor (IF p 54).  Ms. Williams had also been a former supervisor of complainant dating back to approximately three years prior to the complaint; while in a supervisory relationship their contact was daily, thereafter, the contact was much less frequent (IF p 55).  Complainant alleges that Mr. Hinchberger, Mr. Unis, Ms. Verdon, Ms. Williams, and Ms. Crawford were responsible for discriminating against him as either panel members or as the approving official of the panel's recommendation (IF p 53).

He claims that he was discriminated against on the bases of age, religion, sex, and in reprisal for his filing EEO complaints with other agencies and because of FOIA and IG requests (IF p 53).[1]  He notes that he had a history of filing EEO complaints before coming to NGA in 2006, though this particular complaint is the first filed since his

---

[1] Complainant does not specifically identify a disabling condition as a basis for discrimination in his declaration, but a last comment alludes to his disability impacting the selection process.

UNCLASSIFIED

employment with NGA (IF p 55).  Complainant believes that during the selection process, NGA officials were aware of his EEO activity, as well as his request to serve as an EEO counselor at NGA (IF p 55).  He does not recall who his supervisor was at the time but it was someone in OCS.  He states that he was ultimately approved to be a counselor, but whether someone who files EEO complaints should serve as an EEO counselor had been an issue.  Though he did not think it to be an issue, the agency did because while he was attending the class the instructor told him that the instructor was well-aware of his history and that it had been discussed at NGA; the instructor reported to complainant that he had been consulted by another agency in regard to the complaints previously filed against that agency (IF p 55).  When he asked to serve a second year, complainant was informed that his services were not needed (IF p 55).  He makes clear that he is not claiming reprisal for the filing of this complaint but, instead, for the EEO activity from 1979-2006, prior to his NGA employment, that the managing officials could have learned of and then used to deny him an interview (IF p 55).  Generally, the past complaints involved non-selections, promotions, and training, most were based upon religion, with many evolving into court cases discoverable on the internet (IF p 55).  Complainant maintains his EEO cases' presence on the internet demonstrates that the agency must have had knowledge of how litigious he has been (IF p 55).  He believes that everyone including Mr. Hinchberger was aware of the EEO activity, though he does not know how or when Mr. Hinchberger learned of it (IF p 56).  Mr. Uris must have known as well but complainant does not know how he had gained knowledge of the EEO activity.  Nobody ever acknowledged learning of his EEO activity but he is nonetheless convinced that everyone knew, including Ms. Verdon, Ms. Williams, and Ms. Crawford (IF p 56, 57).

Complainant specifically alleges that NGA officials believe his EEO complaints from prior employment to be frivolous; and in regard to his non-selection, the officials acted on their belief that he was a frequent-flier of frivolous complaints, and to avoid a non-selection complaint, purposely scored him so as to not be selected for an interview (IF p 57).  He claims that they think his EEO history would preclude him from being an effective supervisor and would project a negative managerial style and ability (IF p 57).  Complainant believes his qualifications for the position to be prominent and that the resume listing of his experience does not really provide a "succinct argument of my qualifications" (IF p 58).  He is sure that he is better qualified than the selectee because he was certain to have had more experience even if he did not know the details of the selectee's experience (IF p 58).  Because he is the oldest person who applied for the vacancy and has over 30 years of experience, he does not believe there could be anybody more qualified (IF p 58).  In short, his claim is that he has more experience, training, and knowledge than anyone who was selected for an interview even though he does not know who applied for the position; he asserts that such makes him superior to the other candidates (IF p 58).  He admits that he does not know for a fact, but believes, he is more qualified than others and cites to his education, training, and certifications (IF p 58), also detailing his acquisition assignments (IF p 59).

UNCLASSIFIED

Complainant explains what the selection panel officials did to discriminate.  The officials did not interview him or select him.  He "…imagines that they did not objectively score…" him so as to avoid having to interview and select him for the position (IF p 59).  Though he cannot cite to "overt comments" by the officials related to his age, religion, or sex, he does know that this particular group of officials act with impunity (IF p 59).  He is confident that the officials knocked the scores down so that he fell below the cutoff line for interviews because they had a negative view of him.   Their view arose from his complaints, religion, dress and appearance, and his not meeting their idealized view of what a supervisor is to be (IF p 59).  There is no other explanation for his being excluded from an interview (IF p 59).  The scoring data and the communication between panel members trying to reconcile the scoring will reveal the lack of objectivity (IF p 60).  Complainant presumed that there was lobbying among the panel to push him farther down the list (IF p 60).

Complainant asserts that he was treated differently in the selection process because of his age, believing all other applicants selected to be interviewed to be younger than he (IF p 60).  He maintains that the agency has a record of promoting younger employees as opposed to older and moving older employees into dead end positions or jobs that are less qualifying for future promotions (IF p 61).  He further asserts that he was treated differently because of his religion.  Though he does not know the religion of other applicants, he presumes that no one that might have applied exhibits the religious dress and behaviors of complainant (IF p 61).   Based upon his religion he states that he was treated negatively (IF p 61).

Complainant also believes he was treated differently because of his sex based upon his contention that most selectees in OCS are female; he believes that a female was selected for the position (IF p 62, 63).  He indicates that Ms. Crawford probably did not want complainant interviewed so she gave instructions to the panel and told the team lead of the panel which applicant should be selected (IF p 62).

Finally, complainant declares that he was subject to reprisal in not being interviewed and selected for the position because of the negative attitude officials had as to his being a "complainer, particularly EEO" (IF p 63).  Though the officials did not "taunt me about being a frequent-flier", he is convinced it played a "decisive role in the non-selection" (IF p 63).  He adds that he has a disabling condition which also served as a basis for officials discriminating against him but he will not disclose information about it for privacy reasons (IF p 63).  He does not believe anyone within the agency was aware of the disability but states "…that does not mean that the condition did not affect the selection action." (IF p 63); he adds that because he cannot disclose the details of the disability, he is unable to explain how or why he was discriminated against based upon the disability, except to state that he thinks they perceived some part of his behavior as being a disability (IF p 63).

UNCLASSIFIED

**Management's testimony**

**Testimony of Daniel Hinchberger**

Mr. Hinchberger was serving as the Group Chief within the Compliance and Operations Group, Office of Contract Services, NGA, during the time giving rise to this complaint. Mr. Hinchberger is a male over 40 years of age, does not identify with a specific religion, and is without a disabling condition (IF pp 66, 67).  He does not know the complainant's age but guesses him to be a male in his early sixties (IF pp 66, 67, 73).  Mr. Hinchberger believes complainant to be Jewish because the complainant wears a skull cap and the two had spoken in the past about complainant's religion (IF p 66).  He knew nothing of any disabling condition of complainant and has never regarded complainant as being unable to do something because of a mental or physical impairment (IF p 68).  He does not specifically recall knowing of prior EEO activity by complainant and states that if complainant had mentioned it before, he does not recall any details (IF p 68, 72-73).

Age, religion, sex, and prior EEO activity were not factors in the decision to not offer complainant an opportunity to interview (IF pp 73, 74).  Similarly, complainant's physical or mental condition did not factor into the decision as Mr. Hinchberger was unaware of complainant having any kind of a disability (IF p 74).  In response to complainant's allegation that the panel retaliated against him for his EEO activity, Mr. Hinchberger denies knowing of complainant's FOIA or IG complaints; admits to some vague recollection of something EEO related but not presenting as an issue or creating a negative impression in his mind; and affirmatively asserts that the panel did not discuss anything related to EEO activity (IF p 75).  He disputes any of the characterizations by the complainant that the panel acted unfairly, held any age or religious bias, acted with impunity or viewed the complainant negatively (IF p 75, 76).  Instead, Mr. Hinchberger contends that the panel acted in good faith to find the best candidate and without influence from Ms. Crawford (IF p 77).  He maintains that he was not directed or persuaded to recommend, or not to recommend, a particular candidate (IF p 73).  He denies any knowledge of complainant's past refusals to sign documents based upon religion or moral obligation (IF p 77).

He served as the panel chair and insured that the diversity requirements mandated by the agency for the composition of the panel were followed.  The panel was comprised of one female, one male, and one minority (African-American); all were division chiefs of the OCS operational groups and knew the work would not entail staff-oriented functions (IF p 69).  Panel members received the referral certificate with 16 applicants deemed qualified by HR.  The certificate contained no information as to applicants' age, religion, sex, disabling conditions, or EEO activity (IF p 70).  Each panel member independently rated and ranked the applicants' resumes and the scores were then considered by the panel for any splits (difference of more than "2" on the individual panel member scores) (IF p 69).  The resumes were evaluated and scored based on criteria contained in the

9

UNCLASSIFIED

vacancy announcement (IF p 69)[2].  Splits are discussed and reconciled; all four panel members rated complainant a "5" so he was not discussed (IF pp 69, 70).  The panel then looked for a logical break point for candidates to be interviewed and decided to interview only those candidates with a score of "7" or above (IF p 69).  At the conclusion of the interview process the panel had a consensus discussion as to a recommendation for a selection.  The recommendation was subsequently approved by Ms. Crawford (IF pp 69, 70).

Mr. Hinchberger's biggest concern as to complainant's qualifications centered on the complainant's apparent lack of supervisory experience; complainant had no or limited supervisory experience in an operational contracting role (IF p 70).  Complainant had decent contracting experience but not to the depth or breadth of other candidates (IF p 71).

Complainant's not being selected for an interview was not a personal decision against him but was based upon his mid-range score (IF p 71). To complainant's claim that he should have been selected as the best qualified applicant for the position because of his 30 years of experience and multiple DAWIA certifications and training courses, Mr. Hinchberger contends the person with the most working experience is not necessarily the best manager (IF p 73).  He states that the selectee had a greater degree of demonstrated success and at a slightly higher level than complainant (IF p 73).

**Testimony of Richard Unis**

Mr. Unis was a member of the selection panel (IF p 83).  He is over 40, male, Lutheran, and not disabled (IF p 81).  At the time of his service on the panel he was the Contracts Division Chief for OCSR, a division within the Contracts Directorate (OCS) (IF p 82).  He is aware of complainant's religion as the complainant had mentioned it to him (IF p 81, 86), but was unaware of any disabling condition of the complainant (IF pp 83, 86) or any prior EEO activity of the complainant (IF pp 82, 86, 88).

Notwithstanding knowing complainant, Mr. Unis did not know his exact age but believed him to be near 60 (IF pp 85, 81); he did know of complainant's sex (IF p 86).  Neither age, nor religion, nor sex were factors in the decision as to whether to interview complainant (IF p 86).  Mr. Unis was not directed or persuaded to recommend, or to exclude, a particular candidate for consideration (IF p 86).

Mr. Unis denies having a negative view of complainant or acting with impunity (IF p 88).  He claims to harbor no objections to complainant's religion or dress but scored the resume solely against the selection criteria (IF p 88).  There was no lobbying by panel members to move the complainant down the list of qualified candidates.  Complainant was not interviewed because there were better qualified candidates than he (IF pp 88,

---

[2] Vacancy announcement (IF p 166-168) details the assignment description, mandatory and desirable criteria; Work role description (IF p 164) identifies competencies, knowledge, and skills for the position.

89).  As to age, Mr. Unis specifies the selectee was not a "younger, fresher leader"[3] , but the best qualified candidate based on experience (IF pp 89, 85).  He further explains his belief that OCS promotes the best candidates based on the pool of applicants for the position with recent selections for Pay Band 5 vacancies coming from applicants aged in their upper 40's and 50's (IF p 89).  His observation of selectees for Pay Band 5 positions over the last 6 to 7 years appear to be essentially equally split between the sexes (IF p 89).  Mr. Unis is not aware of any contracting officer being pressured to sign a document or contract action which the contracting officer does not support; referring it up to a supervisor is the prescribed resolution within OCS (IF p 90).

A large pool of referred candidates potentially meeting the selection criteria was provided to Mr. Unis for scoring (IF p 83).  He reviewed the resumes on his own by using the requirements of the position in the AON vacancy announcement against the experience listed in the resume.  He then ranked the candidates by how well they met the criteria assigning a score to each resume (IF p 83).  Complainant's resume was scored as a "5" because of the lack of broad experience across NGA contracting.  The position had been delineated as one of the most senior within the office of contracting and the need was for a candidate with considerable contract experience within multiple buying divisions of NGA (IF p 83).

After individually rating candidates, the panel came together to discuss differences of more than two rating points per candidate but Mr. Unis does not recall any contentiousness (IF p 84).  The panel then determined which candidates to interview based upon a natural cut point and complainant was not among the group rated as a top applicant (IF p 84).  Interviews were then conducted and the eventual selectee had supervisory contract experience across four different buying divisions within NGA contracts.  She was then serving in a deputy role, had source selection experience, and had a good understanding of various customers across the agency.  Complainant did not have the experience level working in buying divisions at NGA (IF p 85).

The panel passed the recommendation for the selectee to Mr. Hinchberger and the selectee was ultimately hired (IF p 85).

**Testimony of Tammy Verdon**

Supervisory contract specialist Ms. Verdon was a panel member involved in the evaluation of complainant's application for the position (IF p 94).  She is over 40, a non-practicing Catholic, female, without a disabling condition or evidence of any prior EEO activity (IF pp 93-94).  She believes complainant is a bit older than she; is Jewish based upon conversations about his religion and her sexual orientation (IF p 92); and that he is male (IF p 93).  She knew nothing of complainant's disabling condition or any prior EEO activity by complainant (IF pp 93, 94).  She maintains that she is still unaware of any impairment or disability of complainant (IF p 94).

---

[3] Mr. Unis includes the language used by complainant in his testimonial response to the investigator.

UNCLASSIFIED

Her service on selection panels is common and as an OCS supervisor she is frequently asked to be on panels (IF p 94).  The process is for HR to announce the vacancy and then to compile the applications, look at resumes and compile those meeting the position description requirements (IF p 94).  Panel members are then given the resumes to rate and score against the job description and the panel scored the applicants individually, meeting as a team to compile the scores and rank order the resumes.  The panel then interviewed only the most highly rated resumes (IF p 94, 95).

Ms. Verdon did not rate complainant high because of weakness in leadership and strategic involvement.  He had strong contracting knowledge but no experience in leading medium or large teams.  His resume did not clearly reflect strategic thinking/ agility, nor did he have demonstrated experience in setting up a larger operation and implementing it.  Complainant had not managed across organizational lines or been involved in resolving or implementing strategic visions (IF p 95).  These deficits were not weaknesses of the eventual selectee in that the selectee had leadership experience in her previous supervisory roles and worked with multiple major systems customers (IF p 95, 96).  Some of the applicants scored in the low range of 1 through 3 having missed the mark.  Some scored in the solid range of 7 through 9, but the bulk of the applicants were in the mid-range of 4-6 (IF p 96).

The panel decided that it would interview the strong, competitive group of applicants and a cut line for interviews was established based upon the resume ranking (IF p 96).  A logical cut point yielded a group of 7 or 8 interview candidates (if p 96).  Of the group interviewed, she did not know the interviewees' religion, disability status, prior EEO activity, nor exact age (IF p 96).  As to complainant specifically, Ms. Verdon did not know his age (although she did have an assumption), any prior EEO activity, or any claimed or perceived disabling condition (IF p 98).  She did know his religion and sex (IF p 98), but maintains that none of those factors were considered or of consequence in the decision as to whom to interview (IF p 98).  She was not directed or influenced to recommend a particular candidate, nor directed or persuaded not to recommend a particular candidate (IF p 98).

Ms. Verdon rejects complainant's claims of bias by the panel, members acting with impunity, the panel's negative view of complainant or preference for younger candidates, individual members' favoritism for female and veteran applicants, and intent to discriminate against those of a specified religious practice or belief (IF pp 99-102).  She acknowledges the evaluation of resumes does involve subjectivity, but recognizes complainant's resume as reflecting subject matter expertise as a contracting officer.  She maintains that his experience does not demonstrate leadership proficiencies with medium to large contracting teams, and she states that complainant's resume did not reveal strength in supervision, resource management, personnel development, and strategic leadership (IF p 99).

12

UNCLASSIFIED

**Testimony of Johnetta Williams**

Ms. Williams is over 40, Catholic, female, does not consider herself disabled, and has no knowledge of any EEO activity pursued by complainant (IF pp 105,106, 109). During the period giving rise to the complaint, she was employed with NGA as a supervisory contract specialist, IA-1102-05, serving as the division chief of OCSJ, Office of Contract Services (IF p 106). She knew the complainant from a period of time when she had been his direct supervisor (IF p 105) and she continued to periodically see him in the hallways (IF p 106). She believed complainant to be in his mid-sixties, Jewish (because he talked of his family traditions and wore a yarmulke) (IF pp 105, 106, 109), and male (IF p 106).

On September 6, 2013, Ms. Williams was serving as the female representative to the selection panel (IF p 107). She remembered the selection process as entailing an individual review of resumes based upon key experiences, strengths, knowledge, skills, and abilities; a determination as to whether the candidate met the position criteria; and a scoring and rank ordering of the resumes prior to convening as a panel (IF p 107). The panel chair was Mr. Hinchberger and she had turned her scores over to him. Because of the number of applicants, a cutoff was set but she could not recall how that was determined (IF p 107). With the cutoff established, the panel met to assess which candidates would be interviewed. Each interviewee was scored separately by the panel members and after concluding all interviews, the scores were then shared with the entire panel. A consensus was reached as to the selectee, Karen Eichelberger, and the recommendation went forward to Ms. Crawford (IF p 107).

The panel did not interview complainant. He was not interviewed based solely upon his not meeting the cutoff, and not because of any conversation among the panel involving complainant personally (IF p 108). Although his qualifications were not lacking, they were not at the level of those selected to be interviewed (IF p 109). Ms. Williams was not directed or influenced to recommend, or not recommend, any particular candidate (IF p 109); and complainant's age, religion, and sex were not factors in her decision as to complainant's overall qualifications (IF p 109, 110). She disclaims any knowledge of prior EEO activity involving the complainant, and states that she was not aware of any disabling condition of his such that they could have been factors in her decision as to whether complainant was to be selected for an interview (IF pp 109, 110). As to specific allegations by complainant of the panel's behavior, thought processes, conduct in execution of the selection procedure, religious intolerance, sex and veteran status favoritism, and negative views of complainant, Ms. Williams disputes what complainant alleges (IF pp 111-114). The panel had a responsibility to select the best qualified applicant and other candidates were rated, interviewed, and found to be better qualified than complainant (IF p 112).

13

UNCLASSIFIED

**Testimony of Tonya Crawford**

Ms. Crawford is also over 40, Christian, female, does not consider herself disabled, and has no knowledge of any of complainant's prior EEO activity, nor of any disabling condition experienced by complainant (IF pp 116-118, 119-120). Ms. Crawford was involved in the selection process as an approving official, seeing all application packets and a summary of the panel's process and interviews conducted (IF p 118). She looked at the results to see whether the panel complied with agency rules and to verify that the panel conducted a resume review as a precursor to selecting prospective interviewees (IF p 118). After determining that the panel had complied with guidelines and established a cutoff based upon criteria, she reviewed the panel's scoring of the interviewees based upon objective criteria (IF p 118). She concurred with the way the process was run in this case (IF p 119).

Her recollection of complainant's resume, as compared to the ultimate selectee's, led her to conclude that complainant, although an excellent performer, was not as strong a candidate as the selectee; complainant did not have the extensive leadership or collaborative networks (IF p 119). Notwithstanding complainant's wealth of technical experience, the panel was to be considering breadth of leadership experience and evidence of collaboration as well (IF p 121).

Ms. Crawford had no personal knowledge of any of complainant's EEO activity, nor how the panel would have even been able to find out such information. In response to complainant's statements regarding the panel's scoring bias, acting with impunity, and negative views of complainant because of his religion, Ms. Crawford denies each claim (IF p 122). She relates that vacancy announcements increasingly require higher levels of demonstrated leadership for supervisory positions (IF p 122). She notes that her organization looks at all applicants and endeavors to pick the right leader based upon the resume and interview, age and religion having nothing to do with the decision (IF p 123).

**Testimony of Natasha Grant**

As an HR Specialist assigned to Recruitment, Human Resource Pilot Management Division, Human Development Directorate, Ms. Grant did not know the age, religion, disability status, or record of any prior EEO activity of the complainant (IF pp 128, 129). She presumed, but did not know for sure, that complainant was male because of the name on the application (IF p 128). In short, she did not know him (IF p 128).

She served as the recruiter for the job announcement, receiving all applications and resumes; then creating a referral certificate of those screened who meet the mandatory hiring criteria set by the hiring manager (IF p 129). The panel has to rate and rank resumes from the referral list, subsequently meeting to establish a cutoff point for those candidates to be interviewed (IF p 130). If there is a clear break among the scores, then there is no reason to interview low scoring applicants (IF p 130). Once a selection

14

UNCLASSIFIED

is made, the recruiter reviews the procedure followed to insure that the selection process was properly conducted (IF p 129). Panel members and selection officials are not provided any demographic data as to the applicants' age, race, sex, disability or prior EEO activity, but do see the name of each applicant (IF p 130, 131). The rules and regulations were followed in this selection (IF p 131).

**Complainant's Rebuttal:** Complainant did not provide any rebuttal or additional explanatory response to the Investigator.

## Analysis

Complainant contends that he was discriminated against based on his age, sex, religion, disabling condition, and in reprisal for his prior EEO activity, when on September 6, 2013, he was not interviewed or selected for a vacant supervisory Pay Band 5 position within the OCS.

**Person with a Disability**

This aspect of complainant's claim was dismissed by the agency EEO official for failure to state a claim (IF pp 45, 292). During the investigation, complainant refused to identify the nature of his claimed disability and to state whether it was mental or physical (IF p 292). There is no evidence of his ever disclosing his disability to any of the responsible managing officials. Each of the witnesses denies any knowledge of complainant's disability or a perception that he was disabled in any manner. Because he does not want to disclose information about his condition for privacy reasons (IF p 63), does not believe anyone within the agency was aware of the disability (IF p 63), and is unable to explain how or why he was discriminated against based upon the disability, except to state that he thinks "they" perceived some part of his behavior as being a disability (IF p 63), complainant has failed to state an evidentiary basis for a claim or to establish a causal connection between the disabling condition and the adverse personnel action.

Further, the EEOC has determined that an individual is not a person with a disability unless the impairment prevents the person from working across a range of jobs or engaging in a major life activity to the same extent as an average person. Because complainant has not alleged or established a disability as impacting any of his major life activities such as to substantially limit them when compared to an average person, and because he has no record of impairment, nor evidence of being regarded as impaired, he has not established himself as an individual with a disability.

15

UNCLASSIFIED

**Retaliation for EEO Protected Activity**

This allegation by complainant was also dismissed by the EEO office as detailed in the Notice of Partial Acceptance of Discrimination Complaint (IF pp 45-49). Essentially, complainant asserts that he was not interviewed or selected for a position as a Pay Band 5 supervisory contract specialist because managerial officials knew of his prior EEO history and construed the evaluation of his application so as to preclude him an opportunity to interview. The EEO official upon review of his allegation concluded that complainant failed to illustrate how he was treated differently than other applicants denied an interview.

The complainant alleged that he was engaged in protected EEO activity at his prior employment location(s), and because of it, his current managing officials subjected him to an adverse employment action, the non-selection for an interview resulting in his not being selected for the position. Showing knowledge by the employer of the employee's engagement in protected activity is part of complainant's case. Knowledge by the retaliating party of the protected activity in which the aggrieved claims a basis for reprisal is a critical first step. *Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002); *Sitar v. Ind. Dept. of Transportation*, 344 F.3d 720, 727(7th Cir. 2003). The inference of retaliation is negated in the absence of any evidence that the decision-maker was aware of the protected activity, even if others that were not involved in any adverse determination may have had some knowledge of the protected activity.

Complainant maintains his EEO cases' presence on the internet demonstrates that the agency must have had knowledge of how litigious he has been (IF p 55). He believes that everyone including Mr. Hinchberger was aware of the EEO activity, though he does not know how or when Mr. Hinchberger would have learned of it (IF p 56). Mr. Unis must have known as well, but complainant does not know how he had gained knowledge of the EEO activity. Nobody ever said to him that they had heard of his EEO activity but he is nonetheless convinced that everyone knew, including Ms. Verdon, Ms. Williams, and Ms. Crawford (IF p 56, 57).

To the contrary, every managing official other than Mr. Hinchberger denied any knowledge of complainant's past EEO activity. Each denied any consideration of complainant's earlier EEO activity in the evaluation process. Mr. Hinchberger alluded to only a vague recollection of the complainant possibly mentioning something about past EEO activity, denying any recollection of specifics and clearly stating that complainant's EEO activity was not a factor in any part of the selection process.

Testimony grounded in speculation is not enough to create a genuine issue of material fact. *Buie v. Quad/Graphics,Inc.,* 366 F.3d 496 (7th Cir. 2004). Complainant has not produced any evidence from which to validly impute or attribute knowledge of his prior EEO activity to the managing officials, or any evidence that the non-selection was in retaliation for the EEO activity.

UNCLASSIFIED

His speculation and conclusions based upon conjecture does not constitute evidence. A second critical element to be established by the complainant for creating the inference of retaliation is a demonstration of temporal proximity between the adverse action and the protected activity, and that time frame needs to be very close indeed. By complainant's own testimony, there has been no EEO activity since his employment with NGA. Complainant does make clear that he is not claiming reprisal for the filing of this complaint but for the EEO activity prior to his NGA employment, a time period from 1979-2006 (IF p 55), and over six years prior to the date of the alleged reprisal.

**Age**

The ADEA requires a complainant to demonstrate that employment decisions were made "because of age." Complainant's burden is to establish that age was a determinative factor in the Agency's decision of which he is complaining.

In order to prevail in an age discrimination claim under the ADEA, Complainant must generally show membership in the group of persons protected under the ADEA (i.e., persons age 40 or over); that Complainant was subjected to an adverse employment action; and that Complainant was disadvantaged in favor of a younger person similarly situated to Complainant.

It is clear from the demographics within the ROI that complainant is in the protected group, as was all but one of the candidates selected for interview. Though it may be that complainant was the oldest of the candidates referred, there is not such a disparity between his age and those of 50% of the interviewees as to create a distinct age bracket within those applicants over 40.

More importantly, none of the panel members indicated that age was a factor in their decision as to the best qualified candidate. Moreover, several expressed that the type and extent of leadership experience thought as critical for the position would most likely be disadvantageous for a candidate without years of experience. All managing officials dispute complainant's contention that they were looking for younger employees to promote.

There is no evidence other than complainant's assertions that the managing officials weighed complainant's age of over 40 as a determinative factor in his non-selection for an interview. His contention that as the oldest person applying for the position there could be nobody else more qualified is a subjective belief. His assertion that the agency has a record of promoting younger employees as opposed to older, and moving older employees into positions from which they become less qualified for future promotions, is not borne out by any factual basis presented or incorporated within the record, and is inconsistent with the attestations of each of the panel members' testimonies of their promoting or selecting applicants without regard to age.

UNCLASSIFIED

There is no evidence supportive of complainant's assertions that management weighed complainant' s age of over 40 as a determinative factor in his non-selection for an interview.

**Religion and Sex**

The complainant is required to present facts reasonably giving rise to an inference of discrimination that otherwise are not explained. The burden is to establish his case of unlawful discrimination by a preponderance of the evidence. _McDonnell Douglas Corp._; _Board of Trustees of Keene State College v. Sweeney,_ 439 U.S. 24 (1978); _Furnco Construction Corporation v. Waters,_ 438 U.S. 567 (1978). This means that Complainant must present evidence to the degree that if it were not rebutted, the trier of fact could conclude that unlawful discrimination did occur. _Teamsters v. U.S.,_ 431 U.S. 324 (1977).

Complainant maintains that he was denied an opportunity to interview because of his religion. He offers as facts giving rise to a reasonable inference of discrimination that he was the best qualified person for the position based upon his training and experience. Notwithstanding, he was not selected for an interview and it must be because management officials noted his religious dress, appearance, and associated behaviors. He presumes that no one that might have applied exhibits a similar religious dress, practice, and manner.

Management officials on the panel acknowledge that they knew of complainant's religion either by complainant's telling them in past discussions or by concluding that complainant was Jewish through associating his dress and appearance with the Jewish faith. Each management official denied any consideration of his faith or faith-based practice in evaluation of his resume. All attest that the subject was never discussed or referenced by innuendo. Complainant presents only his conclusion that his faith was a factor in the selection process. Management's articulation of complainant's qualifications for the position vis-à-vis the qualifications within the resumes of those selected for interview stand as reasonable explanations for excluding complainant from the interview process, negating complainant's inference of discrimination. Three of the four evaluators served in a supervisory role over complainant at some point in time prior to their service on the selection panel. Complainant suggests nothing indicative of any bias as to his religious faith exhibited by these management officials toward him prior to their scoring his resume. For religion to have been a factor, each evaluator while evaluating complainant's resume in a private setting, would have had to have discriminated against complainant for his cumulative score to have been so impacted. Panel members deny any lobbying to move the complainant down the list of qualified candidates.

Sex is similarly claimed as a discriminatory basis. Complainant alleges that management desired a female for the position and because he was a male, he was not selected to be interviewed and then offered the position.

18

UNCLASSIFIED

A female was selected as best qualified from those selected for interview. Because the selectee for the position could only come from those qualifying for interview pursuant to the policy, because both males and females were selected to be interviewed, he was not disadvantaged or distinguished from the qualifying group on the basis of his sex.

**Arguendo**

Once the agency articulates a legitimate, non-discriminatory reason for the challenged action, the *prima facie* case disappears. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). The Complainant then has the burden to prove by preponderant evidence that the agency's proffered reason(s) are merely a pretext for discrimination and that discrimination was the motivating factor for the personnel action. If Complainant meets this burden, the burden of production shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). This burden is not a burden of proving that there was no discriminatory motive, but is simply one of production. *Burdine*, at 254-56.

Assuming for a moment that complainant did present a *prima facie* case as to any one or combination of age, religion, or sex discrimination, management officials have articulated a legitimate reason for their action. All members of the evaluation team attest that they endeavored to follow NGA hiring policies and practices, had participated in many hiring panels before, acted in good faith, and aimed to accomplish their mission to hire the best qualified candidate. In this case, the vacant position had been delineated as one of the most senior within the office of contracting and the need was for a candidate with considerable contract experience within multiple buying divisions of NGA.

Panel members expressed reservation as to complainant's lack of supervisory experience, especially in an operational contracting role. Specifically, complainant did not have the experience level working in buying divisions at NGA; was viewed as having a weakness in leadership and strategic involvement; had strong contracting knowledge but no experience in leading medium or large teams; and his resume did not clearly reflect strategic thinking/ agility, or demonstrate experience in setting up and implementing large operations. Further, complainant had not managed across organizational lines or been involved in resolving or implementing strategic visions. His resume did not reveal strength in supervision, resource management, personnel development, and strategic leadership. These deficits were not weaknesses of the eventual selectee. Though complainant had decent contracting experience it was not to the depth or breadth of those candidates selected for interview.

All evaluators deny having held a negative view of complainant and emphasize that they scored the resumes only against the selection criteria. None were directed or persuaded to recommend, or not to recommend, a particular candidate; complainant's non-selection for an interview was not a personal decision against him but attributable to his mid-range resume score. Senior officials believe vacancy announcements for

19

UNCLASSIFIED

supervisory positions as increasingly requiring higher degrees of demonstrated leadership.

Finally, the record suggests nothing that would serve as a basis for a claim by complainant that the Agency's stated legitimate non-discriminatory reasons for complainant's non-selection are merely pre-textual.

## DECISION

Accordingly, based on the record, Stan Laber, as complainant, has failed to prove a claim of discrimination based on disability, reprisal, religion, sex, and age with respect to the issue accepted for investigation.  The entire record has been reviewed and considered.  The Agency concludes that there is no evidence of unlawful discrimination, and therefore, it is the final decision of the Agency that the complainant was not discriminated against, as alleged.

If you are dissatisfied with this decision, you have the following rights:

## NOTICE OF EEOC APPEAL RIGHTS

If you are dissatisfied with this decision, you (you, on behalf of your client) may file an appeal in accordance with 29 C.F.R. 1614.402 and 29 C.F.R. 1614.403 within thirty (30) calendar days of receipt of this correspondence.  You may submit the appeal in writing by mailing it to:

>       Equal Employment Opportunity Commission
>       Office of Federal Operations
>       PO BOX 19848
>       Washington, D.C.  20036

Or, you may send a facsimile of the appeal to:

>       (202) 663-7022

The thirty day period for filing an appeal begins on the date of **receipt** of this decision. The appeal must be timely or it may be dismissed.  An appeal shall be deemed timely if it is delivered in person or postmarked before the expiration of the filing period, or in the absence of a legible postmark, the appeal is received by the Commission by mail within five (5) days after the expiration of the filing period.

UNCLASSIFIED

A copy of EEOC Form 573, "Notice of Appeal/Petition" (enclosed), should be included with the appeal to indicate what is being appealed. In or attached to the appeal sent to the commission, you must certify the date and method by which service was made on the agency.

Any statement or brief filed in support of the appeal must be submitted to the Director of the EEOC Office of Federal Operations (OFO) at the address given previously within thirty (30) calendar days of the filing of the appeal. A copy of any statement or brief filed in support of the appeal must also be mailed to:

National Geospatial-Intelligence Agency/ODE
Attn: Patsy A. Coleman/Mail Stop L-11
3838 Vogel Road
Arnold, Mo 63010

Following the receipt of the appeal and any brief or statement in support of the appeal, the Director, OFO, will request a copy of the complaint file from this agency. NGA must submit the file and any statement or brief in opposition to the appeal to the OFO Director within thirty (30) days of receipt of the request for the complaint file. A copy of the NGA statement or brief must be served on the complainant at the same time.

You are also asked to submit a copy of the appeal to the agency representative at:

National Geospatial-Intelligence Agency
Office of General Counsel
Attn: Jack Rickert/Mail Stop S71OGCA
7500 GEOINT Drive
Springfield, VA 22150

## NOTICE OF RIGHT TO FILE A CIVIL ACTION

29 C.F.R. Section 1614.408 provides that a complainant may file a civil action in an appropriate US District Court. A civil action may be filed:

- Within ninety (90) calendar days of receipt of this decision if no appeal has been filed;
- Within ninety (90) calendar days after receipt of the EEOC's final decision or action on appeal; or
- After 180 calendar days from the date of filing an appeal with the EEOC if there has been no final decision by the Commission.

29 C.F.R. Section 1614.409 states that if a complainant alleges a violation of the Equal Pay Act, s/he is authorized under the Fair Labor Standards Act (29 U.S.C. 216(b)) to file

UNCLASSIFIED

a civil action in a court of competent jurisdiction within two years, or, if the violation is willful, three years of the date of the alleged violation regardless of whether s/he pursued any complaint processing.  Recovery of back wages is limited to two years prior to the date of filing suit, or to three years if the violation is deemed willful; liquidated damages in an equal amount may also be awarded.  The filing of a complaint or appeal in that instance does not toll the time for filing a civil action.

The official agency head or department head must be named as the defendant.  The terms, "agency" or "department" include the national organization, and not just the local office, facility, or department in which the complainant works.  Do not name just the agency or department.  In this instance, Chuck Hagel, Secretary, US Department of Defense is the proper defendant.  Failure to provide the name or official title of the agency head or department head may result in dismissal of the case.

If you decide to file a civil action and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney for you.  You may also ask the court to grant permission to file the action, without fees, costs or other security.  The granting or denial of an attorney does not extend the time in which to file a civil action.  Both the request and the civil action must be filed within ninety (90) calendar days of the date after the Commission's decision has been received.

## Docket Number

The Agency Case Number, NGAE-14-O03, should be used on all correspondence concerning this complaint and decision.

Sincerely,

Cardell K. Richardson, Sr.
Director, Office of Diversity Management &
Equal Employment Opportunity

Enclosure
EEOC Form 573

cc:
National Geospatial-Intelligence Agency
Office of General Counsel
Attn:  Mr. Jack Rickert/Mail Stop S71OGCA
7500 GEOINT Drive
Springfield, VA 22150

22

# Exhibit 31



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Stan Laber, a/k/a
Kory V.,[1]
Complainant,

v.

James N. Mattis,
Secretary,
Department of Defense
(National Geospatial-Intelligence Agency),
Agency.

Appeal No. 0120150981

Agency No. NGAE-14-003

## DECISION

On December 22, 2014, Complainant filed a timely appeal, pursuant to 29 C.F.R. § 1614.403(a), from the Agency's November 21, 2014, final decision concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq., and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq. For the following reasons, the Commission VACATES the Agency's final decision and REMANDS the matter for a supplemental investigation.

## ISSUE PRESENTED

The issue presented is whether the record is adequately developed to determine whether Complainant was subjected to discrimination based on age, religion, sex, disability, and/or reprisal for prior protected activity.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Pay Band 4 Contract Specialist at the Agency's Office of Contract Services (OCS), OCS Policy Branch

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

facility in Springfield, Virginia. Complainant stated that he had held that position since November 2006.

In 2013, Complainant timely applied for a Pay Band 5 Contract Specialist position. In September 2013, Complainant found out that he was neither selected for an interview nor selected for the position. Complainant alleged that he was eminently qualified for the position because he has more than 30 years of acquisition experience, "most of which was supervisory." Complainant stated that he didn't believe there was anyone with more experience than he had, "inside or outside of the government." According to Complainant, the selecting officials likely used subjective scoring so that they would not have to interview him. Complainant stated, "There is no other way that I would not have been interviewed with my experience."

Complainant's second-line supervisor, an OCS Group Chief, stated that he chaired the hiring panel and was the selecting official (SO). The other panelists included the OCSR Contracts Division Chief (P1), the OCSU Contracts Division Chief (P2), and the OCSJ Contracts Division Chief (P3). SO stated that each panelist rated each referred application individually on a 1 to 9 scale. According to SO, he compiled all of the panelist ratings, and the panel discussed any discrepancies of two points or more. SO averred that after the panel agreed on a rating for each candidate, the panel decided to interview the top seven applicants, who scored 7 points or higher. SO stated that Complainant received a consensus score of 5 points, which placed him in the bottom third of the 16 candidates. The record contains Complainant's application and the application of the selectee, but it does not contain the applications of the other six applicants selected for an interview.

According to SO, the main deficiency with Complainant's application was that he had little to no supervisory experience in an operational contracting role. SO averred that the incumbent for the Pay Band 5 Contract Specialist position would supervise three to 15 people, but Complainant's only supervisory experience was either not in an operational contracting role or was an informal, quasi-supervisory team lead position. P2 agreed that Complainant did not have experience leading medium or large teams, causing his application to be weaker in the areas of leadership and strategic involvement. P1 stated that Complainant lacked broad experience across Agency contracts, whereas the selectee had supervisory experience across four different Agency buying divisions. P3 stated that she did not remember the details of this selection.

SO stated that the selectee had supervised large teams and supervised at the division level. In contrast, SO averred that Complainant's supervisory experience was limited to first-line level supervising. SO stated that the panel unanimously recommended the selectee, and he stated that he presented the selectee and an alternate candidate to the approving official. Complainant's third-line supervisor, the Director of Contracts, was the approving official (AO). AO stated that she concurred with the recommendation because the hiring panel followed all relevant processes and procedures.

Prior to the instant complaint, Complainant had not filed any EEO complaints against the Agency. However, Complainant averred that he filed between 50 and 100 EEO complaints against other agencies before he began working for the Agency in 2006. Complainant stated that he believed that "everyone" at the Agency was aware of his prior protected activity.

On March 10, 2014, Complainant filed an EEO complaint alleging that the Agency discriminated against him on the bases of sex (male), religion (Jewish), disability (refused to specify), age (68), and reprisal for prior protected EEO activity when on September 6, 2013, he was not interviewed nor selected for the position of Contract Specialist, Pay Band 5, AON 20130928.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of his right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). In accordance with Complainant's request, the Agency issued a final decision pursuant to 29 C.F.R. § 1614.110(b). In its decision, the Agency determined that the legitimate, nondiscriminatory reason for not selecting Complainant for an interview was his relative lack of supervisory experience, especially in an operational contacting role. The Agency found that Complainant failed to establish that this proffered legitimate, nondiscriminatory reason was pretext for discriminatory or retaliatory animus. The decision concluded that Complainant failed to prove that the Agency subjected him to discrimination as alleged. The instant appeal followed.

## CONTENTIONS ON APPEAL

Complainant did not submit any timely contentions on appeal. Although the Agency's final decision contained the incorrect address for the Commission,[2] on February 2, 2015, the Commission issued Complainant a letter acknowledging receipt of the appeal. The Commission's February 2, 2015, acknowledgment letter contained the correct address for the Commission. Accordingly, Complainant had constructive knowledge of the Commission's new address, and his March 26, 2015, brief was not timely filed. Notwithstanding the untimely filing of Complainant's brief, the Commission exercises its discretion and considers Complainant's untimely contentions on appeal.

On appeal, Complainant contends that he had more supervisory experience and more contracts and acquisition experience than the selectee. According to Complainant, the record is deficient because it does not contain the applications of the candidates selected for an interview, and the Agency therefore has failed to meet its burden to articulate a legitimate, nondiscriminatory reason. Complainant requests that the Commission find that he was subjected to discrimination.

---

[2] It appears that Complainant's appeal was forwarded by the U.S. Postal Service to the Commission's correct address.

In response to Complainant's appeal, the Agency contends that it articulated a legitimate, nondiscriminatory reason for its actions.   Specifically, Complainant's resume failed to demonstrate the required leadership qualifications, so Complainant was not selected for an interview.  According to the Agency, Complainant failed to demonstrate that this reason was pretext for discrimination. The Agency requests that its final decision be affirmed.

## ANALYSIS AND FINDINGS

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a).   See Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chapter 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

To prevail in a disparate treatment claim such as this, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Complainant must initially establish a prima facie case by demonstrating that he or she was subjected to an adverse employment action under circumstances that would support an inference of discrimination.  Furnco Constr. Co. v. Waters, 438 U.S. 567, 576 (1978).  Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 411 U.S. at 804 n. 14.  The burden then shifts to the Agency to articulate a legitimate, nondiscriminatory reason for its actions.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).    To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is pretextual.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993).  Indicators of pretext can include discriminatory statements or past personal treatment attributable to the one or more of the officials involved in the selection process, comparative or statistical data revealing differences in treatment, unequal application of Agency policy, deviations from standard procedures without explanation or justification, or inadequately explained inconsistencies in the evidentiary record.  See Mellissa F. v. U.S. Postal Serv., EEOC Appeal No. 0120141697 (Nov. 12, 2015).

EEOC Regulation 29 C.F.R. § 1614.108(b) requires, inter alia, that the agency develop an impartial and appropriate factual record upon which to make findings on the claims raised in the complaint. One purpose of an investigation is to gather facts upon which a reasonable fact finder may draw conclusions as to whether a violation of the discrimination statutes has occurred. Id.; EEO MD-110, at Chap. 6, § IV.B. An investigation must include "a thorough review of the circumstances under which the alleged discrimination occurred; the treatment of members of the Complainant's group as compared with the treatment of similarly situated employees . . . and any policies and/or practices that may constitute or appear to constitute

discrimination, even though they have not been expressly cited by the complainant." Id. at § IV.C. Also, an investigator must identify and obtain "all relevant evidence from all sources regardless of how it may affect the outcome." Id. at § VI.D.

Upon review, the Commission finds that the investigation was inadequate and that the record lacks the thoroughness required for the fact finder to address the ultimate issue of whether discrimination occurred. Specifically, we find that the record contains inadequate documentary evidence to allow us to determine if the Agency's legitimate, nondiscriminatory reason is pretextual. While the Agency's burden of production is not onerous, it must provide a specific, clear, legitimate, and individualized explanation that provides an opportunity for Complainant to satisfy his ultimate burden of proof of pretext. Lorenzo v. Dep't of Defense, EEOC Request No. 05950931 (Nov. 6, 1997). We find that it has not done so here.

Agency officials testified that Complainant was not selected for an interview because of his lack of supervisory experience in an operational contracting role. However, the record does not contain the applications of the six candidates selected for an interview other than the selectee, so the we cannot evaluate the applications to determine whether the six candidates who were selected for an interview also lacked supervisory experience in an operational contracting role. Therefore, Complainant does not have a full opportunity to demonstrate that the Agency's legitimate, nondiscriminatory reason is a pretext for discrimination or reprisal.

Based on the above, we conclude that the present record lacks necessary information. Accordingly, we REMAND this case back to the Agency to conduct a supplemental investigation.

## CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we VACATE the Agency's final decision and REMAND the matter for further processing in accordance with this decision and the ORDER below.

## ORDER

Within sixty (60) days of the date this decision becomes final and consistent with this decision, the Agency shall conduct and complete a supplemental investigation which includes, but is not limited to, the following:

1. Application materials submitted by all applicants selected for an interview for AON 20130928.
2. Demographic information, including sex, religion, age, disability, and prior protected activity, for all applicants selected for an interview for AON 20130928.
3. Opportunity afforded to Complainant to submit a rebuttal affidavit and documentary evidence to prove pretext.

6                                              0120150981

4. Issuance of a new decision with appropriate appeal rights, unless this matter is otherwise resolved before issuance of a decision.

The Agency is further directed to submit a report of compliance, as provided in the statement entitled "Implementation of the Commission's Decision." The report shall include supporting documentation verifying that the corrective action has been implemented. A copy of the supplemental report of investigation shall also be submitted to the Compliance Officer referenced below.

In accordance with Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § IX.E (Aug. 5, 2015), the Agency shall give priority to this remanded case in order to comply with the time frames contained in this Order. The Office of Federal Operations will issue sanctions against agencies when it determines that agencies are not making reasonable efforts to comply with a Commission order to investigate a complaint.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0610)

Compliance with the Commission's corrective action is mandatory. The Agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. The Agency's report must contain supporting documentation, and the Agency must send a copy of all submissions to the Complainant. If the Agency does not comply with the Commission's order, the Complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The Complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the Complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File a Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the Complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. See 29 C.F.R. § 1614.409.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0416)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.   The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.   The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission. The requests may be submitted via regular mail to P.O. Box 77960, Washington, DC 20013, or by certified mail to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0610)

This is a decision requiring the Agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. In the alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the Agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. Filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may

8                                        0120150981

request the court to appoint an attorney for you. You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission. The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

APR 0 4 2017

Date

# Exhibit 32

UNCLASSIFIED

U-544-17/ODE

August 17, 2017

Mr. Stan Laber
9412 Athens Road
Fairfax, Virginia 22032

Final Agency Decision in the
Complaint of Stan Laber
v. James N. Mattis, Secretary of
Defense, Agency No. NGAE-14-003

Dear Mr. Laber:

This is to inform you of the National Geospatial-Intelligence Agency (NGA), Department of Defense's (hereinafter referred to as the "Agency") final agency decision (FAD), regarding the Equal Employment Opportunity (EEO) discrimination complaint you, Mr. Stan Laber, (hereinafter, referred to as "you" or "the complainant") filed on March 10, 2014.

**This FAD is issued in further compliance with the Decision of the U.S. Equal Employment Opportunity Commission (EEOC), Appeal Number 0120150981, and dated April 4, 2017. The FAD specifically addresses documentary evidence ordered on appeal by the EEOC to be produced and analyzed in comparing the treatment of your group to similarly situated applicants.**

## Claim

You assert that you were subjected to discrimination on the basis of age (over 40), religion (Jewish), sex (male), disability (undesignated), and reprisal (protected EEO activity), when on September 6, 2013, you were not selected to be interviewed for, nor subsequently selected for the position of Contract Specialist, Pay Band 05, (AON 20130928).

## Finding

You have not established a factual basis from which to conclude that you were subjected to discrimination based on any of the claimed protected bases, as further explained below.

UNCLASSIFIED

UNCLASSIFIED

## Procedural History

You filed a formal complaint of discrimination dated March 10, 2014, and a Notice of Receipt of the Complaint was mailed to you on March 13, 2014. On April 2, 2014, NGA issued a Notice of Partial Acceptance of the Discrimination Complaint, specifically dismissing the claim of discrimination based on disability for failure to state a claim pursuant to statute, and dismissal of the claim of discrimination based on reprisal for failure to allege any adverse action that was taken against you based upon prohibited activity covered by applicable statutes. You were advised to contact the EEO office if you believed the claims had not been correctly identified and that any failure to do so within five calendar days would be treated as a concurrence as to the accuracy of the accepted claims. Notwithstanding the notice that the dismissed claims would not be investigated, the investigator did inquire as to all claims made by complainant in the formal complaint (See Investigative File (IF), p 292, for Investigator's explanation).

The complaint was investigated from July 3, 2014 through August 8, 2013. You were mailed the Report of Investigation (ROI) on August 27, 2014 by overnight FedEx. A copy of a notice defining your right within 30 days, to request either: (1) a hearing before an Equal Employment Opportunity (EEOC) administrative judge, or (2) an immediate FAD, without a hearing, in accordance with 29 C.F.R. 1614.110, was also forwarded to you with the ROI.

You requested a FAD on September 22, 2014 via an email to the EEO counselor. The Agency issued a FAD on November 21, 2014 finding that you had failed to establish a factual basis evidencing you were subjected to discrimination. On December 22, 2014, you filed with the U.S. Equal Employment Opportunity Commission's (EEOC) Office of Federal Operations (OFO), and hereinafter referenced as "the Commission", an appeal of the FAD. You did not specify any issues for appellate review in your original notice. On February 2, 2015, the Commission acknowledged in writing a receipt of your appeal. Though you submitted an untimely appellate brief, the Commission exercised its discretion to consider your contentions. After a thorough review of the record, on April 4, 2017, the Commission vacated the Agency's original FAD dated November 21, 2014, and ordered further proceedings in accordance with enumerated requirements. The decision was received by the Agency on or about April 13, 2017, and neither party lodged an exception or requested reconsideration. The Agency was also directed to prepare a report of compliance addressing additional investigative documentation required. Prior to issuance of the report, the Agency mailed a letter to you on June 14, 2017, notifying you of your right to provide additional rebuttal information or documentary evidence. You were also given copies of the materials the Commission directed the Agency to collect and to be provided to you. On June 16, 2017, the Agency issued the required report to the Commission detailing the supplemental documentation provided to you, and highlighting that you were afforded an additional opportunity to submit further records or rebuttal information. By August 1, 2017, you had not provided

2

UNCLASSIFIED

any further information to the Agency, and to timely comply with the Decision, the Agency now issues this FAD to render a final decision on your complaint, to complete the record consistent with the Commission's Decision, and to provide you with your appellate rights.

## Background

The complainant was employed with the National Geospatial-Intelligence Agency having commenced his assignment with the Agency in November, 2006 (IF p 54). During the period of service which gave rise to the complaint, he served as a Contract Specialist-DAWIA, IA-1102-04, in the OCS Policy Branch (OCSP) of the Office of Contract Services (OCS) (IF p 54). His first line supervisor was Howard Pierce; his second line supervisor was Daniel Hinchberger (IF p 54). At some point in time, three of the four named discriminating officials served in a supervisory role as to complainant (IF pp 54, 55). The remainder of complainant's chain of command consisted of Susan Pollmann, his third level supervisor, and Tonya Crawford, Director of Office of Contract Services, and approving official of the selected applicant screened by the selection panel (IF p 117).

The vacancy announcement for Contract Specialist-DAWIA, IA-1102-05, opened on June 24, 2013; closed on July 5, 2013 (IF pp 166-169). He learned in September, 2013, that he was not selected for an interview. Complainant alleges that he was discriminated against in the screening process of the applications by the relevant managing officials, when they likely used subjective scoring to eliminate him from interview contention (IF pp 2, 7). Though the EEO Office did not accept the allegations of discrimination on the basis of reprisal for EEO activity and disability status, the ROI includes the investigator's factual inquiry into all allegations of discrimination in the complaint (IF p 292). No other specific example or allegation of discrimination appears from the ROI.

In conducting the investigation, documentary evidence and declarations were compiled. In addition to the complainant, the investigator interviewed Mr. Daniel Hinchberger, Mr. Richard Unis, Ms. Tammy Verdon, Ms. Johnetta Williams, and Ms. Tonya Crawford, collectively, the management officials alleged to have discriminated against complainant. The advising Human Development specialist, Ms. Natasha Grant, also furnished a declaration.

Declarations were obtained from: Complainant (IF pp 53-64); Mr. Daniel Hinchberger, Group Chief, (IF pp 66-78; job title @ p 67); Mr. Richard Unis, Contract Division Chief, (IF pp 81-90; job title @ p 82); Ms. Tamara Verdon, Supervisory Contract Specialist, (IF pp 92-103; job title @ p 93); Ms. Johnetta Williams, Supervisory Contract Specialist, (IF pp 105-114; job title @ p 106); Ms. Tonya Crawford, Director of Contracting, SES (III), Office of Contract Services (IF pp 116-125; title @ p 117); and Ms. Natasha Grant, Human Resource Specialist, Recruitment, Human Resource Pilot Management Division

UNCLASSIFIED

(IF pp 127-131; job title @ p 128). No other witnesses appear to have been requested by either the agency representative or the complainant.

In addition to the testimonies through declarations, the ROI contained documentary evidence consisting of the formal complaint (IF pp 2-3); the EEO counselor's report with attachments (IF pp 6-13); associated procedural documents involved in the processing of the current complaint (IF pp 34-49); organizational charts/workplace profile (IF pp 140-150); resumes of the selectee and of the complainant (IF pp 172-179); and additional exhibits related to the position description, application processes and procedures, and relevant NGA policy and guidance (IF pp 153-278). Complainant's electronic mail transmissions (IF pp 137-138) and tables reflective of interviewee demographic data delineated by basis of discriminatory claim (IF pp 280-290), are also included. Finally, the ROI contains the "NGA Instruction for Filling Civilian Positions Including Promotions" and the Agency's "Policy Notice: Selection Panel Membership", the Agency's response to additional requests for information from the investigator, and documentation related to the investigator's processing of this investigation (See Index, ROI, @ p ii).

As a consequence of the Commission's Decision, the ROI was supplemented by: the application materials of those applicants selected for interview for the specified position, and, demographic information of the interviewees to the extent that it was either collected in the application process (i.e.- religious preference is not collected by NGA) or provided by the interviewee. Though provided an opportunity for further rebuttal, no additional materials came from the complainant.

## Applicable Law

### Age (Born ████ 1945) Claim

One aspect of the complaint arises under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq. (hereinafter the ADEA) which prohibits employers, including the Federal government, from discriminating against employees or applicants for employment age 40 and older in hiring, discharge or conditions of employment. The ADEA also prohibits reprisal or retaliation against participation in the EEO process or for opposing any unlawful employment practices covered by the ADEA. 29 U.S.C. § 623(d). The ADEA requires complainants to demonstrate that employment decisions were made "because of age." Complainant's ultimate burden, therefore, is to establish that age was a determinative factor in the Agency's decisions of which he is complaining. *Loeb v. Textron, Inc.*, 600 F. 2d 1003 (1st Cir. 1979) and *Johnson v. USPS*, EEOC Request No. 05910560 (September 17, 1991).

In order to prevail in an age discrimination claim under the ADEA, Complainant must generally show membership in the group of persons protected under the ADEA (i.e., persons age 40 or over); that Complainant was subjected to an adverse employment

UNCLASSIFIED

action; and that Complainant was disadvantaged in favor of a younger person similarly situated to Complainant. *Simpson v. Midland-Ross Corp.*, 823 F. 2d 937, 44 FEP Cases 418 (6th Cir. 1987); *Polstorff v. Fletcher*, 452 F. 2d 17, 17 FEP Cases 123 (D. Ala. 1978) (citing *Marshall v. Goodyear Tire & Rubber Co.*, 554 F. 2d 730, 15 FEP Cases 139 (5th Cir. 1977). Further, in identifying members of Complainant's protected group, the Supreme Court has held that comparative employees do not have to be outside of Complainant's protected group (i.e., younger than 40 years of age). There simply has to be a sufficient disparity in age to suggest that an employee younger than Complainant received favored treatment. *O'Connor v. Consolidated Caterers*, 517 U.S. 308 (1996).

## Disability (Unstated Physical or Mental) Claim

To establish a *prima facie* case of disability discrimination under the Rehabilitation Act, complainant must demonstrate that (1) he is a person with a disability, (2) he is qualified for and can perform the position at issue, and (3) he received an adverse employment action as a result of his disability. *Maxwell v. Department of Veterans Affairs*, EEOC Appeal No. 01960916, 1998 WL 321127 (June 5, 1998). The Rehabilitation Act (29 C.F.R. s 1614.405(a)) decrees that it is unlawful to discriminate on the basis of a disability against a qualified person with a disability. To be a qualified individual with a disability, complainant must establish that he has (1) an impairment that substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. *Ocon v. Department of Transportation*, EEOC Appeal No. 01A35397, 2006 WL 1209735 (April 27, 2006).

An agency official must have knowledge of the complainant's disability or perceive the complainant to have a disability for a lack of knowledge of a disabling condition severs a causal connection between the complainant's disability and any personnel action. *Ahmad v. Postmaster General*, EEOC No. 01871714 (1987).

## Retaliation (Protected EEO Activity)

To state a prima facie case of retaliation the complainant must allege that: (1) he is engaged in a protected activity, (2) the employer subjected him to an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *Weston v. Pennsylvania*, 251 F. 3d 420, 430 (ed. Cir. 2001); see also *Aguilar v. Morgan Corp.*, 27 F. App 110, 112 (e3d Cir. 2002); *Glenn v. Horgan Bros., Inc.* No. Civ. A. 03-6578, 2005 WL 1503428 (E.D. Pa. June 24, 2005). Knowledge by the employer of the employee's engagement in protected activity is crucial to establishing the causal link.

The first step in the process is for the complainant to present evidence sufficient to establish an inference of retaliation. Testimony grounded on speculation is not enough to create a genuine issue of material fact. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496

UNCLASSIFIED

(7th Cir. 2004). Essentially, complainant has to show knowledge by the retaliating party of the protected activity in which the aggrieved claims a basis for reprisal. *Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002); *Sitar v. Ind. Dept. of Transportation*, 344 F.3d 720, 727(7th Cir. 2003). The inference of retaliation is negated in the absence of any evidence that the decision-maker was aware of the protected activity, even if others that were not involved in any adverse determination may have had some knowledge of the protected activity.

A second critical element that must be established by the complainant for creating the inference of retaliation is a demonstration of temporal proximity between the adverse action and the protected activity, and the time frame needs to be proximate. *Clark County School District v. Breeden*, 532 U.S. 268 (2001). Generally, the more of a lapse in time between the employee's engagement in the activity and the imposition of an adverse action, the less import is afforded to the inference.

## Religion (Jewish) and Sex (Male) Claims

Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., prohibits discriminatory practices in employment with the federal government, based on religion and sex. In the absence of direct evidence of discrimination, the three-part analysis detailed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 @ 802 (1973), encompasses claims of religious or sex discrimination alleging disparate treatment. The complainant is required to establish a *prima facie* case by presenting facts reasonably giving rise to an inference of discrimination when otherwise not explained. The burden is on complainant to establish his case of unlawful discrimination by a preponderance of the evidence. *McDonnell Douglas Corp.*; *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24 (1978); *Furnco Construction Corporation v. Waters*, 438 U.S. 567 (1978). This means that Complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur. *Teamsters v. U.S.*, 431 U.S. 324 (1977).

If Complainant meets this burden, the burden of production shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). This burden is not a burden of proving that there was no discriminatory motive, but is simply one of production. *Burdine*, at 254-56. Once the agency articulates a legitimate, non-discriminatory reason for the challenged action, the *prima facie* case disappears. *St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)*; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). The Complainant then has the burden to prove by preponderant evidence that the agency's proffered reasons are merely a pretext for discrimination and that discrimination was the motivating factor. *Burdine*, at 256; see also, *St. Mary's Honor Center, supra*; *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). At all times, Complainant has the burden of proof. *St. Mary's Honor Center, supra*.

UNCLASSIFIED

The essence of the *prima facie* case is that Complainant presents direct or circumstantial evidence sufficient to generate a reasonable inference by the fact-finder that a prohibited consideration, such as sex or religion, was a factor in the adverse employment action. *Furnco Construction Co. v. Waters*, 438 U.S. 567 (1978); *McNeil v. Department of Defense*, EEOC Appeal No. 01980212 (June 13, 2001).

Complainant must also establish that a managing official knew of complainant's sex or religion for intentional discrimination based upon either.  If the responsible agency official was unaware of the religion or sex of the complainant, then there is no basis for intentional discrimination. *Ahmad v. Postmaster General*, EEOC 01871714 (1987).

## Facts

### Complainant's Testimony

The complainant was a supervisory contract specialist, IA-1102-04, in the Office of Contract Services Policy Branch (CSP), Office of Contract Service, NGA, at the time of his application for a vacant position as a Pay Band 05 supervisory contract specialist (IF pp 53, 54).  His second line supervisor was Daniel Hinchberger and the two interacted once every few months (IF p 54).  Complainant had no organizational relationship with Mr. Unis but did speak infrequently with him on business subjects.  Complainant had been supervised in the past for some period of time by Ms. Verdon, having daily contact then, but their contact was much less frequent after she stopped serving as his supervisor (IF p 54).  Ms. Williams had also been a former supervisor of complainant dating back to approximately three years prior to the complaint; while in a supervisory relationship their contact was daily, thereafter, the contact was much less frequent (IF p 55).  Complainant alleges that Mr. Hinchberger, Mr. Unis, Ms. Verdon, Ms. Williams, and Ms. Crawford were responsible for discriminating against him as either panel members or as the approving official of the panel's recommendation (IF p 53).

He claims that he was discriminated against on the bases of age, religion, sex, and in reprisal for his filing EEO complaints with other agencies and because of FOIA and IG requests (IF p 53).[1]  He notes that he had a history of filing EEO complaints before coming to NGA in 2006, though this particular complaint is the first filed since his employment with NGA (IF p 55).  Complainant believes that during the selection process, NGA officials were aware of his EEO activity, as well as his request to serve as an EEO counselor at NGA (IF p 55).  He does not recall who his supervisor was at the time but it was someone in OCS.  He states that he was ultimately approved to be a counselor, but whether someone who files EEO complaints should serve as an EEO counselor had been an issue.  Though he did not think it to be an issue, the agency did because while he was attending the class the instructor told him that the instructor was well-aware of his history and that it had been discussed at NGA; the instructor reported to complainant that he had been consulted by another agency in regard to the

---

[1] Complainant does not specifically identify a disabling condition as a basis for discrimination in his declaration, but a last comment alludes to his disability impacting the selection process.

UNCLASSIFIED

complaints previously filed against that agency (IF p 55). When he asked to serve a second year, complainant was informed that his services were not needed (IF p 55). He is clear that he is not claiming reprisal for the filing of this complaint but, instead, for the EEO activity from 1979-2006, prior to his NGA employment, that the managing officials could have learned of and then used to deny him an interview (IF p 55). Generally, the past complaints involved non-selections, promotions, and training, most were based upon religion, with many evolving into court cases discoverable on the internet (IF p 55). Complainant maintains his EEO cases' presence on the internet demonstrates that the agency must have had knowledge of how litigious he has been (IF p 55). He believes that everyone including Mr. Hinchberger was aware of the EEO activity, though he does not know how or when Mr. Hinchberger learned of it (IF p 56). Mr. Uris must have known as well but complainant does not know how he had gained knowledge of the EEO activity. Nobody ever acknowledged learning of his EEO activity but he is nonetheless convinced that everyone knew, including Ms. Verdon, Ms. Williams, and Ms. Crawford (IF p 56, 57).

Complainant specifically alleges that NGA officials believe his EEO complaints from prior employment to be frivolous; and in regard to his non-selection, the officials acted on their belief that he was a frequent-flier of frivolous complaints, and to avoid a non-selection complaint, purposely scored him so as to not be selected for an interview (IF p 57). He claims that they think his EEO history would preclude him from being an effective supervisor and would project a negative managerial style and ability (IF p 57). Complainant believes his qualifications for the position to be prominent and that the resume listing of his experience does not really provide a "succinct argument of my qualifications" (IF p 58). He is sure that he is better qualified than the selectee because he was certain to have had more experience even if he did not know the details of the selectee's experience (IF p 58). Because he is the oldest person who applied for the vacancy and has over 30 years of experience, he does not believe there could be anybody more qualified (IF p 58). In short, his claim is that he has more experience, training, and knowledge than anyone who was selected for an interview even though he does not know who applied for the position; he asserts that such makes him superior to the other candidates (IF p 58). He admits that he does not know for a fact, but believes, he is more qualified than others and cites to his education, training, and certifications (IF p 58), also detailing his acquisition assignments (IF p 59).

Complainant explains what the selection panel officials did to discriminate. The officials did not interview him or select him. He "...imagines that they did not objectively score..." him so as to avoid having to interview and select him for the position (IF p 59). Though he cannot cite to "overt comments" by the officials related to his age, religion, or sex, he does know that this particular group of officials act with impunity (IF p 59). He is confident that the officials knocked the scores down so that he fell below the cutoff line for interviews because they had a negative view of him. Their view arose from his complaints, religion, dress and appearance, and his not meeting their idealized view of what a supervisor is to be (IF p 59). There is no other explanation for his being excluded from an interview (IF p 59). The scoring data and the communication between panel members trying to reconcile the scoring will reveal the lack of objectivity (IF p 60).

UNCLASSIFIED

Complainant presumed that there was lobbying among the panel to push him farther down the list (IF p 60).

Complainant asserts that he was treated differently in the selection process because of his age, believing all other applicants selected to be interviewed to be younger than he (IF p 60).  He maintains that the agency has a record of promoting younger employees as opposed to older and moving older employees into dead end positions or jobs that are less qualifying for future promotions (IF p 61).  He further asserts that he was treated differently because of his religion.  Though he does not know the religion of other applicants, he presumes that no one that might have applied exhibits the religious dress and behaviors of complainant (IF p 61).   Based upon his religion he states that he was treated negatively (IF p 61).

Complainant also believes he was treated differently because of his sex based upon his contention that most selectees in OCS are female; he believes that a female was selected for the position (IF p 62, 63).  He indicates that Ms. Crawford probably did not want complainant interviewed so she gave instructions to the panel and told the team lead of the panel which applicant should be selected (IF p 62).

Finally, complainant declares that he was subject to reprisal in not being interviewed and selected for the position because of the negative attitude officials had as to his being a "complainer, particularly EEO" (IF p 63).  Though the officials did not "taunt me about being a frequent-flier", he is convinced it played a "decisive role in the non-selection" (IF p 63).  He adds that he has a disabling condition which also served as a basis for officials discriminating against him but he will not disclose information about it for privacy reasons (IF p 63).  He does not believe anyone within the agency was aware of the disability but states "...that does not mean that the condition did not affect the selection action." (IF p 63); he adds that because he cannot disclose the details of the disability, he is unable to explain how or why he was discriminated against based upon the disability, except to state that he thinks they perceived some part of his behavior as being a disability (IF p 63).

**Management's testimony**

**Testimony of Daniel Hinchberger**

Mr. Hinchberger was serving as the Group Chief within the Compliance and Operations Group, Office of Contract Services, NGA, during the time giving rise to this complaint.  Mr. Hinchberger is a male over 40 years of age, does not identify with a specific religion, and is without a disabling condition (IF pp 66, 67).  He does not know the complainant's age but guesses him to be a male in his early sixties (IF pp 66, 67, 73).  Mr. Hinchberger believes complainant to be Jewish because the complainant wears a skull cap and the two had spoken in the past about complainant's religion (IF p 66).   He knew nothing of any disabling condition of complainant and has never regarded

UNCLASSIFIED

complainant as being unable to do something because of a mental or physical impairment (IF p 68). He does not specifically recall knowing of prior EEO activity by complainant and states that if complainant had mentioned it before, he does not recall any details (IF p 68, 72-73).

Age, religion, sex, and prior EEO activity were not factors in the decision to not offer complainant an opportunity to interview (IF pp 73, 74). Similarly, complainant's physical or mental condition did not factor into the decision as Mr. Hinchberger was unaware of complainant having any kind of a disability (IF p 74). In response to complainant's allegation that the panel retaliated against him for his EEO activity, Mr. Hinchberger denies knowing of complainant's FOIA or IG complaints; admits to some vague recollection of something EEO related but not presenting as an issue or creating a negative impression in his mind; and affirmatively asserts that the panel did not discuss anything related to EEO activity (IF p 75). He disputes any of the characterizations by the complainant that the panel acted unfairly, held any age or religious bias, acted with impunity or viewed the complainant negatively (IF p 75, 76). Instead, Mr. Hinchberger contends that the panel acted in good faith to find the best candidate and without influence from Ms. Crawford (IF p 77). He maintains that he was not directed or persuaded to recommend, or not to recommend, a particular candidate (IF p 73). He denies any knowledge of complainant's past refusals to sign documents based upon religion or moral obligation (IF p 77).

He served as the panel chair and insured that the diversity requirements mandated by the agency for the composition of the panel were followed. The panel was comprised of one female, one male, and one minority (African-American); all were division chiefs of the OCS operational groups and knew the work would not entail staff-oriented functions (IF p 69). Panel members received the referral certificate with 16 applicants deemed qualified by HR. The certificate contained no information as to applicants' age, religion, sex, disabling conditions, or EEO activity (IF p 70). Each panel member independently rated and ranked the applicants' resumes and the scores were then considered by the panel for any splits (difference of more than "2" on the individual panel member scores) (IF p 69). The resumes were evaluated and scored based on criteria contained in the vacancy announcement (IF p 69)[2]. Splits are discussed and reconciled; all four panel members rated complainant a "5" so he was not discussed (IF pp 69, 70). The panel then looked for a logical break point for candidates to be interviewed and decided to interview only those candidates with a score of "7" or above (IF p 69). At the conclusion of the interview process the panel had a consensus discussion as to a recommendation for a selection. The recommendation was subsequently approved by Ms. Crawford (IF pp 69, 70).

Mr. Hinchberger's biggest concern as to complainant's qualifications centered on the complainant's apparent lack of supervisory experience; complainant had no or limited supervisory experience in an operational contracting role (IF p 70). Complainant had

---

[2] Vacancy announcement (IF p 166-168) details the assignment description, mandatory and desirable criteria; Work role description (IF p 164) identifies competencies, knowledge, and skills for the position.

UNCLASSIFIED

decent contracting experience but not to the depth or breadth of other candidates (IF p 71).

Complainant's not being selected for an interview was not a personal decision against him but was based upon his mid-range score (IF p 71). To complainant's claim that he should have been selected as the best qualified applicant for the position because of his 30 years of experience and multiple DAWIA certifications and training courses, Mr. Hinchberger contends the person with the most working experience is not necessarily the best manager (IF p 73). He states that the selectee had a greater degree of demonstrated success and at a slightly higher level than complainant (IF p 73).

## Testimony of Richard Unis

Mr. Unis was a member of the selection panel (IF p 83). He is over 40, male, Lutheran, and not disabled (IF p 81). At the time of his service on the panel he was the Contracts Division Chief for OCSR, a division within the Contracts Directorate (OCS) (IF p 82). He is aware of complainant's religion as the complainant had mentioned it to him (IF p 81, 86), but was unaware of any disabling condition of the complainant (IF pp 83, 86) or any prior EEO activity of the complainant (IF pp 82, 86, 88).

Notwithstanding knowing complainant, Mr. Unis did not know his exact age but believed him to be near 60 (IF pp 85, 81); he did know of complainant's sex (IF p 86). Neither age, nor religion, nor sex were factors in the decision as to whether to interview complainant (IF p 86). Mr. Unis was not directed or persuaded to recommend, or to exclude, a particular candidate for consideration (IF p 86).

Mr. Unis denies having a negative view of complainant or acting with impunity (IF p 88). He claims to harbor no objections to complainant's religion or dress but scored the resume solely against the selection criteria (IF p 88). There was no lobbying by panel members to move the complainant down the list of qualified candidates. Complainant was not interviewed because there were better qualified candidates than he (IF pp 88, 89). As to age, Mr. Unis specifies the selectee was not a "younger, fresher leader"[3] , but the best qualified candidate based on experience (IF pp 89, 85). He further explains his belief that OCS promotes the best candidates based on the pool of applicants for the position with recent selections for Pay Band 5 vacancies coming from applicants aged in their upper 40's and 50's (IF p 89). His observation of selectees for Pay Band 5 positions over the last 6 to 7 years appear to be essentially equally split between the sexes (IF p 89). Mr. Unis is not aware of any contracting officer being pressured to sign a document or contract action which the contracting officer does not support; referring it up to a supervisor is the prescribed resolution within OCS (IF p 90).

A large pool of referred candidates potentially meeting the selection criteria was provided to Mr. Unis for scoring (IF p 83). He reviewed the resumes on his own by

---

[3] Mr. Unis includes the language used by complainant in his testimonial response to the investigator.

11

UNCLASSIFIED

using the requirements of the position in the AON vacancy announcement against the experience listed in the resume. He then ranked the candidates by how well they met the criteria assigning a score to each resume (IF p 83). Complainant's resume was scored as a "5" because of the lack of broad experience across NGA contracting. The position had been delineated as one of the most senior within the office of contracting and the need was for a candidate with considerable contract experience within multiple buying divisions of NGA (IF p 83).

After individually rating candidates, the panel came together to discuss differences of more than two rating points per candidate but Mr. Unis does not recall any contentiousness (IF p 84). The panel then determined which candidates to interview based upon a natural cut point and complainant was not among the group rated as a top applicant (IF p 84). Interviews were then conducted and the eventual selectee had supervisory contract experience across four different buying divisions within NGA contracts. She was then serving in a deputy role, had source selection experience, and had a good understanding of various customers across the agency. Complainant did not have the experience level working in buying divisions at NGA (IF p 85).

The panel passed the recommendation for the selectee to Mr. Hinchberger and the selectee was ultimately hired (IF p 85).


**Testimony of Tammy Verdon**

Supervisory contract specialist Ms. Verdon was a panel member involved in the evaluation of complainant's application for the position (IF p 94). She is over 40, a non-practicing Catholic, female, without a disabling condition or evidence of any prior EEO activity (IF pp 93-94). She believes complainant is a bit older than she; is Jewish based upon conversations about his religion and her sexual orientation (IF p 92); and that he is male (IF p 93). She knew nothing of complainant's disabling condition or any prior EEO activity by complainant (IF pp 93, 94). She maintains that she is still unaware of any impairment or disability of complainant (IF p 94).

Her service on selection panels is common and as an OCS supervisor she is frequently asked to be on panels (IF p 94). The process is for HR to announce the vacancy and then to compile the applications, look at resumes and compile those meeting the position description requirements (IF p 94). Panel members are then given the resumes to rate and score against the job description and the panel scored the applicants individually, meeting as a team to compile the scores and rank order the resumes. The panel then interviewed only the most highly rated resumes (IF p 94, 95).

Ms. Verdon did not rate complainant high because of weakness in leadership and strategic involvement. He had strong contracting knowledge but no experience in leading medium or large teams. His resume did not clearly reflect strategic thinking/ agility, nor did he have demonstrated experience in setting up a larger operation and

UNCLASSIFIED

implementing it. Complainant had not managed across organizational lines or been involved in resolving or implementing strategic visions (IF p 95). These deficits were not weaknesses of the eventual selectee in that the selectee had leadership experience in her previous supervisory roles and worked with multiple major systems customers (IF p 95, 96). Some of the applicants scored in the low range of 1 through 3 having missed the mark. Some scored in the solid range of 7 through 9, but the bulk of the applicants were in the mid-range of 4-6 (IF p 96).

The panel decided that it would interview the strong, competitive group of applicants and a cut line for interviews was established based upon the resume ranking (IF p 96). A logical cut point yielded a group of 7 or 8 interview candidates (if p 96). Of the group interviewed, she did not know the interviewees' religion, disability status, prior EEO activity, nor exact age (IF p 96). As to complainant specifically, Ms. Verdon did not know his age (although she did have an assumption), any prior EEO activity, or any claimed or perceived disabling condition (IF p 98). She did know his religion and sex (IF p 98), but maintains that none of those factors were considered or of consequence in the decision as to whom to interview (IF p 98). She was not directed or influenced to recommend a particular candidate, nor directed or persuaded not to recommend a particular candidate (IF p 98).

Ms. Verdon rejects complainant's claims of bias by the panel, members acting with impunity, the panel's negative view of complainant or preference for younger candidates, individual members' favoritism for female and veteran applicants, and intent to discriminate against those of a specified religious practice or belief (IF pp 99-102). She acknowledges the evaluation of resumes does involve subjectivity, but recognizes complainant's resume as reflecting subject matter expertise as a contracting officer. She maintains that his experience does not demonstrate leadership proficiencies with medium to large contracting teams, and she states that complainant's resume did not reveal strength in supervision, resource management, personnel development, and strategic leadership (IF p 99).

**Testimony of Johnetta Williams**

Ms. Williams is over 40, Catholic, female, does not consider herself disabled, and has no knowledge of any EEO activity pursued by complainant (IF pp 105,106, 109). During the period giving rise to the complaint, she was employed with NGA as a supervisory contract specialist, IA-1102-05, serving as the division chief of OCSJ, Office of Contract Services (IF p 106). She knew the complainant from a period of time when she had been his direct supervisor (IF p 105) and she continued to periodically see him in the hallways (IF p 106). She believed complainant to be in his mid-sixties, Jewish (because he talked of his family traditions and wore a yarmulke) (IF pp 105, 106, 109), and male (IF p 106).

UNCLASSIFIED

On September 6, 2013, Ms. Williams was serving as the female representative to the selection panel (IF p 107). She remembered the selection process as entailing an individual review of resumes based upon key experiences, strengths, knowledge, skills, and abilities; a determination as to whether the candidate met the position criteria; and a scoring and rank ordering of the resumes prior to convening as a panel (IF p 107). The panel chair was Mr. Hinchberger and she had turned her scores over to him. Because of the number of applicants, a cutoff was set but she could not recall how that was determined (IF p 107). With the cutoff established, the panel met to assess which candidates would be interviewed. Each interviewee was scored separately by the panel members and after concluding all interviews, the scores were then shared with the entire panel. A consensus was reached as to the selectee, Karen Eichelberger, and the recommendation went forward to Ms. Crawford (IF p 107).

The panel did not interview complainant. He was not interviewed based solely upon his not meeting the cutoff, and not because of any conversation among the panel involving complainant personally (IF p 108). Although his qualifications were not lacking, they were not at the level of those selected to be interviewed (IF p 109). Ms. Williams was not directed or influenced to recommend, or not recommend, any particular candidate (IF p 109); and complainant's age, religion, and sex were not factors in her decision as to complainant's overall qualifications (IF p 109, 110). She disclaims any knowledge of prior EEO activity involving the complainant, and states that she was not aware of any disabling condition of his such that they could have been factors in her decision as to whether complainant was to be selected for an interview (IF pp 109, 110). As to specific allegations by complainant of the panel's behavior, thought processes, conduct in execution of the selection procedure, religious intolerance, sex and veteran status favoritism, and negative views of complainant, Ms. Williams disputes what complainant alleges (IF pp 111-114). The panel had a responsibility to select the best qualified applicant and other candidates were rated, interviewed, and found to be better qualified than complainant (IF p 112).

**Testimony of Tonya Crawford**

Ms. Crawford is also over 40, Christian, female, does not consider herself disabled, and has no knowledge of any of complainant's prior EEO activity, nor of any disabling condition experienced by complainant (IF pp 116-118, 119-120). Ms. Crawford was involved in the selection process as an approving official, seeing all application packets and a summary of the panel's process and interviews conducted (IF p 118). She looked at the results to see whether the panel complied with agency rules and to verify that the panel conducted a resume review as a precursor to selecting prospective interviewees (IF p 118). After determining that the panel had complied with guidelines and established a cutoff based upon criteria, she reviewed the panel's scoring of the interviewees based upon objective criteria (IF p 118). She concurred with the way the process was run in this case (IF p 119).

14

UNCLASSIFIED

Her recollection of complainant's resume, as compared to the ultimate selectee's, led her to conclude that complainant, although an excellent performer, was not as strong a candidate as the selectee; complainant did not have the extensive leadership or collaborative networks (IF p 119). Notwithstanding complainant's wealth of technical experience, the panel was to be considering breadth of leadership experience and evidence of collaboration as well (IF p 121).

Ms. Crawford had no personal knowledge of any of complainant's EEO activity, nor how the panel would have even been able to find out such information. In response to complainant's statements regarding the panel's scoring bias, acting with impunity, and negative views of complainant because of his religion, Ms. Crawford denies each claim (IF p 122). She relates that vacancy announcements increasingly require higher levels of demonstrated leadership for supervisory positions (IF p 122). She notes that her organization looks at all applicants and endeavors to pick the right leader based upon the resume and interview, age and religion having nothing to do with the decision (IF p 123).

**Testimony of Natasha Grant**

As an HR Specialist assigned to Recruitment, Human Resource Pilot Management Division, Human Development Directorate, Ms. Grant did not know the age, religion, disability status, or record of any prior EEO activity of the complainant (IF pp 128, 129). She presumed, but did not know for sure, that complainant was male because of the name on the application (IF p 128). In short, she did not know him (IF p 128).

She served as the recruiter for the job announcement, receiving all applications and resumes; then creating a referral certificate of those screened who meet the mandatory hiring criteria set by the hiring manager (IF p 129). The panel has to rate and rank resumes from the referral list, subsequently meeting to establish a cutoff point for those candidates to be interviewed (IF p 130). If there is a clear break among the scores, then there is no reason to interview low scoring applicants (IF p 130). Once a selection is made, the recruiter reviews the procedure followed to insure that the selection process was properly conducted (IF p 129). Panel members and selection officials are not provided any demographic data as to the applicants' age, race, sex, disability or prior EEO activity, but do see the name of each applicant (IF p 130, 131). The rules and regulations were followed in this selection (IF p 131).

**Complainant's Rebuttal:** Complainant did not provide any rebuttal or additional explanatory response to the Investigator. As noted above, complainant also did not provide any rebuttal after being afforded the opportunity pursuant to the Commission's decision on appeal.

UNCLASSIFIED

## **Analysis**

Complainant contends that he was discriminated against based on his age, sex, religion, disabling condition, and in reprisal for his prior EEO activity, when on September 6, 2013, he was not interviewed or selected for a vacant supervisory Pay Band 5 position within the OCS.   On appeal, complainant claimed the record was deficient because it did not contain the applications for the candidates selected for an interview, precluding the Agency from being able to carry its burden to assert a nondiscriminatory, rational reason for its action.

### Person with a Disability

This aspect of complainant's claim was dismissed by the agency EEO official for failure to state a claim (IF pp 45, 292).  During the investigation, complainant refused to identify the nature of his claimed disability and to state whether it was mental or physical (IF p 292).  There is no evidence of his ever disclosing his disability to any of the responsible managing officials.  Each of the witnesses denies any knowledge of complainant's disability or a perception that he was disabled in any manner.  Because he does not want to disclose information about his condition for privacy reasons (IF p 63), does not believe anyone within the agency was aware of the disability (IF p 63), and is unable to explain how or why he was discriminated against based upon the disability, except to state that he thinks "they" perceived some part of his behavior as being a disability (IF p 63), complainant has failed to state an evidentiary basis for a claim or to establish a causal connection between the disabling condition and the adverse  personnel action.

Further, the EEOC has determined that an individual is not a person with a disability unless the impairment prevents the person from working across a range of jobs or engaging in a major life activity to the same extent as an average person.  Because complainant has not alleged or established a disability as impacting any of his major life activities such as to substantially limit them when compared to an average person, and because he has no record of impairment, nor evidence of being regarded as impaired, he has not established himself as an individual with a disability.

### Retaliation for EEO Protected Activity

This allegation by complainant was also dismissed by the EEO office as detailed in the Notice of Partial Acceptance of Discrimination Complaint (IF pp 45-49).  Essentially, complainant asserts that he was not interviewed or selected for a position as a Pay Band 5 supervisory contract specialist because managerial officials knew of his prior EEO history and construed the evaluation of his application so as to preclude him an opportunity to interview. The EEO official upon review of his allegation concluded that complainant failed to illustrate how he was treated differently than other applicants denied an interview.

16

UNCLASSIFIED

The complainant alleged that he was engaged in protected EEO activity at his prior employment location(s), and because of it, his current managing officials subjected him to an adverse employment action, the non-selection for an interview resulting in his not being selected for the position. Showing knowledge by the employer of the employee's engagement in protected activity is part of complainant's case. Knowledge by the retaliating party of the protected activity in which the aggrieved claims a basis for reprisal is a critical first step. *Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002); *Sitar v. Ind. Dept. of Transportation*, 344 F.3d 720, 727(7th Cir. 2003). The inference of retaliation is negated in the absence of any evidence that the decision-maker was aware of the protected activity, even if others that were not involved in any adverse determination may have had some knowledge of the protected activity.

Complainant maintains his EEO cases' presence on the internet demonstrates that the agency must have had knowledge of how litigious he has been (IF p 55). He believes that everyone including Mr. Hinchberger was aware of the EEO activity, though he does not know how or when Mr. Hinchberger would have learned of it (IF p 56). Mr. Unis must have known as well, but complainant does not know how he had gained knowledge of the EEO activity. Nobody ever said to him that they had heard of his EEO activity but he is nonetheless convinced that everyone knew, including Ms. Verdon, Ms. Williams, and Ms. Crawford (IF p 56, 57).

To the contrary, every managing official other than Mr. Hinchberger denied any knowledge of complainant's past EEO activity. Each denied any consideration of complainant's earlier EEO activity in the evaluation process. Mr. Hinchberger alluded to only a vague recollection of the complainant possibly mentioning something about past EEO activity, denying any recollection of specifics and clearly stating that complainant's EEO activity was not a factor in any part of the selection process.

Testimony grounded in speculation is not enough to create a genuine issue of material fact. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496 (7th Cir. 2004). Complainant has not produced any evidence from which to validly impute or attribute knowledge of his prior EEO activity to the managing officials, or any evidence that the non-selection was in retaliation for the EEO activity. His speculation and conclusions based upon conjecture does not constitute evidence.

A second critical element to be established by the complainant for creating the inference of retaliation is a demonstration of temporal proximity between the adverse action and the protected activity, and that time frame needs to be very close indeed. By complainant's own testimony, there has been no EEO activity since his employment with NGA. Complainant does make clear that he is not claiming reprisal for the filing of this complaint but for the EEO activity prior to his NGA employment, a time period from 1979-2006 (IF p 55), and over six years prior to the date of the alleged reprisal.

UNCLASSIFIED

*Construction Corporation v. Waters,* 438 U.S. 567 (1978).  This means that Complainant must present evidence to the degree that if it were not rebutted, the trier of fact could conclude that unlawful discrimination did occur. *Teamsters v. U.S.,* 431 U.S. 324 (1977).

Complainant maintains that he was denied an opportunity to interview because of his religion.  He offers as facts giving rise to a reasonable inference of discrimination that he was the best qualified person for the position based upon his training and experience.  Notwithstanding, he was not selected for an interview and it must be because management officials noted his religious dress, appearance, and associated behaviors. He presumes that no one that might have applied exhibits a similar religious dress, practice, and manner.

Management officials on the panel acknowledge that they knew of complainant's religion either by complainant's telling them in past discussions or by concluding that complainant was Jewish through associating his dress and appearance with the Jewish faith.  Each management official denied any consideration of his faith or faith-based practice in evaluation of his resume.  All attest that the subject was never discussed or referenced by innuendo.  Complainant presents only his conclusion that his faith was a factor in the selection process.  Management's articulation of complainant's qualifications for the position vis-à-vis the qualifications within the resumes of those selected for interview stand as reasonable explanations for excluding complainant from the interview process, negating complainant's inference of discrimination.  Three of the four evaluators served in a supervisory role over complainant at some point in time prior to their service on the selection panel.  Complainant suggests nothing indicative of any bias as to his religious faith exhibited by these management officials toward him prior to their scoring his resume.  For religion to have been a factor, each evaluator while evaluating complainant's resume in a private setting, would have had to have discriminated against complainant for his cumulative score to have been so impacted.  Panel members deny any lobbying to move the complainant down the list of qualified candidates.

Sex is similarly claimed as a discriminatory basis.  Complainant alleges that management desired a female for the position, and because he was a male, he was not selected to be interviewed, precluding his chance at being offered the position.  A female was selected as best qualified from those selected for interview.  Because the selectee for the position could only come from those qualifying for interview pursuant to the policy, because both males and females were selected to be interviewed, he was not disadvantaged or distinguished from the qualifying group on the basis of his sex.

## Arguendo

Once the agency articulates a legitimate, non-discriminatory reason for the challenged action, the *prima facie* case disappears. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000). The

UNCLASSIFIED

Complainant then has the burden to prove by preponderant evidence that the agency's proffered reason(s) are merely a pretext for discrimination and that discrimination was the motivating factor for the personnel action.   If Complainant meets this burden, the burden of production shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions.  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  This burden is not a burden of proving that there was no discriminatory motive, but is simply one of production.  *Burdine*, at 254-56.

Assuming for a moment that complainant did present a *prima facie* case as to any one or combination of age, religion, or sex discrimination, management officials have articulated a legitimate reason for their action.  All members of the evaluation team attest that they endeavored to follow NGA hiring policies and practices, had participated in many hiring panels before, acted in good faith, and aimed to accomplish their mission to hire the best qualified candidate.  In this case, the vacant position had been delineated as one of the most senior within the office of contracting and the need was for a candidate with considerable contract experience within multiple buying divisions of NGA.

Panel members expressed reservation as to complainant's lack of supervisory experience, especially in an operational contracting role.  Specifically, complainant did not have the experience level working in buying divisions at NGA; was viewed as having a weakness in leadership and strategic involvement; had strong contracting knowledge but no experience in leading medium or large teams; and his resume did not clearly reflect strategic thinking/ agility, or demonstrate experience in setting up and implementing large operations.  Further, complainant had not managed across organizational lines or been involved in resolving or implementing strategic visions.  His resume did not reveal strength in supervision, resource management, personnel development, and strategic leadership.  These deficits were not weaknesses of the eventual selectee.  Though complainant had decent contracting experience it was not to the depth or breadth of those candidates selected for interview.

In review of the resumes submitted as a result of complainant's appeal and the Commission's decision, all interviewees showed actual supervisory experience beyond an informal, team lead/supervisory assistant role.  The interviewees led significant contracting efforts, supervised organizational contracting teams, and/or possessed broad leadership experience.  Most of the resumes reveal multiple or lengthy supervisory assignments.  The few interviewees that did not show supervisory experience did possess experience related to an operational contracting assignment or area of extensive operational responsibility; consistent with the panel's screening criteria.

The Commission has noted that indicators of pretext include discriminatory statements, deviations from standard process without any proffered justification, statistical data showing different treatment, unequal enforcement or application of Agency policy, or inconsistencies without explanation in the evidentiary record.  In the present case, the resumes evaluated by each selection panel member were scored according to

20

UNCLASSIFIED

established practice and consistent with applicant selection panel procedures directed by the Agency's Human Development Directorate. The testimonies support that each panel member saw in the resumes of those selected for interview sufficient indications of the position requirement to have expertise in both contracting and leadership. All evaluators deny having held a negative view of complainant and emphasize that they scored the resumes only against the selection criteria. None were directed or persuaded to recommend, or not to recommend, a particular candidate. Complainant's non-selection for an interview was not a personal decision against him but attributable to his mid-range resume score.

Though resumes do not normally provide a great deal of context, these resumes were sufficiently detailed for a knowledgeable panel to be able to differentiate various degrees of supervisory from near-supervisory experience. Because senior officials believe vacancy announcements for supervisory positions should require higher degrees of demonstrated leadership, the distinction is with merit and was a legitimate measure for distinguishing those with the requisite skills from those remaining applicants.

Finally, the record suggests nothing that would serve as a basis for a claim by complainant that the Agency's stated legitimate non-discriminatory reasons for complainant's non-selection are merely pre-textual.

## DECISION

Accordingly, based on the record, as amended per the direction of the EEOC, it remains the decision of the Agency that Stan Laber, as complainant, failed to prove a claim of discrimination based on disability, reprisal, religion, sex, and age with respect to the issue accepted for investigation. The entire record has been reviewed and considered. The Agency concludes that there is no evidence of unlawful discrimination, and therefore, it is the final decision of the Agency that the complainant was not discriminated against, as alleged.

If you are dissatisfied with this decision, you have the following rights:

## NOTICE OF EEOC APPEAL RIGHTS

If you are dissatisfied with this decision, you (you, on behalf of your client) may file an appeal in accordance with 29 C.F.R. 1614.402 and 29 C.F.R. 1614.403 within thirty (30)

UNCLASSIFIED

calendar days of receipt of this correspondence.  You may submit the appeal in writing by mailing it to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> PO BOX 77960
> Washington, D.C. 20013

Or, you may send a facsimile of the appeal to:

> (202) 663-7022

The thirty day period for filing an appeal begins on the date of **receipt** of this decision. The appeal must be timely or it may be dismissed.  An appeal shall be deemed timely if it is delivered in person or postmarked before the expiration of the filing period, or in the absence of a legible postmark, the appeal is received by the Commission by mail within five (5) days after the expiration of the filing period.

A copy of EEOC Form 573, "Notice of Appeal/Petition" (enclosed), should be included with the appeal to indicate what is being appealed.  In or attached to the appeal sent to the commission, you must certify the date and method by which service was made on the agency.

Any statement or brief filed in support of the appeal must be submitted to the Director of the EEOC Office of Federal Operations (OFO) at the address given previously within thirty (30) calendar days of the filing of the appeal.  A copy of any statement or brief filed in support of the appeal must also be mailed to:

> National Geospatial-Intelligence Agency/ODE
> Attn: Patsy A. Coleman/Mail Stop L-11
> 3838 Vogel Road
> Arnold, Mo 63010

Following the receipt of the appeal and any brief or statement in support of the appeal, the Director, OFO, will request a copy of the complaint file from this agency.  NGA must submit the file and any statement or brief in opposition to the appeal to the OFO Director within thirty (30) days of receipt of the request for the complaint file.  A copy of the NGA statement or brief must be served on the complainant at the same time.

You are also asked to submit a copy of the appeal to the agency representative at:

UNCLASSIFIED

National Geospatial-Intelligence Agency
Office of General Counsel
Attn:  Jack Rickert/Mail Stop S71OGCA
7500 GEOINT Drive
Springfield, VA 22150

## NOTICE OF RIGHT TO FILE A CIVIL ACTION

29 C.F.R. Section 1614.408 provides that a complainant may file a civil action in an appropriate US District Court.  A civil action may be filed:

- Within ninety (90) calendar days of receipt of this decision if no appeal has been filed;
- Within ninety (90) calendar days after receipt of the EEOC's final decision or action on appeal; or
- After 180 calendar days from the date of filing an appeal with the EEOC if there has been no final decision by the Commission.

29 C.F.R. Section 1614.409 states that if a complainant alleges a violation of the Equal Pay Act, s/he is authorized under the Fair Labor Standards Act (29 U.S.C. 216(b)) to file a civil action in a court of competent jurisdiction within two years, or, if the violation is willful, three years of the date of the alleged violation regardless of whether s/he pursued any complaint processing.  Recovery of back wages is limited to two years prior to the date of filing suit, or to three years if the violation is deemed willful; liquidated damages in an equal amount may also be awarded.  The filing of a complaint or appeal in that instance does not toll the time for filing a civil action.

The official agency head or department head must be named as the defendant.  The terms, "agency" or "department" include the national organization, and not just the local office, facility, or department in which the complainant works.  Do not name just the agency or department.  In this instance, Chuck Hagel, Secretary, US Department of Defense is the proper defendant.  Failure to provide the name or official title of the agency head or department head may result in dismissal of the case.

If you decide to file a civil action and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney for you.  You may also ask the court to grant permission to file the action, without fees, costs or other security.  The granting or denial of an attorney does not extend the time in which to file a civil action.  Both the request and the civil action must be filed within ninety (90) calendar days of the date after the Commission's decision has been received.

UNCLASSIFIED

## Docket Number

The Agency Case Number, NGAE-14-O03, should be used on all correspondence concerning this complaint and decision.

Sincerely,

CARDELL K. RICHARDSON, SR.
Director, Office of Diversity Management &
Equal Employment Opportunity

Enclosure
EEOC Form 573

cc:
National Geospatial-Intelligence Agency
Office of General Counsel
Attn:  Mr. Jack Rickert/Mail Stop S71OGCA
7500 GEOINT Drive
Springfield, VA 22150

24

# Exhibit 33



UNCLASSIFIED
## NATIONAL GEOSPATIAL-INTELLIGENCE AGENCY
7500 GEOINT Drive
Springfield, Virginia 22150

U-585-17/ODE                                    September 11, 2017

Mr. Stan Laber
321 S. Maine Ave.
Albany, New York 12209

                                Final Agency Decision in the
                                Complaint of Stan Laber
                                <u>v. James N. Mattis</u>, Secretary of
                                Defense, Agency No. NGAE-14-003

Dear Mr. Laber:

This is to inform you of the National Geospatial-Intelligence Agency (NGA), Department of Defense's (hereinafter referred to as the "Agency") final agency decision (FAD), regarding the Equal Employment Opportunity (EEO) discrimination complaint you, Mr. Stan Laber, (hereinafter, referred to as "you" or "the complainant") filed on March 10, 2014.

**This FAD is issued in further compliance with the Decision of the U.S. Equal Employment Opportunity Commission (EEOC), Appeal Number 0120150981, and dated April 4, 2017. The FAD specifically addresses documentary evidence ordered on appeal by the EEOC to be produced and analyzed in comparing the treatment of your group to similarly situated applicants.**

## Claim

You assert that you were subjected to discrimination on the basis of age (over 40), religion (Jewish), sex (male), disability (undesignated), and reprisal (protected EEO activity), when on September 6, 2013, you were not selected to be interviewed for, nor subsequently selected for the position of Contract Specialist, Pay Band 05, (AON 20130928).

## Finding

You have not established a factual basis from which to conclude that you were subjected to discrimination based on any of the claimed protected bases, as further explained below.

UNCLASSIFIED

## **Procedural History**

You filed a formal complaint of discrimination dated March 10, 2014, and a Notice of Receipt of the Complaint was mailed to you on March 13, 2014. On April 2, 2014, NGA issued a Notice of Partial Acceptance of the Discrimination Complaint, specifically dismissing the claim of discrimination based on disability for failure to state a claim pursuant to statute, and dismissal of the claim of discrimination based on reprisal for failure to allege any adverse action that was taken against you based upon prohibited activity covered by applicable statutes. You were advised to contact the EEO office if you believed the claims had not been correctly identified and that any failure to do so within five calendar days would be treated as a concurrence as to the accuracy of the accepted claims. Notwithstanding the notice that the dismissed claims would not be investigated, the investigator did inquire as to all claims made by complainant in the formal complaint (See Investigative File (IF), p 292, for Investigator's explanation).

The complaint was investigated from July 3, 2014 through August 8, 2013. You were mailed the Report of Investigation (ROI) on August 27, 2014 by overnight FedEx. A copy of a notice defining your right within 30 days, to request either: (1) a hearing before an Equal Employment Opportunity (EEOC) administrative judge, or (2) an immediate FAD, without a hearing, in accordance with 29 C.F.R. 1614.110, was also forwarded to you with the ROI.

You requested a FAD on September 22, 2014 via an email to the EEO counselor. The Agency issued a FAD on November 21, 2014 finding that you had failed to establish a factual basis evidencing you were subjected to discrimination. On December 22, 2014, you filed with the U.S. Equal Employment Opportunity Commission's (EEOC) Office of Federal Operations (OFO), and hereinafter referenced as "the Commission", an appeal of the FAD. You did not specify any issues for appellate review in your original notice. On February 2, 2015, the Commission acknowledged in writing a receipt of your appeal. Though you submitted an untimely appellate brief, the Commission exercised its discretion to consider your contentions. After a thorough review of the record, on April 4, 2017, the Commission vacated the Agency's original FAD dated November 21, 2014, and ordered further proceedings in accordance with enumerated requirements. The decision was received by the Agency on or about April 13, 2017, and neither party lodged an exception or requested reconsideration. The Agency was also directed to prepare a report of compliance addressing additional investigative documentation required. Prior to issuance of the report, the Agency mailed a letter to you on June 14, 2017, notifying you of your right to provide additional rebuttal information or documentary evidence. You were also given copies of the materials the Commission directed the Agency to collect and to be provided to you. On June 16, 2017, the Agency issued the required report to the Commission detailing the supplemental documentation provided to you, and highlighting that you were afforded an additional opportunity to submit further records or rebuttal information. By August 1, 2017, you had not provided any further information to the Agency, and to timely comply with the Decision, the Agency now issues this FAD to render a final decision on your complaint, to complete

UNCLASSIFIED

the record consistent with the Commission's Decision, and to provide you with your appellate rights.

## Background

The complainant was employed with the National Geospatial-Intelligence Agency having commenced his assignment with the Agency in November, 2006 (IF p 54). During the period of service which gave rise to the complaint, he served as a Contract Specialist-DAWIA, IA-1102-04, in the OCS Policy Branch (OCSP) of the Office of Contract Services (OCS) (IF p 54). His first line supervisor was Howard Pierce; his second line supervisor was Daniel Hinchberger (IF p 54). At some point in time, three of the four named discriminating officials served in a supervisory role as to complainant (IF pp 54, 55). The remainder of complainant's chain of command consisted of Susan Pollmann, his third level supervisor, and Tonya Crawford, Director of Office of Contract Services, and approving official of the selected applicant screened by the selection panel (IF p 117).

The vacancy announcement for Contract Specialist-DAWIA, IA-1102-05, opened on June 24, 2013; closed on July 5, 2013 (IF pp 166-169). He learned in September, 2013, that he was not selected for an interview. Complainant alleges that he was discriminated against in the screening process of the applications by the relevant managing officials, when they likely used subjective scoring to eliminate him from interview contention (IF pp 2, 7). Though the EEO Office did not accept the allegations of discrimination on the basis of reprisal for EEO activity and disability status, the ROI includes the investigator's factual inquiry into all allegations of discrimination in the complaint (IF p 292). No other specific example or allegation of discrimination appears from the ROI.

In conducting the investigation, documentary evidence and declarations were compiled. In addition to the complainant, the investigator interviewed Mr. Daniel Hinchberger, Mr. Richard Unis, Ms. Tammy Verdon, Ms. Johnetta Williams, and Ms. Tonya Crawford, collectively, the management officials alleged to have discriminated against complainant. The advising Human Development specialist, Ms. Natasha Grant, also furnished a declaration.

Declarations were obtained from: Complainant (IF pp 53-64); Mr. Daniel Hinchberger, Group Chief, (IF pp 66-78; job title @ p 67); Mr. Richard Unis, Contract Division Chief, (IF pp 81-90; job title @ p 82); Ms. Tamara Verdon, Supervisory Contract Specialist, (IF pp 92-103; job title @ p 93); Ms. Johnetta Williams, Supervisory Contract Specialist, (IF pp 105-114; job title @ p 106); Ms. Tonya Crawford, Director of Contracting, SES (III), Office of Contract Services (IF pp 116-125; title @ p 117); and Ms. Natasha Grant, Human Resource Specialist, Recruitment, Human Resource Pilot Management Division (IF pp 127-131; job title @ p 128). No other witnesses appear to have been requested by either the agency representative or the complainant.

3

UNCLASSIFIED

In addition to the testimonies through declarations, the ROI contained documentary evidence consisting of the formal complaint (IF pp 2-3); the EEO counselor's report with attachments (IF pp 6-13); associated procedural documents involved in the processing of the current complaint (IF pp 34-49); organizational charts/workplace profile (IF pp 140-150); resumes of the selectee and of the complainant (IF pp 172-179); and additional exhibits related to the position description, application processes and procedures, and relevant NGA policy and guidance (IF pp 153-278). Complainant's electronic mail transmissions (IF pp 137-138) and tables reflective of interviewee demographic data delineated by basis of discriminatory claim (IF pp 280-290), are also included. Finally, the ROI contains the "NGA Instruction for Filling Civilian Positions Including Promotions" and the Agency's "Policy Notice: Selection Panel Membership", the Agency's response to additional requests for information from the investigator, and documentation related to the investigator's processing of this investigation (See Index, ROI, @ p ii).

As a consequence of the Commission's Decision, the ROI was supplemented by:  the application materials of those applicants selected for interview for the specified position, and, demographic information of the interviewees to the extent that it was either collected in the application process (i.e.- religious preference is not collected by NGA) or provided by the interviewee.  Though provided an opportunity for further rebuttal, no additional materials came from the complainant.


## Applicable Law


**Age (Born ████████ 1945) Claim**

One aspect of the complaint arises under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq. (hereinafter the ADEA) which prohibits employers, including the Federal government, from discriminating against employees or applicants for employment age 40 and older in hiring, discharge or conditions of employment.  The ADEA also prohibits reprisal or retaliation against participation in the EEO process or for opposing any unlawful employment practices covered by the ADEA. 29 U.S.C. § 623(d). The ADEA requires complainants to demonstrate that employment decisions were made "because of age."  Complainant's ultimate burden, therefore, is to establish that age was a determinative factor in the Agency's decisions of which he is complaining. *Loeb v. Textron, Inc.*, 600 F. 2d 1003 (1st Cir. 1979) and *Johnson v. USPS*, EEOC Request No. 05910560 (September 17, 1991).

In order to prevail in an age discrimination claim under the ADEA, Complainant must generally show membership in the group of persons protected under the ADEA (i.e., persons age 40 or over); that Complainant was subjected to an adverse employment action; and that Complainant was disadvantaged in favor of a younger person similarly situated to Complainant. *Simpson v. Midland-Ross Corp.*, 823 F. 2d 937, 44 FEP

UNCLASSIFIED

Cases 418 (6th Cir. 1987); _Polstorff v. Fletcher_, 452 F. 2d 17, 17 FEP Cases 123 (D. Ala. 1978) (citing _Marshall v. Goodyear Tire & Rubber Co._, 554 F. 2d 730, 15 FEP Cases 139 (5th Cir. 1977). Further, in identifying members of Complainant's protected group, the Supreme Court has held that comparative employees do not have to be outside of Complainant's protected group (i.e., younger than 40 years of age). There simply has to be a sufficient disparity in age to suggest that an employee younger than Complainant received favored treatment. _O'Connor v. Consolidated Caterers_, 517 U.S. 308 (1996).

**Disability (Unstated Physical or Mental) Claim**

To establish a _prima facie_ case of disability discrimination under the Rehabilitation Act, complainant must demonstrate that (1) he is a person with a disability, (2) he is qualified for and can perform the position at issue, and (3) he received an adverse employment action as a result of his disability. _Maxwell v. Department of Veterans Affairs_, EEOC Appeal No. 01960916, 1998 WL 321127 (June 5, 1998). The Rehabilitation Act (29 C.F.R. s 1614.405(a)) decrees that it is unlawful to discriminate on the basis of a disability against a qualified person with a disability. To be a qualified individual with a disability, complainant must establish that he has (1) an impairment that substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. _Ocon v. Department of Transportation_, EEOC Appeal No. 01A35397, 2006 WL 1209735 (April 27, 2006).

An agency official must have knowledge of the complainant's disability or perceive the complainant to have a disability for a lack of knowledge of a disabling condition severs a causal connection between the complainant's disability and any personnel action. _Ahmad v. Postmaster General_, EEOC No. 01871714 (1987).

**Retaliation (Protected EEO Activity)**

To state a prima facie case of retaliation the complainant must allege that: (1) he is engaged in a protected activity, (2) the employer subjected him to an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. _Weston v. Pennsylvania_, 251 F. 3d 420, 430 (ed. Cir. 2001); see also _Aguilar v. Morgan Corp._, 27 F. App 110, 112 (e3d Cir. 2002); _Glenn v. Horgan Bros., Inc._ No. Civ. A. 03-6578, 2005 WL 1503428 (E.D. Pa. June 24, 2005). Knowledge by the employer of the employee's engagement in protected activity is crucial to establishing the causal link.

The first step in the process is for the complainant to present evidence sufficient to establish an inference of retaliation. Testimony grounded on speculation is not enough to create a genuine issue of material fact. _Buie v. Quad/Graphics, Inc._, 366 F.3d 496 (7th Cir. 2004). Essentially, complainant has to show knowledge by the retaliating party of the protected activity in which the aggrieved claims a basis for reprisal. _Petersen v._

5

UNCLASSIFIED

*Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002); *Sitar v. Ind. Dept. of Transportation*, 344 F.3d 720, 727(7th Cir. 2003). The inference of retaliation is negated in the absence of any evidence that the decision-maker was aware of the protected activity, even if others that were not involved in any adverse determination may have had some knowledge of the protected activity.

A second critical element that must be established by the complainant for creating the inference of retaliation is a demonstration of temporal proximity between the adverse action and the protected activity, and the time frame needs to be proximate. *Clark County School District v. Breeden*, 532 U.S. 268 (2001). Generally, the more of a lapse in time between the employee's engagement in the activity and the imposition of an adverse action, the less import is afforded to the inference.

## Religion (Jewish) and Sex (Male) Claims

Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., prohibits discriminatory practices in employment with the federal government, based on religion and sex. In the absence of direct evidence of discrimination, the three-part analysis detailed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 @ 802 (1973), encompasses claims of religious or sex discrimination alleging disparate treatment. The complainant is required to establish a *prima facie* case by presenting facts reasonably giving rise to an inference of discrimination when otherwise not explained. The burden is on complainant to establish his case of unlawful discrimination by a preponderance of the evidence. *McDonnell Douglas Corp.*; *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24 (1978); *Furnco Construction Corporation v. Waters,* 438 U.S. 567 (1978). This means that Complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur. *Teamsters v. U.S.,* 431 U.S. 324 (1977).

If Complainant meets this burden, the burden of production shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). This burden is not a burden of proving that there was no discriminatory motive, but is simply one of production. *Burdine*, at 254-56. Once the agency articulates a legitimate, non-discriminatory reason for the challenged action, the *prima facie* case disappears. *St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). The Complainant then has the burden to prove by preponderant evidence that the agency's proffered reasons are merely a pretext for discrimination and that discrimination was the motivating factor. *Burdine*, at 256; see also, *St. Mary's Honor Center, supra; Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). At all times, Complainant has the burden of proof. *St. Mary's Honor Center, supra.*

The essence of the *prima facie* case is that Complainant presents direct or circumstantial evidence sufficient to generate a reasonable inference by the fact-finder that a prohibited consideration, such as sex or religion, was a factor in the adverse

employment action. *Furnco Construction Co. v. Waters*, 438 U.S. 567 (1978); *McNeil v. Department of Defense*, EEOC Appeal No. 01980212 (June 13, 2001).

Complainant must also establish that a managing official knew of complainant's sex or religion for intentional discrimination based upon either.  If the responsible agency official was unaware of the religion or sex of the complainant, then there is no basis for intentional discrimination. *Ahmad v. Postmaster General*, EEOC 01871714 (1987).

## Facts

### Complainant's Testimony

The complainant was a supervisory contract specialist, IA-1102-04, in the Office of Contract Services Policy Branch (CSP), Office of Contract Service, NGA, at the time of his application for a vacant position as a Pay Band 05 supervisory contract specialist (IF pp 53, 54).  His second line supervisor was Daniel Hinchberger and the two interacted once every few months (IF p 54).  Complainant had no organizational relationship with Mr. Unis but did speak infrequently with him on business subjects.  Complainant had been supervised in the past for some period of time by Ms. Verdon, having daily contact then, but their contact was much less frequent after she stopped serving as his supervisor (IF p 54).  Ms. Williams had also been a former supervisor of complainant dating back to approximately three years prior to the complaint; while in a supervisory relationship their contact was daily, thereafter, the contact was much less frequent (IF p 55).  Complainant alleges that Mr. Hinchberger, Mr. Unis, Ms. Verdon, Ms. Williams, and Ms. Crawford were responsible for discriminating against him as either panel members or as the approving official of the panel's recommendation (IF p 53).

He claims that he was discriminated against on the bases of age, religion, sex, and in reprisal for his filing EEO complaints with other agencies and because of FOIA and IG requests (IF p 53).[1]  He notes that he had a history of filing EEO complaints before coming to NGA in 2006, though this particular complaint is the first filed since his employment with NGA (IF p 55).  Complainant believes that during the selection process, NGA officials were aware of his EEO activity, as well as his request to serve as an EEO counselor at NGA (IF p 55).  He does not recall who his supervisor was at the time but it was someone in OCS.  He states that he was ultimately approved to be a counselor, but whether someone who files EEO complaints should serve as an EEO counselor had been an issue.  Though he did not think it to be an issue, the agency did because while he was attending the class the instructor told him that the instructor was well-aware of his history and that it had been discussed at NGA; the instructor reported to complainant that he had been consulted by another agency in regard to the complaints previously filed against that agency (IF p 55).  When he asked to serve a second year, complainant was informed that his services were not needed (IF p 55).  He is clear that he is not claiming reprisal for the filing of this complaint but, instead, for the

---

[1] Complainant does not specifically identify a disabling condition as a basis for discrimination in his declaration, but a last comment alludes to his disability impacting the selection process.

UNCLASSIFIED

EEO activity from 1979-2006, prior to his NGA employment, that the managing officials could have learned of and then used to deny him an interview (IF p 55). Generally, the past complaints involved non-selections, promotions, and training, most were based upon religion, with many evolving into court cases discoverable on the internet (IF p 55). Complainant maintains his EEO cases' presence on the internet demonstrates that the agency must have had knowledge of how litigious he has been (IF p 55). He believes that everyone including Mr. Hinchberger was aware of the EEO activity, though he does not know how or when Mr. Hinchberger learned of it (IF p 56). Mr. Uris must have known as well but complainant does not know how he had gained knowledge of the EEO activity. Nobody ever acknowledged learning of his EEO activity but he is nonetheless convinced that everyone knew, including Ms. Verdon, Ms. Williams, and Ms. Crawford (IF p 56, 57).

Complainant specifically alleges that NGA officials believe his EEO complaints from prior employment to be frivolous; and in regard to his non-selection, the officials acted on their belief that he was a frequent-flier of frivolous complaints, and to avoid a non-selection complaint, purposely scored him so as to not be selected for an interview (IF p 57). He claims that they think his EEO history would preclude him from being an effective supervisor and would project a negative managerial style and ability (IF p 57). Complainant believes his qualifications for the position to be prominent and that the resume listing of his experience does not really provide a "succinct argument of my qualifications" (IF p 58). He is sure that he is better qualified than the selectee because he was certain to have had more experience even if he did not know the details of the selectee's experience (IF p 58). Because he is the oldest person who applied for the vacancy and has over 30 years of experience, he does not believe there could be anybody more qualified (IF p 58). In short, his claim is that he has more experience, training, and knowledge than anyone who was selected for an interview even though he does not know who applied for the position; he asserts that such makes him superior to the other candidates (IF p 58). He admits that he does not know for a fact, but believes, he is more qualified than others and cites to his education, training, and certifications (IF p 58), also detailing his acquisition assignments (IF p 59).

Complainant explains what the selection panel officials did to discriminate. The officials did not interview him or select him. He "...imagines that they did not objectively score..." him so as to avoid having to interview and select him for the position (IF p 59). Though he cannot cite to "overt comments" by the officials related to his age, religion, or sex, he does know that this particular group of officials act with impunity (IF p 59). He is confident that the officials knocked the scores down so that he fell below the cutoff line for interviews because they had a negative view of him. Their view arose from his complaints, religion, dress and appearance, and his not meeting their idealized view of what a supervisor is to be (IF p 59). There is no other explanation for his being excluded from an interview (IF p 59). The scoring data and the communication between panel members trying to reconcile the scoring will reveal the lack of objectivity (IF p 60). Complainant presumed that there was lobbying among the panel to push him farther down the list (IF p 60).

8

UNCLASSIFIED

Complainant asserts that he was treated differently in the selection process because of his age, believing all other applicants selected to be interviewed to be younger than he (IF p 60). He maintains that the agency has a record of promoting younger employees as opposed to older and moving older employees into dead end positions or jobs that are less qualifying for future promotions (IF p 61). He further asserts that he was treated differently because of his religion. Though he does not know the religion of other applicants, he presumes that no one that might have applied exhibits the religious dress and behaviors of complainant (IF p 61). Based upon his religion he states that he was treated negatively (IF p 61).

Complainant also believes he was treated differently because of his sex based upon his contention that most selectees in OCS are female; he believes that a female was selected for the position (IF p 62, 63). He indicates that Ms. Crawford probably did not want complainant interviewed so she gave instructions to the panel and told the team lead of the panel which applicant should be selected (IF p 62).

Finally, complainant declares that he was subject to reprisal in not being interviewed and selected for the position because of the negative attitude officials had as to his being a "complainer, particularly EEO" (IF p 63). Though the officials did not "taunt me about being a frequent-flier", he is convinced it played a "decisive role in the non-selection" (IF p 63). He adds that he has a disabling condition which also served as a basis for officials discriminating against him but he will not disclose information about it for privacy reasons (IF p 63). He does not believe anyone within the agency was aware of the disability but states "…that does not mean that the condition did not affect the selection action." (IF p 63); he adds that because he cannot disclose the details of the disability, he is unable to explain how or why he was discriminated against based upon the disability, except to state that he thinks they perceived some part of his behavior as being a disability (IF p 63).


**Management's testimony**


**Testimony of Daniel Hinchberger**

Mr. Hinchberger was serving as the Group Chief within the Compliance and Operations Group, Office of Contract Services, NGA, during the time giving rise to this complaint. Mr. Hinchberger is a male over 40 years of age, does not identify with a specific religion, and is without a disabling condition (IF pp 66, 67). He does not know the complainant's age but guesses him to be a male in his early sixties (IF pp 66, 67, 73). Mr. Hinchberger believes complainant to be Jewish because the complainant wears a skull cap and the two had spoken in the past about complainant's religion (IF p 66). He knew nothing of any disabling condition of complainant and has never regarded complainant as being unable to do something because of a mental or physical impairment (IF p 68). He does not specifically recall knowing of prior EEO activity by

complainant and states that if complainant had mentioned it before, he does not recall any details (IF p 68, 72-73).

Age, religion, sex, and prior EEO activity were not factors in the decision to not offer complainant an opportunity to interview (IF pp 73, 74). Similarly, complainant's physical or mental condition did not factor into the decision as Mr. Hinchberger was unaware of complainant having any kind of a disability (IF p 74). In response to complainant's allegation that the panel retaliated against him for his EEO activity, Mr. Hinchberger denies knowing of complainant's FOIA or IG complaints; admits to some vague recollection of something EEO related but not presenting as an issue or creating a negative impression in his mind; and affirmatively asserts that the panel did not discuss anything related to EEO activity (IF p 75). He disputes any of the characterizations by the complainant that the panel acted unfairly, held any age or religious bias, acted with impunity or viewed the complainant negatively (IF p 75, 76). Instead, Mr. Hinchberger contends that the panel acted in good faith to find the best candidate and without influence from Ms. Crawford (IF p 77). He maintains that he was not directed or persuaded to recommend, or not to recommend, a particular candidate (IF p 73). He denies any knowledge of complainant's past refusals to sign documents based upon religion or moral obligation (IF p 77).

He served as the panel chair and insured that the diversity requirements mandated by the agency for the composition of the panel were followed. The panel was comprised of one female, one male, and one minority (African-American); all were division chiefs of the OCS operational groups and knew the work would not entail staff-oriented functions (IF p 69). Panel members received the referral certificate with 16 applicants deemed qualified by HR. The certificate contained no information as to applicants' age, religion, sex, disabling conditions, or EEO activity (IF p 70). Each panel member independently rated and ranked the applicants' resumes and the scores were then considered by the panel for any splits (difference of more than "2" on the individual panel member scores) (IF p 69). The resumes were evaluated and scored based on criteria contained in the vacancy announcement (IF p 69)[2]. Splits are discussed and reconciled; all four panel members rated complainant a "5" so he was not discussed (IF pp 69, 70). The panel then looked for a logical break point for candidates to be interviewed and decided to interview only those candidates with a score of "7" or above (IF p 69). At the conclusion of the interview process the panel had a consensus discussion as to a recommendation for a selection. The recommendation was subsequently approved by Ms. Crawford (IF pp 69, 70).

Mr. Hinchberger's biggest concern as to complainant's qualifications centered on the complainant's apparent lack of supervisory experience; complainant had no or limited supervisory experience in an operational contracting role (IF p 70). Complainant had decent contracting experience but not to the depth or breadth of other candidates (IF p 71).

---

[2] Vacancy announcement (IF p 166-168) details the assignment description, mandatory and desirable criteria; Work role description (IF p 164) identifies competencies, knowledge, and skills for the position.

UNCLASSIFIED

Complainant's not being selected for an interview was not a personal decision against him but was based upon his mid-range score (IF p 71). To complainant's claim that he should have been selected as the best qualified applicant for the position because of his 30 years of experience and multiple DAWIA certifications and training courses, Mr. Hinchberger contends the person with the most working experience is not necessarily the best manager (IF p 73). He states that the selectee had a greater degree of demonstrated success and at a slightly higher level than complainant (IF p 73).

## Testimony of Richard Unis

Mr. Unis was a member of the selection panel (IF p 83). He is over 40, male, Lutheran, and not disabled (IF p 81). At the time of his service on the panel he was the Contracts Division Chief for OCSR, a division within the Contracts Directorate (OCS) (IF p 82). He is aware of complainant's religion as the complainant had mentioned it to him (IF p 81, 86), but was unaware of any disabling condition of the complainant (IF pp 83, 86) or any prior EEO activity of the complainant (IF pp 82, 86, 88).

Notwithstanding knowing complainant, Mr. Unis did not know his exact age but believed him to be near 60 (IF pp 85, 81); he did know of complainant's sex (IF p 86). Neither age, nor religion, nor sex were factors in the decision as to whether to interview complainant (IF p 86). Mr. Unis was not directed or persuaded to recommend, or to exclude, a particular candidate for consideration (IF p 86).

Mr. Unis denies having a negative view of complainant or acting with impunity (IF p 88). He claims to harbor no objections to complainant's religion or dress but scored the resume solely against the selection criteria (IF p 88). There was no lobbying by panel members to move the complainant down the list of qualified candidates. Complainant was not interviewed because there were better qualified candidates than he (IF pp 88, 89). As to age, Mr. Unis specifies the selectee was not a "younger, fresher leader"[3] , but the best qualified candidate based on experience (IF pp 89, 85). He further explains his belief that OCS promotes the best candidates based on the pool of applicants for the position with recent selections for Pay Band 5 vacancies coming from applicants aged in their upper 40's and 50's (IF p 89). His observation of selectees for Pay Band 5 positions over the last 6 to 7 years appear to be essentially equally split between the sexes (IF p 89). Mr. Unis is not aware of any contracting officer being pressured to sign a document or contract action which the contracting officer does not support; referring it up to a supervisor is the prescribed resolution within OCS (IF p 90).

A large pool of referred candidates potentially meeting the selection criteria was provided to Mr. Unis for scoring (IF p 83). He reviewed the resumes on his own by using the requirements of the position in the AON vacancy announcement against the experience listed in the resume. He then ranked the candidates by how well they met the criteria assigning a score to each resume (IF p 83). Complainant's resume was

---

[3] Mr. Unis includes the language used by complainant in his testimonial response to the investigator.

scored as a "5" because of the lack of broad experience across NGA contracting.  The position had been delineated as one of the most senior within the office of contracting and the need was for a candidate with considerable contract experience within multiple buying divisions of NGA (IF p 83).

After individually rating candidates, the panel came together to discuss differences of more than two rating points per candidate but Mr. Unis does not recall any contentiousness (IF p 84).  The panel then determined which candidates to interview based upon a natural cut point and complainant was not among the group rated as a top applicant (IF p 84).  Interviews were then conducted and the eventual selectee had supervisory contract experience across four different buying divisions within NGA contracts.  She was then serving in a deputy role, had source selection experience, and had a good understanding of various customers across the agency.  Complainant did not have the experience level working in buying divisions at NGA (IF p 85).

The panel passed the recommendation for the selectee to Mr. Hinchberger and the selectee was ultimately hired (IF p 85).


**Testimony of Tammy Verdon**

Supervisory contract specialist Ms. Verdon was a panel member involved in the evaluation of complainant's application for the position (IF p 94).  She is over 40, a non-practicing Catholic, female, without a disabling condition or evidence of any prior EEO activity (IF pp 93-94).   She believes complainant is a bit older than she; is Jewish based upon conversations about his religion and her sexual orientation (IF p 92); and that he is male (IF p 93).   She knew nothing of complainant's disabling condition or any prior EEO activity by complainant (IF pp 93, 94).  She maintains that she is still unaware of any impairment or disability of complainant (IF p 94).

Her service on selection panels is common and as an OCS supervisor she is frequently asked to be on panels (IF p 94).  The process is for HR to announce the vacancy and then to compile the applications, look at resumes and compile those meeting the position description requirements (IF p 94).  Panel members are then given the resumes to rate and score against the job description and the panel scored the applicants individually, meeting as a team to compile the scores and rank order the resumes.  The panel then interviewed only the most highly rated resumes (IF p 94, 95).

Ms. Verdon did not rate complainant high because of weakness in leadership and strategic involvement.  He had strong contracting knowledge but no experience in leading medium or large teams.  His resume did not clearly reflect strategic thinking/ agility, nor did he have demonstrated experience in setting up a larger operation and implementing it.  Complainant had not managed across organizational lines or been involved in resolving or implementing strategic visions (IF p 95).  These deficits were not weaknesses of the eventual selectee in that the selectee had leadership experience in

UNCLASSIFIED

her previous supervisory roles and worked with multiple major systems customers (IF p 95, 96).  Some of the applicants scored in the low range of 1 through 3 having missed the mark.  Some scored in the solid range of 7 through 9, but the bulk of the applicants were in the mid-range of 4-6 (IF p 96).

The panel decided that it would interview the strong, competitive group of applicants and a cut line for interviews was established based upon the resume ranking (IF p 96). A logical cut point yielded a group of 7 or 8 interview candidates (if p 96).  Of the group interviewed, she did not know the interviewees' religion, disability status, prior EEO activity, nor exact age (IF p 96).  As to complainant specifically, Ms. Verdon did not know his age (although she did have an assumption), any prior EEO activity, or any claimed or perceived disabling condition (IF p 98).  She did know his religion and sex (IF p 98), but maintains that none of those factors were considered or of consequence in the decision as to whom to interview (IF p 98).  She was not directed or influenced to recommend a particular candidate, nor directed or persuaded not to recommend a particular candidate (IF p 98).

Ms. Verdon rejects complainant's claims of bias by the panel, members acting with impunity, the panel's negative view of complainant or preference for younger candidates, individual members' favoritism for female and veteran applicants, and intent to discriminate against those of a specified religious practice or belief (IF pp 99-102). She acknowledges the evaluation of resumes does involve subjectivity, but recognizes complainant's resume as reflecting subject matter expertise as a contracting officer. She maintains that his experience does not demonstrate leadership proficiencies with medium to large contracting teams, and she states that complainant's resume did not reveal strength in supervision, resource management, personnel development, and strategic leadership (IF p 99).

**Testimony of Johnetta Williams**

Ms. Williams is over 40, Catholic, female, does not consider herself disabled, and has no knowledge of any EEO activity pursued by complainant (IF pp 105,106, 109).  During the period giving rise to the complaint, she was employed with NGA as a supervisory contract specialist, IA-1102-05, serving as the division chief of OCSJ, Office of Contract Services (IF p 106).  She knew the complainant from a period of time when she had been his direct supervisor (IF p 105) and she continued to periodically see him in the hallways (IF p 106). She believed complainant to be in his mid-sixties, Jewish (because he talked of his family traditions and wore a yarmulke) (IF pp 105, 106, 109), and male (IF p 106).

On September 6, 2013, Ms. Williams was serving as the female representative to the selection panel (IF p 107).  She remembered the selection process as entailing an individual review of resumes based upon key experiences, strengths, knowledge, skills, and abilities; a determination as to whether the candidate met the position criteria; and a scoring and rank ordering of the resumes prior to convening as a panel (IF p 107).  The

panel chair was Mr. Hinchberger and she had turned her scores over to him. Because of the number of applicants, a cutoff was set but she could not recall how that was determined (IF p 107). With the cutoff established, the panel met to assess which candidates would be interviewed. Each interviewee was scored separately by the panel members and after concluding all interviews, the scores were then shared with the entire panel. A consensus was reached as to the selectee, Karen Eichelberger, and the recommendation went forward to Ms. Crawford (IF p 107).

The panel did not interview complainant. He was not interviewed based solely upon his not meeting the cutoff, and not because of any conversation among the panel involving complainant personally (IF p 108). Although his qualifications were not lacking, they were not at the level of those selected to be interviewed (IF p 109). Ms. Williams was not directed or influenced to recommend, or not recommend, any particular candidate (IF p 109); and complainant's age, religion, and sex were not factors in her decision as to complainant's overall qualifications (IF p 109, 110). She disclaims any knowledge of prior EEO activity involving the complainant, and states that she was not aware of any disabling condition of his such that they could have been factors in her decision as to whether complainant was to be selected for an interview (IF pp 109, 110). As to specific allegations by complainant of the panel's behavior, thought processes, conduct in execution of the selection procedure, religious intolerance, sex and veteran status favoritism, and negative views of complainant, Ms. Williams disputes what complainant alleges (IF pp 111-114). The panel had a responsibility to select the best qualified applicant and other candidates were rated, interviewed, and found to be better qualified than complainant (IF p 112).

**Testimony of Tonya Crawford**

Ms. Crawford is also over 40, Christian, female, does not consider herself disabled, and has no knowledge of any of complainant's prior EEO activity, nor of any disabling condition experienced by complainant (IF pp 116-118, 119-120). Ms. Crawford was involved in the selection process as an approving official, seeing all application packets and a summary of the panel's process and interviews conducted (IF p 118). She looked at the results to see whether the panel complied with agency rules and to verify that the panel conducted a resume review as a precursor to selecting prospective interviewees (IF p 118). After determining that the panel had complied with guidelines and established a cutoff based upon criteria, she reviewed the panel's scoring of the interviewees based upon objective criteria (IF p 118). She concurred with the way the process was run in this case (IF p 119).

Her recollection of complainant's resume, as compared to the ultimate selectee's, led her to conclude that complainant, although an excellent performer, was not as strong a candidate as the selectee; complainant did not have the extensive leadership or collaborative networks (IF p 119). Notwithstanding complainant's wealth of technical

14

experience, the panel was to be considering breadth of leadership experience and evidence of collaboration as well (IF p 121).

Ms. Crawford had no personal knowledge of any of complainant's EEO activity, nor how the panel would have even been able to find out such information. In response to complainant's statements regarding the panel's scoring bias, acting with impunity, and negative views of complainant because of his religion, Ms. Crawford denies each claim (IF p 122). She relates that vacancy announcements increasingly require higher levels of demonstrated leadership for supervisory positions (IF p 122). She notes that her organization looks at all applicants and endeavors to pick the right leader based upon the resume and interview, age and religion having nothing to do with the decision (IF p 123).

**Testimony of Natasha Grant**

As an HR Specialist assigned to Recruitment, Human Resource Pilot Management Division, Human Development Directorate, Ms. Grant did not know the age, religion, disability status, or record of any prior EEO activity of the complainant (IF pp 128, 129). She presumed, but did not know for sure, that complainant was male because of the name on the application (IF p 128). In short, she did not know him (IF p 128).

She served as the recruiter for the job announcement, receiving all applications and resumes; then creating a referral certificate of those screened who meet the mandatory hiring criteria set by the hiring manager (IF p 129). The panel has to rate and rank resumes from the referral list, subsequently meeting to establish a cutoff point for those candidates to be interviewed (IF p 130). If there is a clear break among the scores, then there is no reason to interview low scoring applicants (IF p 130). Once a selection is made, the recruiter reviews the procedure followed to insure that the selection process was properly conducted (IF p 129). Panel members and selection officials are not provided any demographic data as to the applicants' age, race, sex, disability or prior EEO activity, but do see the name of each applicant (IF p 130, 131). The rules and regulations were followed in this selection (IF p 131).

**Complainant's Rebuttal:**  Complainant did not provide any rebuttal or additional explanatory response to the Investigator. As noted above, complainant also did not provide any rebuttal after being afforded the opportunity pursuant to the Commission's decision on appeal.


## Analysis

Complainant contends that he was discriminated against based on his age, sex,

UNCLASSIFIED

religion, disabling condition, and in reprisal for his prior EEO activity, when on September 6, 2013, he was not interviewed or selected for a vacant supervisory Pay Band 5 position within the OCS.   On appeal, complainant claimed the record was deficient because it did not contain the applications for the candidates selected for an interview, precluding the Agency from being able to carry its burden to assert a nondiscriminatory, rational reason for its action.

**Person with a Disability**

This aspect of complainant's claim was dismissed by the agency EEO official for failure to state a claim (IF pp 45, 292).  During the investigation, complainant refused to identify the nature of his claimed disability and to state whether it was mental or physical (IF p 292).  There is no evidence of his ever disclosing his disability to any of the responsible managing officials.  Each of the witnesses denies any knowledge of complainant's disability or a perception that he was disabled in any manner.  Because he does not want to disclose information about his condition for privacy reasons (IF p 63), does not believe anyone within the agency was aware of the disability (IF p 63), and is unable to explain how or why he was discriminated against based upon the disability, except to state that he thinks "they" perceived some part of his behavior as being a disability (IF p 63), complainant has failed to state an evidentiary  basis for a claim or to establish a causal connection between the disabling condition and the adverse  personnel action.

Further, the EEOC has determined that an individual is not a person with a disability unless the impairment prevents the person from working across a range of jobs or engaging in a major life activity to the same extent as an average person.  Because complainant has not alleged or established a disability as impacting any of his major life activities such as to substantially limit them when compared to an average person, and because he has no record of impairment, nor evidence of being regarded as impaired, he has not established himself as an individual with a disability.

**Retaliation for EEO Protected Activity**

This allegation by complainant was also dismissed by the EEO office as detailed in the Notice of Partial Acceptance of Discrimination Complaint (IF pp 45-49).  Essentially, complainant asserts that he was not interviewed or selected for a position as a Pay Band 5 supervisory contract specialist because managerial officials knew of his prior EEO history and construed the evaluation of his application so as to preclude him an opportunity to interview. The EEO official upon review of his allegation concluded that complainant failed to illustrate how he was treated differently than other applicants denied an interview.

The complainant alleged that he was engaged in protected EEO activity at his prior employment location(s), and because of it, his current managing officials subjected him to an adverse employment action, the non-selection for an interview resulting in his not being selected for the position.  Showing knowledge by the employer of the employee's

engagement in protected activity is part of complainant's case.  Knowledge by the retaliating party of the protected activity in which the aggrieved claims a basis for reprisal is a critical first step.  *Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002); *Sitar v. Ind. Dept. of Transportation*, 344 F.3d 720, 727(7th Cir. 2003). The inference of retaliation is negated in the absence of any evidence that the decision-maker was aware of the protected activity, even if others that were not involved in any adverse determination may have had some knowledge of the protected activity.

Complainant maintains his EEO cases' presence on the internet demonstrates that the agency must have had knowledge of how litigious he has been (IF p 55).  He believes that everyone including Mr. Hinchberger was aware of the EEO activity, though he does not know how or when Mr. Hinchberger would have learned of it (IF p 56).  Mr. Unis must have known as well, but complainant does not know how he had gained knowledge of the EEO activity.  Nobody ever said to him that they had heard of his EEO activity but he is nonetheless convinced that everyone knew, including Ms. Verdon, Ms. Williams, and Ms. Crawford (IF p 56, 57).

To the contrary, every managing official other than Mr. Hinchberger denied any knowledge of complainant's past EEO activity.  Each denied any consideration of complainant's earlier EEO activity in the evaluation process.  Mr. Hinchberger alluded to only a vague recollection of the complainant possibly mentioning something about past EEO activity, denying any recollection of specifics and clearly stating that complainant's EEO activity was not a factor in any part of the selection process.

Testimony grounded in speculation is not enough to create a genuine issue of material fact. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496 (7th Cir. 2004).  Complainant has not produced any evidence from which to validly impute or attribute knowledge of his prior EEO activity to the managing officials, or any evidence that the non-selection was in retaliation for the EEO activity.  His speculation and conclusions based upon conjecture does not constitute evidence.

A second critical element to be established by the complainant for creating the inference of retaliation is a demonstration of temporal proximity between the adverse action and the protected activity, and that time frame needs to be very close indeed.  By complainant's own testimony, there has been no EEO activity since his employment with NGA. Complainant does make clear that he is not claiming reprisal for the filing of this complaint but for the EEO activity prior to his NGA employment, a time period from 1979-2006 (IF p 55), and over six years prior to the date of the alleged reprisal.

UNCLASSIFIED

**Age**

The ADEA requires a complainant to demonstrate that employment decisions were made "because of age." Complainant's burden is to establish that age was a determinative factor in the Agency's decision of which he is complaining.

In order to prevail in an age discrimination claim under the ADEA, Complainant must generally show membership in the group of persons protected under the ADEA (i.e., persons age 40 or over); that Complainant was subjected to an adverse employment action; and that Complainant was disadvantaged in favor of a younger person similarly situated to Complainant.

It is clear from the demographics within the ROI that complainant is in the protected group, as was all but one of the candidates selected for interview. Though it may be that complainant was the oldest of the candidates referred, there is not such a disparity between his age and those of 50% of the interviewees as to create a distinct age bracket within those applicants over 40.

More importantly, none of the panel members indicated that age was a factor in their decision as to the best qualified candidate. Moreover, several expressed that the type and extent of leadership experience thought as critical for the position would most likely be disadvantageous for a candidate without years of experience. All managing officials dispute complainant's contention that they were looking for younger employees to promote.

There is no evidence other than complainant's assertions that the managing officials weighed complainant's age of over 40 as a determinative factor in his non-selection for an interview. His contention that as the oldest person applying for the position there could be nobody else more qualified is a subjective belief. His assertion that the agency has a record of promoting younger employees as opposed to older, and moving older employees into positions from which they become less qualified for future promotions, is not borne out by any factual basis presented or incorporated within the record, and is inconsistent with the attestations of each of the panel members' testimonies of their promoting or selecting applicants without regard to age.

There is no evidence supportive of complainant's assertions that management weighed complainant's age of over 40 as a determinative factor in his non-selection for an interview.

**Religion and Sex**

The complainant is required to present facts reasonably giving rise to an inference of discrimination that otherwise are not explained. The burden is to establish his case of unlawful discrimination by a preponderance of the evidence. *McDonnell Douglas Corp.*; *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24 (1978); *Furnco*

UNCLASSIFIED

_Construction Corporation v. Waters,_ 438 U.S. 567 (1978). This means that Complainant must present evidence to the degree that if it were not rebutted, the trier of fact could conclude that unlawful discrimination did occur. _Teamsters v. U.S.,_ 431 U.S. 324 (1977).

Complainant maintains that he was denied an opportunity to interview because of his religion. He offers as facts giving rise to a reasonable inference of discrimination that he was the best qualified person for the position based upon his training and experience. Notwithstanding, he was not selected for an interview and it must be because management officials noted his religious dress, appearance, and associated behaviors. He presumes that no one that might have applied exhibits a similar religious dress, practice, and manner.

Management officials on the panel acknowledge that they knew of complainant's religion either by complainant's telling them in past discussions or by concluding that complainant was Jewish through associating his dress and appearance with the Jewish faith. Each management official denied any consideration of his faith or faith-based practice in evaluation of his resume. All attest that the subject was never discussed or referenced by innuendo. Complainant presents only his conclusion that his faith was a factor in the selection process. Management's articulation of complainant's qualifications for the position vis-à-vis the qualifications within the resumes of those selected for interview stand as reasonable explanations for excluding complainant from the interview process, negating complainant's inference of discrimination. Three of the four evaluators served in a supervisory role over complainant at some point in time prior to their service on the selection panel. Complainant suggests nothing indicative of any bias as to his religious faith exhibited by these management officials toward him prior to their scoring his resume. For religion to have been a factor, each evaluator while evaluating complainant's resume in a private setting, would have had to have discriminated against complainant for his cumulative score to have been so impacted. Panel members deny any lobbying to move the complainant down the list of qualified candidates.

Sex is similarly claimed as a discriminatory basis. Complainant alleges that management desired a female for the position, and because he was a male, he was not selected to be interviewed, precluding his chance at being offered the position. A female was selected as best qualified from those selected for interview. Because the selectee for the position could only come from those qualifying for interview pursuant to the policy, because both males and females were selected to be interviewed, he was not disadvantaged or distinguished from the qualifying group on the basis of his sex.

## Arguendo

Once the agency articulates a legitimate, non-discriminatory reason for the challenged action, the _prima facie_ case disappears. _St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Reeves v. Sanderson Plumbing Products, Inc.,_ 530 U.S. 133 (2000). The

UNCLASSIFIED

Complainant then has the burden to prove by preponderant evidence that the agency's proffered reason(s) are merely a pretext for discrimination and that discrimination was the motivating factor for the personnel action.   If Complainant meets this burden, the burden of production shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions.   *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  This burden is not a burden of proving that there was no discriminatory motive, but is simply one of production.  *Burdine*, at 254-56.

Assuming for a moment that complainant did present a *prima facie* case as to any one or combination of age, religion, or sex discrimination, management officials have articulated a legitimate reason for their action.  All members of the evaluation team attest that they endeavored to follow NGA hiring policies and practices, had participated in many hiring panels before, acted in good faith, and aimed to accomplish their mission to hire the best qualified candidate.  In this case, the vacant position had been delineated as one of the most senior within the office of contracting and the need was for a candidate with considerable contract experience within multiple buying divisions of NGA.

Panel members expressed reservation as to complainant's lack of supervisory experience, especially in an operational contracting role. Specifically, complainant did not have the experience level working in buying divisions at NGA; was viewed as having a weakness in leadership and strategic involvement; had strong contracting knowledge but no experience in leading medium or large teams; and his resume did not clearly reflect strategic thinking/ agility, or demonstrate experience in setting up and implementing large operations.  Further, complainant had not managed across organizational lines or been involved in resolving or implementing strategic visions.  His resume did not reveal strength in supervision, resource management, personnel development, and strategic leadership.  These deficits were not weaknesses of the eventual selectee.  Though complainant had decent contracting experience it was not to the depth or breadth of those candidates selected for interview.

In review of the resumes submitted as a result of complainant's appeal and the Commission's decision, all interviewees showed actual supervisory experience beyond an informal, team lead/supervisory assistant role.  The interviewees led significant contracting efforts, supervised organizational contracting teams, and/or possessed broad leadership experience.  Most of the resumes reveal multiple or lengthy supervisory assignments.  The few interviewees that did not show supervisory experience did possess experience related to an operational contracting assignment or area of extensive operational responsibility; consistent with the panel's screening criteria.

The Commission has noted that indicators of pretext include discriminatory statements, deviations from standard process without any proffered justification, statistical data showing different treatment, unequal enforcement or application of Agency policy, or inconsistencies without explanation in the evidentiary record.  In the present case, the resumes evaluated by each selection panel member were scored according to

established practice and consistent with applicant selection panel procedures directed by the Agency's Human Development Directorate.  The testimonies support that each panel member saw in the resumes of those selected for interview sufficient indications of the position requirement to have expertise in both contracting and leadership.  All evaluators deny having held a negative view of complainant and emphasize that they scored the resumes only against the selection criteria. None were directed or persuaded to recommend, or not to recommend, a particular candidate.  Complainant's non-selection for an interview was not a personal decision against him but attributable to his mid-range resume score.

Though resumes do not normally provide a great deal of context, these resumes were sufficiently detailed for a knowledgeable panel to be able to differentiate various degrees of supervisory from near-supervisory experience.  Because senior officials believe vacancy announcements for supervisory positions should require higher degrees of demonstrated leadership, the distinction is with merit and was a legitimate measure for distinguishing those with the requisite skills from those remaining applicants.

Finally, the record suggests nothing that would serve as a basis for a claim by complainant that the Agency's stated legitimate non-discriminatory reasons for complainant's non-selection are merely pre-textual.


# DECISION

Accordingly, based on the record, as amended per the direction of the EEOC, it remains the decision of the Agency that Stan Laber, as complainant, failed to prove a claim of discrimination based on disability, reprisal, religion, sex, and age with respect to the issue accepted for investigation.  The entire record has been reviewed and considered. The Agency concludes that there is no evidence of unlawful discrimination, and therefore, it is the final decision of the Agency that the complainant was not discriminated against, as alleged.

If you are dissatisfied with this decision, you have the following rights:


# NOTICE OF EEOC APPEAL RIGHTS

If you are dissatisfied with this decision, you (you, on behalf of your client) may file an appeal in accordance with 29 C.F.R. 1614.402 and 29 C.F.R. 1614.403 within thirty (30)

UNCLASSIFIED

<u>calendar</u> days of receipt of this correspondence.  You may submit the appeal in writing by mailing it to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> PO BOX 77960
> Washington, D.C.  20013

Or, you may send a facsimile of the appeal to:

> (202) 663-7022

The thirty day period for filing an appeal begins on the date of **receipt** of this decision.  The appeal must be timely or it may be dismissed.  An appeal shall be deemed timely if it is delivered in person or postmarked before the expiration of the filing period, or in the absence of a legible postmark, the appeal is received by the Commission by mail within five (5) days after the expiration of the filing period.

A copy of EEOC Form 573, "Notice of Appeal/Petition" (enclosed), should be included with the appeal to indicate what is being appealed.  In or attached to the appeal sent to the commission, you must certify the date and method by which service was made on the agency.

Any statement or brief filed in support of the appeal must be submitted to the Director of the EEOC Office of Federal Operations (OFO) at the address given previously within thirty (30) calendar days of the filing of the appeal.  A copy of any statement or brief filed in support of the appeal must also be mailed to:

> National Geospatial-Intelligence Agency/ODE
> Attn: Patsy A. Coleman/Mail Stop L-11
> 3838 Vogel Road
> Arnold, Mo 63010

Following the receipt of the appeal and any brief or statement in support of the appeal, the Director, OFO, will request a copy of the complaint file from this agency.  NGA must submit the file and any statement or brief in opposition to the appeal to the OFO Director within thirty (30) days of receipt of the request for the complaint file.  A copy of the NGA statement or brief must be served on the complainant at the same time.

You are also asked to submit a copy of the appeal to the agency representative at:

UNCLASSIFIED

National Geospatial-Intelligence Agency
Office of General Counsel
Attn: Jack Rickert/Mail Stop S71OGCA
7500 GEOINT Drive
Springfield, VA 22150

## NOTICE OF RIGHT TO FILE A CIVIL ACTION

29 C.F.R. Section 1614.408 provides that a complainant may file a civil action in an appropriate US District Court. A civil action may be filed:

- Within ninety (90) calendar days of receipt of this decision if no appeal has been filed;
- Within ninety (90) calendar days after receipt of the EEOC's final decision or action on appeal; or
- After 180 calendar days from the date of filing an appeal with the EEOC if there has been no final decision by the Commission.

29 C.F.R. Section 1614.409 states that if a complainant alleges a violation of the Equal Pay Act, s/he is authorized under the Fair Labor Standards Act (29 U.S.C. 216(b)) to file a civil action in a court of competent jurisdiction within two years, or, if the violation is willful, three years of the date of the alleged violation regardless of whether s/he pursued any complaint processing. Recovery of back wages is limited to two years prior to the date of filing suit, or to three years if the violation is deemed willful; liquidated damages in an equal amount may also be awarded. The filing of a complaint or appeal in that instance does not toll the time for filing a civil action.

The official agency head or department head must be named as the defendant. The terms, "agency" or "department" include the national organization, and not just the local office, facility, or department in which the complainant works. Do not name just the agency or department. In this instance, Chuck Hagel, Secretary, US Department of Defense is the proper defendant. Failure to provide the name or official title of the agency head or department head may result in dismissal of the case.

If you decide to file a civil action and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney for you. You may also ask the court to grant permission to file the action, without fees, costs or other security. The granting or denial of an attorney does not extend the time in which to file a civil action. Both the request and the civil action must be filed within ninety (90) calendar days of the date after the Commission's decision has been received.

23

UNCLASSIFIED

## Docket Number

The Agency Case Number, NGAE-14-O03, should be used on all correspondence concerning this complaint and decision.

Sincerely,

CARDELL K. RICHARDSON, SR.
Director, Office of Diversity Management &
Equal Employment Opportunity

Enclosure
EEOC Form 573

cc:
National Geospatial-Intelligence Agency
Office of General Counsel
Attn:  Mr. Jack Rickert/Mail Stop S71OGCA
7500 GEOINT Drive
Springfield, VA 22150

24