**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| STAN LABER,<br><br>        Plaintiff,<br><br>   v.<br><br>LLOYD J. AUSTIN*, in his official capacity as Secretary, United States Department of Defense*,<br><br>        Defendant. | No. 1:22-cv-145 (MSN/TCB) |

## <u>PLAINTIFF'S PEPLY TO DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AND Rule 56(d) MOTION</u>

**INTRODUCTION**

Plaintiff Stan Laber brings claims of discrimination based on sex, age, religion, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e- 16, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.§ 633a.

Defendant's motions for dismissal and summary judgment of his claims of age discrimination, sex discrimination, religion, and reprisal should be denied.

Plaintiff's has made factual allegations supporting his claims sufficient to raise a plausible inference of discrimination on these bases and none warrants dismissal or

summary judgment. This is so even though Defendant has failed to provide any answer to his complaint. In regard to his claims of age, religion, and reprisal, Plaintiff also presents direct evidence of age and religious discrimination based on his debrief with Ms. Verdon. See Exhibit 1 Plaintiff's Affidavit.

His claim for gender discrimination is supported by the facts known to date and will be supported by further discovery if Plaintiff's request for discovery below is granted. If the court finds his direct evidence insufficient, he has otherwise presented a prima facie case herein for each basis. In reply to Defendant's motions (dismissal or summary judgment), Plaintiff respectfully requests that the court delay any decision until his request for the opportunity to conduct discovery has been acted upon and completed if granted.

It seems odd that Defendant admitted to prima facie cases on all grounds in the administrative phase but and now has reversed itself. The Government shouldn't be at war with itself. Defendant has destroyed all original contemporaneous records of the panels' proceeding, including, scores, evaluations, cut-off, and comments, and notes. None of these exist. Plaintiff has also presented direct evidence of age and religious discrimination based on his debrief with Ms. Verdon. See Exhibit 1 Plaintiff's Affidavit.

## Rule 56(d) Motion

Plaintiff requests the opportunity to conduct discovery for information essential to oppose Defendants motions to dismiss and summary judgment.

*Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask. For this reason, when a party lacks material facts necessary to combat a summary judgment motion, she may file an "affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to*

Page **2** of **34**

*justify its opposition." Fed. R. Civ. P. 56(d). In response, the district court may defer consideration of the summary judgment motion, deny the motion, or "issue any other appropriate order." Id. A Rule 56(d) motion must be granted "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). Further, such motions are "broadly favored and should be liberally granted" in order to protect non-moving parties from premature summary judgment motions. Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010)).*

The "specified reasons" for discovery which Plaintiff requires is the opportunity to obtain all records and communications related to NGA's recruitment for the instant vacancy, including all records and application packages. He also needs to depose the hiring officials and HR personnel involved. He needs demographics information to perfect his claims for age and gender discrimination. This is just an example and isn't the actual request he intends to make if granted the opportunity.

## DEFENDANT'S ALLEGED UNDISPUTED MATERIAL FACTS.

Plaintiff answers each numbered fact with "UNDISPUTED" or "DISPUTED". The order and groupings are maintained and bolded text as written by Defendant.

### Plaintiff's Employment at NGA and Application to the Vacant Position

1. Plaintiff started working at the NGA in October 2006 as a DAWIA contract specialist in Reston, Virginia. Ex. 1 at 1. Plaintiff's reply to this alleged undisputed fact:01 UNDISPUTED.

2. Before working with the NGA, Plaintiff had filed between 50 and 100 EEO complaints. Ex. 2 at 3. Most of his complaints alleged religious discrimination for his non- selection

or promotion to various positions. *Id.* 3. Plaintiff's reply to this alleged undisputed fact:

DISPUTED. Plaintiff agrees as to his sworn estimate but Defendant fails to include the

rest of his EEO history reported in the same declaration in Ex 2 at 3and 4:

> *"More than one of my complaints went to federal court, and one of them got as far as a federal court of appeals and then to the supreme court. That relates to the amount of internet presence my cases have out there. that the agency must have knowledge of how litigious I have been because very few EEO complaints go to the Supreme Court. That one was based on religion and I prevailed on it. The court case was about the remedy that I received after prevailing at the EEOC."*

Further, while working at NGA, Plaintiff explained in the same Exhibit at 5, that his prior

activity caused him not to be referred because the panel would then be on the receiving

end of an EEO complaint and because his prior activity was incompatible with a

supervisory role and "project an overwhelmingly negative managerial style and ability".

They believed it would be easier to ensure that he didn't meet the alleged cutoff rather

than to interview him and explain why he was not selected. Plaintiff's prior EEO activity

became an issue when he volunteered to be an EEO counselor, was trained, and then

was never assigned to any case. The EEO trainer, an independent contractor, who

performed the training at NGA told Plaintiff that he [the trainer] had served as a

consultant in regard to settlement of a prior complaint with another agency and

discussed the fact with NGA. Plaintiff maintains that the training took place a few weeks

before he was rejected and expects to substantiate the fact in discovery if granted.

Plaintiff is Jewish and wears a skull cap in the office. Id. at 9. Plaintiff's reply to this

alleged undisputed fact: DISPUTED. This is partially true but fails to include the full

facts of Plaintiff's religious observances which he cited in his complaint and cited in

Page 4 of 34

Defendant's Exhibit 2, Plaintiff Declaration of July 7, 2014. The First Amended Complaint stated at "At all times when Plaintiff was employed by Defendant, he wore distinctly Jewish garb such as a skullcap and his beard, which is full and untrimmed, was evident as a hallmark of Plaintiff's Jewish religious observance." Paragraph 80. Plaintiff stated at Ex 2 , 9-10 the following:

"The applicants for the position. I don't know who they are, I don't know what their religions are. But I believe I have seen everyone who works within OCS, and none of them exhibits the religious dress and behaviors that I have. I wear a skull cap. I have an untrimmed and unkempt beard. I do not work on Jewish holidays. My manner of speaking is devoid of swear words. I do not shake hands with women. I don't make any physical contact with women. I guess there are a few more, but I am trying to think of what they are. I have not seen any other employees in the agency with those traits, mannerisms, or practices. So I presume that nobody who applied for the position had the same religious tenants [tenets] or practices that I do. I do my utmost to tell the truth, and not do anything inappropriate in my professional position. If there is something that I don't think is proper or according to regulation/law, I refuse to do it based on my religion, I think it is perceived as being uncooperative. When there is a contract action, and I don't believe it is an appropriate action, I won't sign it, and I will ask my supervisor to sign it. If something does not conform to regulations or public law, or I feel it is improper, I refuse to sign off on it. I tell my supervisor why I can't sign something, and then they sign it. But otherwise I am always cooperative. The reason I don't sign

something is based on my religion. I have a high level of moral behavior, and if I
don't think something is right, or should not have been done, or is not proper, then
I don't do it. If I think something would bring disrespect against me, I won't do it.
For example, there was an action that gave money to a contractor that I felt was
improper. I did not want to sign it. I told my supervisor that I could not sign off on
the action in good faith, and I prepared it for his signature. I don't think that was
interpreted or received well. In the years I have been at NGA, I think that situation
has happened about five or six times."

*The above demonstrates how his religion demands moral behavior which was
incompatible with a supervisory role at NGA. With discovery if permitted, Plaintiff will
be able to provide evidence in regard to this issue of obedience in the chain of
command.*

*Further, Plaintiff noted in his affidavit to the EEOC that his beard and other observances
has historically created animus.*

4. From 2006 to 2013, Plaintiff worked in various positions at the NGA, including as a
DAWIA supervisory contract specialist. Ex. 1 at 1. In 2011, Plaintiff's job location
moved to Springfield, Virginia. *Id.* He remained at the same pay grade throughout—
Band 4. *Id.* Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED</u>. See Plaintiff's
worked at NGA until Jan 9, 2015.

5. On June 24, 2013, the NGA posted a job opening for a DAWIA supervisory contract

specialist at a pay scale of Band 5 in Springfield, Virginia. See Ex. 3. The position asked for, inter alia, "applicants with extensive hands-on contracting experience including major systems, base operations or complex programs and strong supervisory skills to provide creative leadership in fulfilling NGA's mission." Id. at 1. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

6. Plaintiff submitted his resume, along with a cover letter, in consideration for the position. Ex. 1; Ex. 4. At the time of his application, Plaintiff was 68 years old. See Ex. 5 at 2. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

7. On July 5, 2013, the vacancy closed to applicants. See Ex. 3. Ms. Natasha Grant, the recruiter for the vacancy, reviewed the applicants' resumes to determine if the applicant was qualified based on the mandatory criteria set by senior leadership. Ex. 6 at 3; Ex. 7 at 4; see Ex. 3 (listing mandatory qualification criteria). Sixteen applicants, including Plaintiff, qualified for further consideration. See Ex. 4. Ms. Grant sent the qualified list of applicants, along with their resumes, to the selection panel. Ex. 6 at 3; Ex. 7 at 4; Ex. 4. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

8. The selection panel for this vacancy was comprised of four individuals: Daniel Hinchberger (male, aged 48), Richard Unis (male, aged 51), Tamara Verdon (female, aged 52), and Johnetta Williams (female, aged 54). Ex. 8. Mr. Hinchberger also served as the chair of the selection panel. Ex. 7 at 4. The composition of the selection panel satisfied the NGA's policy for diverse selection panel membership. See Ex. 9; Ex. 6 at 5; Ex. 10 at 3. Plaintiff's reply to this alleged undisputed fact: DISPUTED. Plaintiff agrees with the stated composition of the panel but disputes the implication that all

panelists participated in all of the panels' proceedings. See Defendant Ex 14 at Page 3 where Ms. Williams states that the panel only met when interviews were conducted. Her scores appear nowhere in the record. This demonstrates that Johnetta Williams and Tamara Verdon only participated in evaluating the interviewees, not the applicants.

9. At that time, Mr. Hinchberger was Plaintiff's second-level supervisor. Ex. 2 at 2. Ms. Verdon and Ms. Williams had both served as Plaintiff's supervisor in the past. Id. Plaintiff's reply to this alleged undisputed fact: DISPUTED. No evidence is provided to substantiate these facts.

10. The selection panel did not receive any demographic information for the sixteen applicants (i.e., nothing regarding the applicants' age, race, sex, disability, religion, or EEO activity). Ex. 6 at 4–5; Ex. 7 at 5. Plaintiff's reply to this alleged undisputed fact: DISPUTED. Plaintiff maintains that his age, race, sex, disability, religion, or EEO activity were both known and discussed by the panelists. Additionally, ages were evident or easily derived from the resumes. Also, all applicants were internal applicants and therefore their characteristic, including personal characteristic were well known to the panelists.

11. Upon receiving the resumes of the 16 applicants, each member of the selection panel individually rated and ranked the resumes on a scale of 1 (lowest) to 9 (highest) based on how well the applicant met the position's criteria, as outlined in the vacancy announcement. Ex. 7 at 4–5; Ex. 11 at 3; Ex. 12 at 3; Ex. 13 at 3; Ex. 14 at 3; Ex. 15 at 2; Ex. 16 at 2–3; Ex. 17 at 1–3; see also Ex. 18. Plaintiff's reply to this alleged

undisputed fact: <u>DISPUTED.</u> The cited exhibits contradict this alleged fact. Plaintiff

maintains that the panelists used different rating scales and that that Johnetta

Williams and Tamara Verdon only participated in evaluating the interviewees, not the

applicants. The deviations are summarized below:

The following, The following summary of Deviations from Regulations,
summarizes some of the agency regulations by panelist based on panelist testimony in
the ROI.

| Agency action/Requirement (ROI) | Hinchberger | Unis | Verdon | Williams |
|---|---|---|---|---|
| Rate 1-9 points on common criteria (ROI 000277) | 1-9 (000081) "resume against the AON" (000082) Ex. 19-2 at 4 | "I initially just ranked....and then I went back a second time and assigned a score to each resume" He did not reveal his basis for determining the scores. (000095) | "I used a scale of 1-10 with 10 being the highest." (000106). "I made notes on the resume" (000107). | Rated "1-10" ROI (000119) Def Ex 19-3 at 10 |

| Agency action/Requirement (ROI) | Hinchberger | Unis | Verdon | Williams |
|---|---|---|---|---|
| "Scoring splits (where any two panel members' ratings of any candidate differ by two or more points) must be resolved by discussions among the full panel to determine the most appropriate score." "Panel members document their scores and any changes due to resolution of splits." Average ratings (rounded up (ROI 000277) | The agency process is that if there is a split of more than two between any two raters, the panel must convene to make a decision. (ROI 000081). Four or 5 required decisions but I don't recall the names but not Laber (ROI 000084) | "..the panel came together. we arrived at a individual score every one could support.  We looked for differences of more than 2 points.  There may have been a couple of cases where we did not settle on the same number, but we were able to agree about the positions (rankings.) (ROI 000096) | Resolved if more than 2 points. There were splits. ROI (000108) | "I don't think we met as a panel until the interviews were held." (000119) Def Ex 19-3 at 10 |
| Jointly determine logical cutoff for interview (000081) | No testimony | "We decided to interview the top 8". "I don't recall how we established that cut point". (ROI 000096) Def Ex 19-3 at 4 | Can't recall (000108) | I can't recall whether our panel discussion was a formal thing, or just something that Mr. Hinchberger decided himself" Def Ex 19-3 at 10 (000119) |

| Agency action/Requirement (ROI) | Hinchberger | Unis | Verdon | Williams |
|---|---|---|---|---|
| Discussion of Complainant | Laber was not discussed | Each person was discussed | Laber was discussed | "I don't think we met as a panel until the interviews were held." Def Ex 19-3 at 10 (000119) |
| Complainant's score | All five panelists rated him a "5". ROI 000084 | Gave "5" | Gave 5 but his average 6 | Don't recall |

All panelists claimed that they rated and ranked all applicants' resumes. The variations, in Panelists' Inconsistencies below summarizes additional major inconsistencies in panelists' actions.

| Panelist | Criteria Utilized | Methodology | Justification |
|---|---|---|---|
| Hinchberger | DAWIA, Supervisory Experience, Source Selection, Leadership | NA | Handwritten for 7 applicants with ratings. No other documentation for any other applicant or Complainant. |
| Unis | Unknown because no ratings | Ranked and then rated | Handwritten for each of 7 applicants who all "met requirements" ratings. No other documentation for any other applicant or Complainant |
| Verdon | Unknown because no ratings | resume against AON wrote notes on resumes | No justification or rating for any applicant. Ratings appear at ROI 000199 but no known source. |
| Williams | Unknown because no ratings | Resume against AON Def Ex 19-3 at 10 Resume against the requirements. | No justification or rating for any applicant. Ratings appear at ROI 000199 but had no known source. |

| | | Def Ex 19-3 at 4 | |

12. Mr. Hinchberger then consolidated the panel's rankings and the panel met together to discuss their ratings, average out the scoring, and come up with a final ranking of the applicants. Ex. 7 at 4; Ex. 11 at 4; Ex. 12 at 3; Ex. 14 at 3. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> Ex 7 at 4 (Hinchberger) stated that all panelists used a scale of 1-9 but the panelists testified they used other scales such as none 1-10. Ex. 11 at 4 (Unis) or a scal of 1-10 at Ex. 12 at 3 (Verdon) ; Ex. 14 at 3 (Williams) states she used a scale of 1-10.

13. Next, the panel looked for a "logical cut point" in the scoring to determine who should be granted an interview. Ex. 12 at 5; Ex. 11 at 4. Based on a natural break in the scores, the panel decided to interview all applicants who rated a "7" or above. Ex. 7 at 4. Accordingly, the panel interviewed seven applicants for the position. Ex. 4. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> There is no evidence of if, how, when, or at what level a cutoff was established. Plaintiff is foreclosed of arguing that that a cutoff was not a "natural cutoff" because no evidence of any scores is proffered as evidence of any cut-off.

14. Each member of the selection panel independently gave Plaintiff a score of "5" based on his resume. Ex. 7 at 5; *see also* Ex. 12 at 4; Ex. 11 at 3. Because Plaintiff's score fell below the cut-off point, he and eight other people were not selected for an interview. Ex. 14 at 4; Ex. 4; *see also* Ex. 7 at 5 ("It was not a personal decision against [Plaintiff]."). Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> There is no evidence anywhere in the cited exhibits that substantiates that Plaintiff was rated

Page 12 of 34

as "5" by anyone or that he received any other score by anyone. There is no evidence

of how, when, if, or at what level a cutoff was established. Plaintiff is foreclosed of

arguing that that a cutoff was not a "natural cutoff" because no evidence is proffered

of any scoring related cut-off. There no evidence of resolution of any split or cut-off.

15. The selection panel rated Plaintiff a 5 out of 9 primarily due to his lack of

supervisory experience, strategic thinking, and breadth in contracting experience. Each

panel member articulated the reason for his or her score of Plaintiff as follows:

- ***Mr. Hinchberger***: "My biggest concern was his apparent lack of supervisory experience. Mr. Laber had decent contracting experience, but it did not strike me as being the same depth or breadth as other candidates. That, combined with what I perceived as relatively limited supervisory experience in the operational role were the biggest factors." Ex. 7 at 5–6.

- ***Mr. Unis***: "The biggest issue was his lack of broad experience across NGA contracts. This position had been identified as one of the most senior within the office of contracts. We were looking for someone with significant breadth and depth of contract experience, particularly within multiple buying divisions of NGA. I noticed that Mr. Laber had a lot of experience, duties, and assignments that were outside the normal buying realm." Ex. 11 at 3.

- ***Ms. Verdon***: "But the part of his resume that was the weakest was his demonstrated leadership experience; leading medium to large teams. Although he had some supervisory experience, to my knowledge while at NGA, he only supervised one person at a time, and most recently it was not in contracting. His weakest area was leadership and strategic involvement. He had no experience leading medium or large teams. Strategic thinking/agility and managing multiple people were not clear in his resume. He did not have the experience of setting up a larger operation and implementing it. He had not been a team lead of more than one person at a time, and he had not managed across organizational lines. He had not been involved in resolving or implementing strategic visions." Ex. 12 at 4.

- Ms. Williams: "I can't recall the specifics of my rating for him, but I followed the same process with each applicant. It has been awhile since I did it, and I haven't seen his resume since then. I would imagine that he was probably close to getting an interview. I don't think he would have been in the lower part of the group. But I do remember that he did not make the cutoff for the

interview. A lot of his prior experience was outside of the agency." Ex. 14 at 4. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> The record is void of any score attributed to Plaintiff or the establishment of a cutoff, or resolution of any split. There is no evidence anywhere in the cited exhibits that substantiates that Plaintiff was rated as "5" by anyone or any other score by anyone. There is no evidence of how, when, if, or at what level a cutoff was established. Plaintiff is foreclosed of arguing that that a cutoff was not a "natural cutoff" because no evidence is proffered of any cut-off. There no evidence of resolution of any split. The cited exhibits contradict the facts alleged above. Plaintiff maintains that the panelists' declarations were after the fact justifications for the discrimination, hearsay, and do not support any claims of how anyone rated Plaintiff. No panelist provided a score anywhere for Plainitff.

16. All four selection panel members knew Plaintiff was Jewish at the time of his application — either by way of personal conversations with Plaintiff or because of Plaintiff's manner of dress (e.g., he wore a skull cap in the office). Ex. 7 at 1–2; Ex. 11 at 1; Ex. 12 at 1–2; Ex. 14 at 4–5. The religious affiliations and/or practices of NGA employees is not recorded or maintained by the agency. *See* Ex. 19. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> Plaintiff recalls that when he joined NGA, he filled out a form that requested his religion and therefore this is ripe for discovery if allowed.

17. All four selection panel members regarded Plaintiff as male at the time of his

application. Ex. 7 at 2; Ex. 11 at 1; Ex. 12 at 1–2; Ex. 14 at 5. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

18. At the time of Plaintiff's application, Mr. Hinchberger and Mr. Unis estimated Plaintiff to be close to, or a little over, sixty years old. Ex. 7 at 1; Ex. 11 at 1. Ms. Verdon, who was fifty-two years old, was unsure of Plaintiff's age, but was "confident" that he was "a little bit older" than her. Ex. 12 at 1. Ms. Williams "did not know [Plaintiff's] exact age." Ex. 14 at 4. Plaintiff's reply to this alleged undisputed fact: DISPUTED. These facts are subjective guesses and not true facts.

19. Three of the four panel members were positive that they did not know anything about Plaintiff's prior EEO activity at the time of his application. Ex. 11 at 2; Ex. 12 at 3; Ex. 14 at 5–7. Mr. Hinchberger thought he may have heard something, but did not know any of the details: "Mr. Laber may have mentioned something to me in the past, but I can't recall the details. It is really foggy, so I'm not sure if I knew something about his EEO activity before this case." Ex. 7 at 3; *see also id.* 7–8 (stating that he did not know Plaintiff's EEO activity at the time of selection). Plaintiff's reply to this alleged undisputed fact: DISPUTED. The cited exhibits contradict this alleged fact. The word "positive" doesn't exist in any panelist's declaration. Because Mr. Hinchberger cannot recall when or how he became aware of Plaintiff's prior protected activity, a reasonable jury could find that he and every panelist learned of the protected activity during the evaluation process from the internet or any other source and shared the fact Ms. Crawford and all panelists. Additionally, the dates the pane; member acquired knowledge need to be obtained in discovery if permitted.

20. All four panel members swore under oath that Plaintiff's age, religion, sex, and EEO activity were not factors in their decision to not interview or select Plaintiff for the vacancy. *Id.* at 8–9; Ex. 11 at 6–7; Ex. 12 at 7–8; Ex. 14 at 5–7. Plaintiff's reply to this alleged undisputed fact: DISPUTED.  The cited exhibits contradict this alleged fact. Plaintiff maintains that the panelists' denials are hearsay after the fact denials that are disingenuous and in reprisal for the complaint.  Plaintiff cites the direct evidence provided by Ms. Verdon as contradicting these alleged facts. See Exhibit 1, Plaintiff's Affidavit.

21. In total, seven applicants were interviewed for the position. Ex. 4; Ex. 20. Of the seven interviewed applicants, one was male and six were female. *See* Ex. 11 at 6–7; Ex. 12 at 5– 6; Ex. 4. Plaintiff's reply to this alleged undisputed fact: DISPUTED.  The cited exhibits are contradicted by Ex. 12 at 5– 6 which states that 7 or 8 applicants were interviewed.

22. Based on the interviews, the panel recommend Karen Eichelberger for selection, and Danita Ladson as an alternate. Ex. 20. Mr. Hinchberger brought the panel's recommendation to the approving official, Tonya Crawford. Ex. 7 at 4–5. Plaintiff's reply to this alleged undisputed fact: DISPUTED.  The cited exhibits contradict this alleged fact.  Plaintiff maintains that Mr. Hinchberger testified that he could not locate his recommendation, *Def Ex 16 3: "I searched my files and could not find a selection document, I do not remember drafting a selection document."*

23. Ms. Crawford reviewed and then signed-off on the panel's  recommendation. Ex. 10 at 3. In doing so she "looked at panel composition, how they rated resumes, how they selected interviewees, and how they rated the interviews. Then [she] made sure

Page **16** of 34

that the job was given to the most qualified candidate." *Id.* at 3. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> If Ms. Crawford looked at how Plaintiff was rated she would found nothing because the record is devoid of any rating for Plaintiff. Additionally the cut-off was never revealed to allow her top make any determination.

24. Ms. Crawford concurred with the selection panel's determination that Plaintiff did "not have the extensive leadership or collaborative networks that Ms. Eichelberger ha[d]" and that "Ms. Eichelberger ha[d] more extensive supervisory experience than Mr. Laber." *Id.* at 4; *see also* Ex. 21. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> Ms. Crawford was not part of the panel and her testimony regarding the selectee is irrelevant. Her role is yet to be determined in discovery if allowed.

25. Ms. Crawford (female, aged 41) was aware of Plaintiff's sex and religion at the time of the selection, but did not know about his EEO activity. Ex. 10 at at 4–5; Ex. 8. She "assume[d] he [wa]s over the age of 40" but did not specifically know his age. Ex. 10 at 5. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> Ms. Crawford was not part of the panel so her testimony regarding the selectee is irrelevant. Her role is yet to be determined if discovery if allowed.

26. Ms. Crawford did not consider Plaintiff's age, religion, sex, or EEO activity as a factor in deciding to approve Ms. Eichelberger for the position. *Id.* Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> Her role is yet to be determined in discovery if allowed.

27. The NGA promoted Ms. Eichelberger to the position. *Id.* Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

28. The NGA notified Plaintiff that he had not been selected for the position on September 6, 2013. Ex. 22. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

**Plaintiff's EEO Proceedings**

29. On October 15, 2013, Plaintiff asked to be put in touch with an EEO counselor because he "believe[d] unfair discrimination may have occurred" when he was "not interviewed or selected" for the position. Ex. 23. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

30. Plaintiff filed an informal complaint on November 8, 2013. *See* Ex. 24. He then elected to pursue Alternative Dispute Resolution ("ADR"), which failed. Ex. 5. Plaintiff was issued a Notice of Right to file his formal complaint of discrimination on February 18, 2018. *Id.* at 3; Ex. 24. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

31. On March 10, 2014, Plaintiff filed his formal EEO Complaint, alleging that he was discriminated against on the basis of sex, religion, age, disability, and reprisal for prior EEO activity. Exs. 25 & 26. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

32. On April 2, 2014, the NGA accepted Plaintiff's complaint based on sex, religion, and age, but dismissed his claims of disability discrimination and reprisal for failing to state a claim. Ex. 27. In particular, Plaintiff refused to disclose what physical or mental condition he claimed as a disability. *See id.* at 2. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

33. Plaintiff's complaint was investigated from July 3, 2014 through August 8, 2014. Ex. 28 at 1. The investigator pursued all of Plaintiff's claims despite the NGA's non-acceptance of his claims of disability and reprisal. *See id.* The resulting investigative file totaled approximately 350 pages of documents and testimonial materials. *See* Ex. 29. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> The investigator explained that she was unable to obtain the information she sought. See Plaintiff's Exhibit 2, Pages 1 and 2.

34. In July 2014, Plaintiff signed a declaration under the penalty of perjury in connection with his EEOC complaint. *See generally* Ex. 2. Plaintiff stated that he "d[id not] know who applied" for the position or "how many people were interview" but his "claim is that [he] has more experience, training, and knowledge than anyone who was interviewed." *Id.* at 6. Plaintiff further stated that he did not know why he was not selected for the interview, but that he "presume[d]" it was because the selection panel "scored [him] in a way that did not match [his] qualifications" and instead "used their opinions about [him] rather than [his] actual experience." *Id.* at 7. Plaintiff's logic was that, with over 30 years of experience, he "d[id not] believe there is anybody with more experience than [he] h[as], inside or outside of the government." *Id.* at 6. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> Plaintiff agrees with the selected citations but disputes the claim that he did not know why he was not selected. See Plaintiff's Exhibit 1 Affidavit that discusses his debrief with Ms. Verdon.

35. In his declaration, Plaintiff testified that no one made any overt comments to him to indicate he was denied the job because of discrimination:

Where is the smoking gun? Was it one person? More than one person? Ill feelings? My religion, age, or sex? You'll have to talk to them because I can't cite overt comments made to me. They have not notified me that I am too old, or too Jewish, to my face. At this time I don't have any witnesses who will say that they made comments about my age, religion, or sex. *Id.* at 7–8. Plaintiff's reply to this alleged undisputed fact: DISPUTED. Plaintiff agrees with the selected citations but disputes the claim that he did not know why he was not selected. See Plaintiff's Exhibit 1 Affidavit that discusses his debrief with Ms. Verdon.

36. Three times in declaration, Plaintiff stated that he never discussed his non-selection with anyone on the selection panel:

- "I did not speak with any agency officials about this selection action; I knew how it turned out so I didn't talk to anyone." *Id.* at 9. Plaintiff's reply to this alleged undisputed fact: DISPUTED. Plaintiff agrees with the quotes but see his Affidavit at Exhibit 1 that explains why his entire July 7, 2014 declaration does not cite the statements made to him by Ms. Verdon which constitute his direct evidence.

- "I did not have any conversations with agency officials about how my religion played into the selection action because I never discussed the selection with anyone of them." *Id.* at 10. Plaintiff's reply to this alleged undisputed fact: DISPUTED. Plaintiff agrees with the quotes but see his Affidavit at Exhibit 1 that explains why his entire July 7, 2014 declaration does not cite the statements made to him by Ms. Verdon

which constitute his direct evidence.

- "I have had no discussion with agency officials about sex." *Id.* at 11. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED</u>. Plaintiff's claim for gender discrimination is supported by the facts known to date and will be supported by further discovery if Plaintiff's request for discovery is granted.

37. On November 21, 2014, the NGA issued a Final Agency Decision ("FAD"), finding that there was "no evidence of unlawful discrimination." Ex. 30 at 20. After Plaintiff appealed the NGA's decision, the Equal Employment Opportunity Commission ("EEOC") vacated the NGA, finding that the record was not yet sufficiently developed to determine if the NGA's reasons for not hiring Plaintiff was pretextual. *See* Ex. 31 at 5. Specifically, the EEOC held that the record needed to include the applications of the other candidates who were selected for an interview so it could determine whether they "also lacked supervisory experience in an operational contracting role." *Id.* The EEOC remanded the case and tasked the NGA with conducting a supplemental investigation. *Id.* at 5–6. Plaintiff's reply to this alleged undisputed fact: UNDISPUTED.

38. On April 4, 2017, the NGA issued another FAD after supplementing the Record of Investigation ("ROI") with more application materials and demographic information for those who applied to the position. *See* Ex. 32 at 4. However, the NGA forgot to use agency letterhead, and, as a result, a second copy of the FAD (on the correct letterhead) was issued on September 11, 2017. *See* Ex. 38. The NGA again concluded

that there was no evidence of unlawful discrimination. *Id.* at 21. Plaintiff's reply to this alleged undisputed fact: DISPUTED. Plaintiff has no memory of this occurring.

39. Plaintiff once again appealed. Ex. 34 at 3. On June 25, 2019, the EEOC reversed and remanded the FAD a second time. *Id.* at 4. This time the EEOC wanted "an individualized assessment of the applicants and how they compare to [Plaintiff]," including the ranking criteria and worksheets used to score and rank applicants. *Id.* at 3–4. The EEOC ordered the NGA to perform another supplemental investigation to include "all documents used and created by panel members in determining those applicants selected for an interview" as well as "supplemental affidavits" regarding the scoring of those individuals offered an interview. *Id.* at 4. Plaintiff's reply to this alleged undisputed fact: DISPUTED. Plaintiff generally agrees but the fact fails to address the contradicting fact that Defendant never provided any of the evidence that the EEOC requested. See Plaintiff's Exhibit 2.

40. On September 5, 2019—after performing the additional investigation ordered by the EEOC, including obtaining more application materials and supplemental affidavits from Mr. Hinchberger, Mr. Unis, Ms. Verdon, and Ms. Williams—the NGA issued its fourth and final FAD. *See* Ex. 35 at 3. The NGA concluded there was no evidence of unlawful discrimination. *Id.* at 32. Plaintiff's reply to this alleged undisputed fact: DISPUTED. Plaintiff generally agrees but the fact fails to address that Defendant never provided any of the evidence that the EEOC requested. The FAD was simply false. See Plaintiff's Exhibit 2.

41. On August 16, 2021, the EEOC affirmed the NGA's decision, finding that "the

responsible Agency officials articulated legitimate, nondiscriminatory reasons for its actions." Ex. 36 at 6. The instant case followed three months later. *See* Pl.'s Comp., Dkt. No. 1. Plaintiff's reply to this alleged undisputed fact: <u>DISPUTED.</u> Plaintiff respectfully submits that the EEOC decision only concerned itself with the selectee and not the group from which Plaintiff was rejected.

## PLAINTIFF'S CLAIMS OF AGE DISCRIMINATION AND GENDER DISCRIMINATION, AND REPRISAL DON'T WARRANT DISMISSAL.

## Standard of Review Under Federal Rule of Civil Procedure 12(b)(6).

A complaint is subject to dismissal if it fails to allege facts that state a plausible claim for relief rising "above the speculative level." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

Here, however Plaintiff has made probable claims well beyond the speculative. His complaint clearly explains how Plaintiff was over 40, a Jewish male, who had previously filed EEO complaints with Defendant, a fact that was known to all of the selecting officials when they rejected him. Further, it is undisputed that he applied, was qualified, and was referred for consideration, but despite his superior qualifications, was not granted an interview. A female, significantly younger, with no supervisory experience, who not did observe Jewish religious practices and had no prior protected activity was selected for interview. In the parlance of McDonnell Douglas v. Green, 411 U.S. 792 (1973) (1) plaintiff "is a member of the protected class (male, over 40, Jewish, with prior protected activity known to the panelists)"; (2) "the

employer had an open position (the instant vacancy) for which he applied or sought to apply"; (3) he "was qualified for the position" (referred on a certificate); and (4) he "was rejected under circumstances giving rise to an inference of unlawful discrimination." *Laber*, 2021 WL 5893293, at *2 (quoting *McCleary- Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015)).

Plaintiff maintains that these circumstances give rise to an inference of discrimination on the stated bases and constitute a prima facie case for discrimination based on age, religion, gender, and retaliation.

It has been well noted that when evaluations are based on subjective impressions and the evaluators are not themselves of the protected class, "the legitimacy and non-discriminatory basis of the articulated reason for the decision may be subject to particularly close scrutiny." *Page v. Bolger*, 645 F.2d 227, 230 (4th Cir.1981), (en banc), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed. 2d 206 (1981).

The above findings, coupled with Complainants strong prima facie claims and the Agency's failure to a present a legitimate non-discriminatory basis in a clear, concise, and individualized way, deprived Complainant of a fair opportunity to meet his burdens. See 56(d) motion herein.

## Plaintiff Has Plausibly Alleged Discrimination Based on Gender Under Title

**VII.** To make out a prima facie case of employment discrimination for failure to hire (in the absence of direct evidence of discrimination), Plaintiff must show that: (1) he "is a member of the protected class"; (2) "the employer had an open position for which he applied or sought to apply"; (3) he "was qualified for the position"; and (4) he "was

rejected under circumstances giving rise to an inference of unlawful discrimination." *Laber*, 2021 WL 5893293, at \*2 (quoting *McCleary- Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015)).  Here, Plaintiff does not need to plead a prima facie case to overcome a motion to dismiss, because his "factual allegations" raise a right to relief above the speculative level." *Id.* (alteration in original) (quoting *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010)).

Defendant claims that "nowhere does Plaintiff allege the gender breakdown of the total application pool, those selected to be interviewed, or the individuals on the selection panel."  Plaintiff requires discovery to be able to present his opposition to provide the gender breakdown.  See Plaintiff's Rule 56(d) Motion whereby he requests gender information.

## Plaintiff Was Discriminated based on Age Under the ADEA.

The ADEA grants a cause of action for federal employees over the age of 40 who allege age discrimination. *See* 29 U.S.C. § 633a. To survive a motion to dismiss, Plaintiff "must plausibly allege that he is (1) over the age of 40, and (2) experienced discrimination by a federal employer (3) because of his age." *Song v. Becerra*, 2021 WL 3732961, at \*1 (4th Cir. Aug. 24, 2021). Plaintiff has met this because of his direct evidence.  See Exhibit 1, Plaintiff's Affidavit. Additionally, see rule 56(d) to discover additional facts to oppose Defendant's claims.

## Plaintiff was retaliated based on Retaliation Discrimination under Title VII.

Plaintiff alleges that he was not selected for the supervisory position in retaliation for his prior Equal Employment Opportunity ("EEO") complaints. To survive

a motion to dismiss on a Title VII retaliation discrimination claim, Plaintiff must that: '(1) he engaged in a protected activity; (2) the employer acted adversely against [him]; and (3) there was a causal connection between the protected activity and the asserted adverse action.'" *Laber*, 2021 WL 5893293, at \*3 (alterations in original) (quoting *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008)). Apply these to the instant case, (1) Defendant admits that Plaintiff filed prior EEO complaints. (2) Defendant admits that Plaintiff was rejected when he was denied an interview (3) there was a causal connection because all of the panelists decided not to interview Plaintiff based on his religious observances and their knowledge of his prior protected activity. Additionally, see rule 56(d) to discover additional facts to oppose Defendant's claims.

## NONE OF PLAINTIFF'S CLAIMS WARRANTS SUMMARY JUDGMENT.

## Standard of Review Under Federal Rule of Civil Procedure 56.

Although a plaintiff in an employment discrimination case is ordinarily entitled to a *de novo* hearing on claims in district court, he is not entitled to a full trial on the merits if summary judgment is warranted. *Ballinger v. N. C. Agric. Extension Ser.*, 815 F.2d 1001, 1005 (4th Cir. 1987). Summary judgment procedures are important in winnowing out meritless claims and preventing the "unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Summary judgment is not appropriate where there are genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c); *Celotex*, 477 U.S. at 322–23. The Evidentiary Burden Governing Discrimination and Retaliation Claims.  By Plaintiff's replies to the alleged undisputed by Defendant, he has raised material disputes.  These disputes are: 1. Plaintiff's scores and standing because of the absence of any scores or records of a cut-off 2. No legitimate basis proffered that was rebuttable. 3. Inconsistent rating scales used 4. No summary recommendation. 5. Shifting bases 6. Spoliation in retaliation. 7. Panelists awareness of plaintiff's age and prior protected activity. Additionally, see rule 56(d) to discover additional facts to oppose Defendant's claims.

A plaintiff may use direct or circumstantial evidence to make out a case of discrimination or retaliation under Title VII and the ADEA. *See U.S. Postal Serv. Bd. of Gov'rs v. Aikens*, 460 U.S. 711, 714 n.3 (1983) (Title VII); *Arthur v. Pet Dairy*, 593 Fed. Appx. 211, 216 (4th Cir. 2015) (ADEA); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (retaliation). Direct evidence is "conduct or statements that both reflect . . . the alleged discriminatory attitude and that bear directly on the contested employment decision." *Rhoads v. FDIC*, 257 F.3d 373, 391-92 (4th Cir. 2001). Ms. Verdon was a panelist and spoke directly to Plaintiff's rejection. See Exhibit A Plaintiff's Affidavit. Additionally, see rule 56(d) to discover additional facts to oppose Defendant's claims.

In the failure-to-hire context, a plaintiff must first establish a *prima facie* case of discrimination by establishing by a preponderance of the evidence that: (1) he is a member of a protected group (age, sex, religion, prior protected activity; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he

was rejected under circumstances giving rise to an inference of unlawful discrimination. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (Title VII); *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998) (ADEA). For age, sex, and religious discrimination, this fourth element generally requires a plaintiff to show that he was treated less favorably than a member outside of his protected class. *See Arthur*, 593 F. App'x at 217; *Coleman*, 626 F.3d at 190.

To establish a *prima facie* case of retaliation under Title VII or the ADEA, the plaintiff must prove: (1) he engaged in protected activity; (2) adverse action was taken against him; and (3) there was a causal connection between the protected activity and the adverse action. *Laber*, 2021 WL 5893293, at *3; *see also Ziskie*, 547 F.3d at 229.

If a plaintiff can make out the prima facie case, "he creates a presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision." *Laber*, 438 F.3d at 430. If the defendant can articulate a legitimate reason, "then the presumption disappears and the plaintiff must show that the articulated reason is a pretext" for discrimination. *Id* Plaintiff Has Presented Direct Evidence of Discrimination based on Age and Religion. Additionally, see rule 56(d) to discover additional facts to oppose Defendant's claims.

In his First Amended Complaint (filed in 2021), Plaintiff alleges that he spoke with Ms. Verdon in October 2013 about the reason for his non-selection. See Complaint FAC ¶¶ 71–72 and Plaintiff's Affidavit, Exhibit 1 provides additional detail.

The affidavit explains the inconsistences stated in the administrative phase declarations where Plaintiff claimed that he did not discuss the non-selection with the hiring officials and did not reveal his conversation with Ms. Verdon.  Plaintiff explains his affidavit that Ms. Verdon told him that the panel had collectively decided that "Plaintiff would never be selected because of his religiously motivated dress and grooming, specifically his skullcap and untrimmed beard." FAC ¶¶ 71—73. This direct evidence obviates the need for a Prima Facie Case of Discrimination and Retaliation or any other basis to deny summary judgment.  This is so because even the taint of discrimination warrants denial of summary judgment with nothing else needed. Title VII and the ADEA both prohibit discrimination in federal employment. Each law dictates that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on" race, color, religion, sex, or national origin, and age, respectively. 42 U.S.C. 2000e-16; 29 U.S.C. 633a(a). In Babb v. Wilkie, the U.S. Supreme Court analyzed the language of the ADEA's federal-sector anti-discrimination statute and held that it "demands that personnel actions be untainted by any consideration of age," but confirmed that the applicable causation standard for a back pay remedy claimed here "requires that age be a but-for cause of the discrimination alleged." This reason extends to Title VII given the textual similarity between the ADEA and Title VII, its reasoning applies to both statutory schemes. See 42 U.S.C. 2000e-16; 29 U.S.C. 633a; Gomez-Perez v. Potter, 553 U.S. 474, 487 2008) (recognizing "ADEA federal-sector provision . . . was patterned 'directly after' Title VII's federal-sector discrimination ban"). it uses the

same language as the ADEA. Additionally, see rule 56(d) to discover additional facts to oppose Defendant's claims to acquire all of his "but for" evidence.

Even if Plaintiff's direct evidence fails, he has shown that (i) that he belongs to protected class; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that his job application was rejected; and (iv) thereafter, the company continued to seek applicants. After the prima case is established, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for its action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Then, the burden shifts back to the plaintiff to present evidence to show that the employer's stated reason is a "pretext," which, if proven, gives rise to an inference of unlawful discrimination. Defendant has offered none because Defendant only compared him to the selectee and not the group from which he was rejected. That group was the group selected for interview. Additionally, the alleged basis of no supervisory experience is clearly a pretext because a younger female with no supervisory experience was granted an interview. At a minimum, summary judgment is premature and Plaintiff should be allowed discovery and Defendant should be required to answer the complaint. Additionally, see rule 56(d) to discover additional facts to oppose Defendant's claims.

## 1. **There is Direct and Circumstantial Evidence of Retaliation.**

Plaintiff established a prima facie case of retaliation for two reasons: (1) the selection panel members were aware of his prior protected activity, not only Mr. Hinchberger and (2) there was no time gap between Hinchberger and the panelists

learning of his prior making plausible that the two were linked.

Ms. Verdon, Ms. Williams, Ms. Crawford, and Mr. Unis declarations are hearsay and need vigorous cross examination in front of a decision maker. Also, Plaintiff needs discovery to meet his burden for additional evidence regarding their knowledge. See Plaintiff's Exhibit 1 wherein he asks for discovery related to communications between Ms. Verdon and Mr. Hinchberger. There is Circumstantial Evidence of gender Discrimination based on the undisputed fact that only one male was interviewed. The actual number of interviewees is not shown anywhere in the record. It varies from 7 to 16. Additionally, see rule 56(d) to discover additional facts to oppose Defendant's claims.

### There is Direct and Circumstantial Evidence of Age Discrimination.

The selection panel was only keenly aware of Plaintiff's actual age, guessing he was somewhere in his fifties or sixties. *See*

Ex. 7 at 2 ("early 60's"); Ex. 12 at 1–2 ("a little bit older than I am"); Ex. 11 at ("probably close to 60"); Ex14 at 1 ("Mid 60's"); Ex. 10 at 5 ("He talks about the number of great grandchildren he has, so I assume he is older than I."). Plaintiff can establish that he was rejected under circumstances giving rise to an inference of unlawful discrimination with additional discovery. Plaintiff established direct evidence of religious discrimination in the form of Ms. Verdon's telling Defendant that his scores, which she did know, were not considered at all. She admitted in a meeting with Plaintiff that the panel determined it did not want to interview Plaintiff because it had no intention of selecting him based on his religious observances. See Plaintiff's Exhibit 1.

Page **31** of **34**

### 2. **Evidence of Religious and Discrimination.**

Plaintiff established direct evidence of religious discrimination in the form of Ms. Verdon's telling Defendant that his scores, which she did know, were not considered at all. She admitted in a meeting with Plaintiff that the panel determined it did not want to interview Plaintiff because it had no intention of selecting him based on his religious observances.  See Plaintiff's Exhibit 1 Affidavit.

As Defendant admitted in its motion and exhibits, all panel members were aware that Plaintiff was Jewish—either through personal conversations with him or because of his religious dress in the office. Ex. 7 at 1–2; Ex. 11 at 1; Ex. 12 at 1–2; Ex. 14 at 4– 5; Ex. 10 at 4–5.  Plaintiff has established that no applicants were in his protected class relative to his religious observances (beard and dress) and age (68). See Plaintiff's Exhibit A.

Defendant has yet to answer the instant complaint (consisting of 116 claims).  It would be premature to grant Defendant's motion to dismiss any claim or grant summary judgment without those answers. Defendant's reliance on the administrative is misplaced because the record was prepared entirely by Defendant for purpose of stifling Plaintiff's complaint.  All declarations in it were prepared by lawyers well after Plaintiff's rejection and no contemporaneous document exists.  Defendant destroyed all documents of the panel's proceedings. Any that appear in the administrative record are after-the-fact and undated.  Even those that seems to have a date, do not show any score for Plaintiff.

### **Request to Amend Complaint**

To any extent the court believes that Plaintiff has not included sufficient information to show this his claims were plausible and probable per *Corp. v. Twombly*, 550 U.S. 544, 555

(2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), he respectfully requests an opportunity to amend his complaint.

**Defendant presented no legitimate reason to reject Plaintiff.**

Defendant's defense states it "had a legitimate and non-pretextual reason for selecting Ms. Eichelberger over Plaintiff' - the selection panel viewed Ms. Eichelberger as better qualified for the position". This defense however, fails because this doesn't address Plaintiff's claim. Plaintiff claimed that he was rejected prior to Ms. Eichelberger's. His claim is that he was rejected when he competed with those applicants selected for interview. Defendant's lengthy discussion of Ms. Eichelberger qualifications does nothing but report conclusory hearsay and after-the fact comments from the administrative record concerning the wrong comparative group. Further, Plaintiff's scores were purposefully destroyed and do not exist and therefore cannot even be compared to the selectee.

Even if Defendant had claimed that Plaintiff was rated lower relative to those granted interviews, which it did not and cannot, such hypothetical defense cannot be substantiated at all because Plaintiff's scores were purposefully destroyed and do not exist. All testimony regarding his scores are simply false after the fact hearsay. The single mention of any basis was Plaintiff's lack of supervisory experience. Plaintiff maintains that at least one applicant with no supervisory experience was granted an interview.

In sum, Defendant has provided no legitimate non-discriminatory reason for not granting Plaintiff an interview. Plaintiff has provided direct evidence of age, and

religious discrimination (Exhibit 1 Plaintiff's Affidavit, and retaliation (destroyed all relevant records of the panels' proceedings). Discovery is needed for additional facts to oppose

**CONCLUSION**

For the foregoing reasons, Defendant's motion for dismissal and summary judgment should be denied.

Stan Laber

*[signature]*

Plaintiff Pro Se May 31, 2022

CERTIFICATE OF SERVICE

Certificate of Service

I certify, that sent this motion via first-class on April 8, 2002 to the clerk of the Clerk of the Court:

Albert V. Bryan U.S. Courthouse
401 Courthouse Square
Alexandria, VA 22314

and to the Defendant at

CAROLYN M. WESNOUSKY
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

*[signature]*

Respectfully,
Stan Laber, Pro Se May 31, 2022
321 S. Main Ave
Albany NY 12209