IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| STAN LABER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>LLOYD J. AUSTIN, *in his official capacity as Secretary, United States Department of Defense,*<br><br>　　　　　Defendant. | No. 1:22-cv-145 (MSN/TCB) |

### EXHIBIT 1 - PLAINTIFF'S AFFIDAVIT REGARDING DIRECT EVIDENCE IN HIS 6/6/22 REPLY TO DEFENDNAT'S ECF 09 DATED 03/28/2022

**INTRODUCTION**

I, Stan Laber, state the under the penalty of perjury the following. I have personal knowledge of the facts asserted that would be admissible in evidence, and I am competent to testify on the matters stated herein.

My reply cites "Direct Evidence of Discrimination" based on my debrief meeting with Ms. Verdon in October 2013. I agree that my July 7, 2014 declaration does not cite the direct statements made to me by Ms. Verdon which constitute my direct evidence of discrimination based on age, religion, and retaliation. Also, it appears that my initial complaint did not cite the conversation. I first cited it in my amended complaint as follows:

　　71.　On or about October 2013, Plaintiff received a debriefing from one of the four

EXHIBIT 1 Plaintiff's Affidavit　　　　　　　　　　　　　　000001

*panelists, Ms. Verdon.*

72. *Plaintiff inquired as to the cutoff score required for an interview, his score, and the reason for his score.*

73. *Ms. Verdon advised Plaintiff that the reason he was not interviewed was because the panel decided that Plaintiff would never be selected because of his religiously motivated dress and grooming, specifically his skullcap and untrimmed beard.*

I have no independent memory of why I failed to reveal the conversation earlier than the amended complaint. I believe that either I simply forgot about the event entirely during the administrative phase or chose not to reveal it at that time for some reason that I cannot recall. After the administrative process, I had no occasion after that to rethink it and nothing occurred to prompt my recollection. My entire emphasis during the administrative phase was the Agency's lack of a legitimate non-discriminatory basis and/or a shifting basis and that I was prevented from rebutting either because there were no records of my scores, evaluation, or the alleged cut-off. All of the records were destroyed. The fact that one-candidate with no supervisory experience was interviewed formed by basis for pretext. The OFO seemed on track to in my favor but the author of the final decision focused on comparing me to the selectee rather than those selected for interview, the same error that Defendant makes now.

That said, I do recall the events that led up to the conversation as stated in the amended complaint. At some point prior to filing the amended complaint, I happened to read Ms. Verdon's declaration at Defendant's Ex 12, Page 11 where Ms. Verdon stated that she was an "out lesbian". Upon reading that statement, I was immediately reminded of the conversation we had, and most of the details she shared with me, because her revelation of being a lesbian was part and parcel of her explanation as to why I was not granted an interview.

On that day, which I believe was in October 2013, Ms. Verdon agreed to meet with me

# EXHIBIT 1 Plaintiff's Affidavit                              000002

based on my written request that I had made to Mr. Hinchberger and all of the panelists the next business day after I was notified of my non selection as shown below. I specifically asked for my scores and what was needed to be interviewed.

> "—Original Message—
>
> From: Laber Stan P NGA-OCSP USA CIV
>
> Sent: Monday, September 09, 2013 3:10 PM
>
> To: Hinchberger Daniel E Mr NGA-OCS USA CIV
>
> Cc: Verdon Tamara J Ms NGA-OCS USA CIV; Unis Richard E NGA-OCSR USA CIV; Williams Johnetta B Ms NGA-OCSJ USA CIV
>
> Subject: RE: RECENT B5 AON
>
> Thanks. Can you please provide my rating and ranking and what rating and ranking was needed to be interviewed?
>
> Stan
>
> —Original Message—
>
> From: Hinchberger Daniel E Mr NGA-OCS USA CIV
>
> Sent: Friday, September 06, 2013 9:03 AM
>
> To: Laber Stan P NGA-OCSP USA CIV
>
> Cc: Verdon Tamara J Ms NGA-OCS USA CIV; Unis Richard E NGA-OCSR USA CIV; Williams Johnetta B Ms NGA-OCSJ USA CIV
>
> Subject: RE: RECENT B5 AON
>
> Stan,
>
> I would like to thank you personally for applying to our recent B5 Contract Specialist AON. We received numerous outstanding applications. The panel's decisions regarding which candidates were selected for interview as well as the candidate that will ultimately

EXHIBIT 1 Plaintiff's Affidavit                    000003

*be selected were equally difficult as the ratings and rankings of the applications were very competitive. Ultimately, we decided not to interview all candidates. I strongly encourage you to continue to apply for future opportunities. The panel members for this AON were Rich Unis, Tammy Verdon, Johnetta Williams and myself Please feel free to schedule an appointment with one of the panel members to get feedback on how to strengthen your resume for future opportunities.*

*Sincerely,*

*Dan Hinchberger"*

Although Ms. Verdon denies that we met, see Defendant's Ex 12, Page 3-4, her declaration substantiates my request and her intent to meet with me.

> "In this case, Mr. Laber said he wanted to talk to me about the selection. At that point time neither of us closed the loop to discuss it. At that point it was the end of the fiscal year and there were furloughs, so we never got back to one another on the issue. We deferred the discussion until after the fiscal year ended, and then the furlough hit, and neither of us circled back to discuss it."

In order to absolutely identify that the meeting took place and the content of the meeting, I would require the opportunity for additional discovery of emails both before and after the meeting when she more likely that not reported back to Mr. Hinchberger wherein they discussed the meeting prior to it and the results of our meeting. More likely than not, Ms. Verdon advised Mr. Hinchberger via that she didn't give me any details regarding my scores, ratings, or cut-off. Depositions may also be required. (See Plaintiff's Rule 56(d) Motion.

The meeting took place at my work area in the same office building we shared. I explained that she should press the doorbell leading to my office area. She did so. As I invited her in, I announced, as required by security regulations, the words "un-cleared coming through" because she was not cleared for access to information that might on desks in that office. She voiced her surprise that she was not cleared for that but cooperated as we paused and then

**EXHIBIT 1 Plaintiff's Affidavit**          **000004**

proceeded to walk past a few cubicles until we reached the second office on the left and entered. It was an unoccupied private office that had a small round conference table with two chairs. I closed the door.

I began by thanking her for taking the time to meet with me and explained how disappointed I was because I wasn't even granted an interview and repeated my original request for my scores and asked about the cut-off for interview. She said she understood. Then, I said something about my concerns regarding how I am viewed by others relative to my religious observances and the steps I have taken to mitigate those perceived concerns. She interrupted me because something caused her to launch into telling me about her lesbian outing which occurred after she had been promoted to band five. We then exchanged more information about stereotypical attitudes in the work place that we have each encountered.

When I tried to steer the discussion back to my request for my scores, she placed her hand on my sleeve, looked directly at me, and said "it's just like we said", the panel had "no intention of hiring you, so we decided not to interview you". It wasn't about your scores. I became very emotional at that point because of the revelation of why I wasn't interviewed and the fact that her hand was still on my wrist and forearm. That news and the close physical contact, coupled with the fact that we were in a private room with the door closed, heightened my concerns. Part of my religious observance is not to be secluded in a closed space and not to have physical contact with a woman (other than my family).

I immediately pulled my hand back and just sat there dumbfounded and began tearing up and mumbling something that I don't recall. She went on to explain that the panel believed that it was important that employees have close rapport with their supervisors and my age, beard and yarmulke were barriers to achieving successful mentoring. The employees would simply feel uncomfortable. I asked who on the panel felt that way, everyone? She didn't

# EXHIBIT 1 Plaintiff's Affidavit     000005

answer and instead said some words to the effect that it wasn't necessarily anti-Semitism per se, just the panel's concerns and reasoning for not interviewing you. I apologized to her for my emotional reaction.

I don't recall what was said after that. I remember thanking her for taking the time, opening the door, and escorting her out of the office. I estimate the meeting lasted for about 20 minutes.

I can't explain how or why I didn't report it earlier, but that does not detract from the fact that it occurred exactly as described above. Plaintiff has personal knowledge that established that no applicants were in his protected class relative to his religious observances (beard and dress) and age (68). Plaintiff reserves the right to revise any of the above based upon future discovery of information that may arise in the course of this suit.

END OF AFFIDAVIT

*Stan Laber*

Plaintiff, Pro Se

May 31, 2022

EXHIBIT 1 Plaintiff's Affidavit                    000006

## INVESTIGATOR'S DECLARATION

I, *Mark Lewis* EEO Complaints Investigator, Investigations and Resolutions Directorate, assigned to investigate the complaint of **Mr. Stan Laber**, Agency Number **NGAE-14-O03**, in accordance with 28 U.S.C. Section 1746, declare the following:

**INVESTIGATION**
As part of his Formal Complaint, Complainant included the bases of Disability and Reprisal for EEO activity (IF pp 2-4). On April 2, 2014, the EEO Office dismissed both Disability and Reprisal. In its Notice of Acceptance/Dismissal memorandum, the EEO Office stated that Complainant had a) failed to state a claim regarding his Disability, and b) failed to allege adverse action was taken against him for prohibited protected activity covered under applicable statutes (IF pp 45-49). However, the Investigator included Disability and Reprisal as part of the investigation based on the premise that the Complainant can choose which bases to include in the complaint. The Investigator sought updated records from the EEO Office to include demographic data on employees' known disability status and known EEO activity (IF p 340). During his testimony, in response to questions about his Disability and Reprisal claims, Complainant refused to disclose the details of his disabling condition. Complainant alleged that one or more agency employees/officials interpreted his behavior as being a disabling condition, although he would not elaborate or explain the claim. Complainant stated his protected EEO activity is "known" and accessible online, but no one hassled him about it (IF pp 55-57, 63).

During his interview, Complainant was disinterested in offering full and complete answers to the Investigator's questions; Complainant stated several times that he would just complete answers when he received the declaration for review and signature. The Investigator explained that the answers Complainant provided during his primary testimony would be used to elicit information from other witnesses during other interviews immediately following his own. Complainant was surprised and resistant to such information. Complainant also expressed displeasure after the Investigator explained that everything discussed during the interview was on-the-record.

**WITNESSES**
Several names were provided for Human Resources subject-matter-experts with knowledge or involvement of the selection action at issue. The Investigator interviewed Ms. Natasha Grant because she was the HR professional who was involved at the outset of the selection process; she was involved in the review of resumes (IF pp 127-131). The Investigator did not interview Ms. Kimberly Young because she handled the processing of the selection after agency officials had made the decision about who would be selected. The Investigator did not interview Ms. Lara Noel because she only collected applicable documents as requested by IRD

**DOCUMENTS**

The Investigator sought to obtain copies of the resumes from all applicants who had applied to the position at issue, although they were never submitted (IF p 340).

The Investigator sent management officials' testimony to Complainant for rebuttal on August 7, 2014, with suspense of August 11, 2014 (IF p 348). At the time the testimony was sent to Complainant for rebuttal, the Investigator had not received a properly executed sworn declaration from Ms. Tonya Crawford. The Investigator sent the content of Ms. Crawford's unsworn testimony to Complainant for his rebuttal. On August 8, 2014, before the rebuttal was due, the Investigator received a properly executed and sworn declaration from Ms. Crawford. The Investigator sent the signed declaration to Complainant and instructed him to incorporate it into his rebuttal by the original suspense (IF p 350). Complainant did not return a rebuttal statement by the time the Report of Investigation and Investigative File was due for submission.

A few documents on file are skewed due to the way they were scanned and presented by one or more of the parties. The readability of the skewed documents should not be affected (IF pp 34-35, 53-64). Some documents may be difficult to read due to hand-written scripts created by panel members; hand-written content cannot be made clearer (IF pp 187-243, 284-285). One document was partially redacted by the EEO Office, and some documents identify employees/applicants by number, not by name. The Investigator requested but did not receive data on employees/applicants identifying their names (IF p 161). To the extent possible, the Investigator has eliminated unnecessary duplicates. If documents are found in duplicate it is because they were submitted by more than one party, or they were presented in a form that precluded the investigator from eliminating them (i.e. bundled within a PDF file). When there was doubt about two or more copies of the same document(s) containing small substantive differences, the Investigator erred on the side of inclusion.

## END OF STATEMENT

I, **Mark Lewis,** declare under penalty of perjury, that the foregoing is true and correct.

Date: **August 18, 2014**      Signature: *Mark Lewis*