**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| STAN LABER, | |
| Plaintiff, | |
| v. | No. 1:22-cv-145 (MSN/TCB) |
| LLOYD J. AUSTIN, *in his official capacity as Secretary, United States Department of Defense*, | |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Defendant, Lloyd J. Austin, in his official capacity as Secretary, United States Department

of Defense, by counsel, hereby submits the following reply in support of his motion to dismiss and

for summary judgment.

**INTRODUCTION**

In his opening memorandum, consistent with the extensive investigatory record developed

by the National Geospatial Intelligence Agency ("NGA") during the administrative process that

preceded this action, Defendant explained why each of Plaintiff's claims fail under settled Fourth

Circuit authority.  In his opposition, Plaintiff does nothing to respond to Defendant's particular

arguments.  Instead, Plaintiff primarily provides this Court with a reiteration of the bare-bones

allegations in his complaint, a reflexive rejection of Defendant's factual assertions without any

accompanying evidentiary citation, and a self-serving affidavit that contradicts his previous sworn

testimony.  In a last-ditch effort, Plaintiff also asks this Court for leave to amend his complaint—

for the second time—and repeatedly states that he needs more discovery to prevail on his claims. These requests ring hollow.

Indeed, Plaintiff's complaint leaves out key facts required to make his claims of discrimination and reprisal plausible, instead relying on speculative and conclusory allegations, and fails to explain *how* he would amend his complaint if given the chance. A review of the investigatory evidence makes clear that Plaintiff's allegations are meritless. Other than relying on his sham affidavit (which this Court should disregard), Plaintiff cites to no evidence—direct or circumstantial—to support his claims. And Defendant's evidence stands unrebutted that the selection panel's reason for choosing another application for the position—i.e., that she had more supervisory experience—was legitimate and not simply a pretext for discrimination or reprisal. Finally, despite requesting more discovery, Plaintiff does not identify any that would create a genuine dispute of material fact.

Given that Plaintiff cannot state a claim, and his claims are wholly without merit, this Court should either dismiss Plaintiff's claims or enter summary judgment in favor of Defendant.

## ARGUMENT

**I.      DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM OF SEX DISCRIMINATION, AGE DISCRIMINATION, OR REPRISAL.**

Plaintiff's claims of sex discrimination, age discrimination, and reprisal rest wholly on his singular allegation that "[a] female, significantly younger, with no supervisory experience, who . . . had no prior protected activity was selected for interview" instead of him, an older man with a history of filing Equal Employment Opportunity ("EEO") complaints. Dkt. 23 at 23. As Defendant explained in its memorandum, without further factual allegations, this allegation does not give rise to a plausible claim under Title VII or the Age Discrimination in Employment Act

("ADEA") that Plaintiff's non-selection was due to protected class discrimination or retaliation. Plaintiff's opposition does not rebut this argument.

Instead, Plaintiff summarily "maintains that these circumstances give rise to an inference of discrimination" and reprisal and argues that if not, he needs further discovery to pursue his claims and should be allowed to amend his complaint. Dkt. 23 at 24, 25. But Plaintiff's complaint is devoid of key facts needed to state a plausible claim. For example, Plaintiff does not give a gender breakdown of the selection panel or interview pool, does not provide the relative ages of anyone involved in the application or selection process, and does not explain when his prior EEO activity occurred. With only Plaintiff's conclusory assertions that he was not selected due to discrimination or reprisal, and no legitimate grounds to allow Plaintiff to amend his complaint for the second time, the Court should dismiss these claims with prejudice.

### A. Plaintiff's Sex Discrimination Claim Merits Dismissal.

Plaintiff concedes that his complaint does not allege the existence of any direct evidence of sex discrimination. *See* Dkt. 23 at 24–25. Instead, Plaintiff asks this Court to conclude that he has pled a plausible claim of sex discrimination based only on his allegations that (1) he was male; (2) qualified for the open position; and (2) a woman was selected for the position instead of him. Dkt. 23 at 24. But these allegations, by themselves, do not "raise a right to relief above the speculative level." *Laber v. U.S. Dep't of Defense*, 2021 WL 5893293, at *1 (E.D. Va. Dec. 13, 2021) (quoting *McCleary- Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015)). Indeed, "the consequence of allowing [Plaintiff's] claim to proceed . . . would be that any qualified member of a protected class who alleges nothing more than that []he was denied a position or promotion in favor of someone outside h[is] protected class would be able to survive a Rule 12(b)(6) motion." *McCleary-Evans,* 780 F.3 at 588. This result "cannot be

squared" with the requirement "that a complaint must allege 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662 at 678 (2009)).

Conceding that he has failed to plead supporting facts for his claim, Plaintiff argues instead that he "requires discovery to be able to present his opposition to provide the gender breakdown [sic]" of the application pool, the interviewees, and the selection panel.  Dkt. 23 at 25.  At the outset, Plaintiff has the standard exactly backwards; as the Supreme Court has held, a civil plaintiff is not entitled to discovery *unless* he has presented a plausible claim, as the Federal Rules "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-89 (2009).  And in any event, the information that Plaintiff ostensibly seeks is already available to Plaintiff through the administrative record, as cited in Defendant's memorandum.  *See* Dkt. 19 at 25–26; Dkt. 19-2 at 24, 53.  Plaintiff's failure to address these known facts, and attempts to ignore them by leaving them out of his complaint, reveal how implausible his claim really is.

### B.  Plaintiff's Age Discrimination Claim Merits Dismissal.

Like his sex discrimination claim, Plaintiff's age discrimination claim rests solely on the allegation that a younger individual was selected for the position instead of him.  *See* Dkt. 23 at 24.  In his opposition, citing to a newly executed affidavit, Plaintiff now claims that he has "direct evidence" of age discrimination.  *Id.* at 25.  No such evidence is alleged in his complaint,[1] and "[i]t

---

[1] While Plaintiff references a conversation with Ms. Verdon in his currently-operative complaint, he does not allege that she made any comment about or reference to his age.  In his newly signed affidavit, Plaintiff conveniently claims for the first time that Ms. Verdon told him during that same conversation that his age was a factor in his non-selection. Dkt. 23-1 at 5.  For the reasons already noted, this affidavit is irrelevant to whether Plaintiff has stated a plausible claim of age discrimination (which is premised solely on the complaint).  But to the extent that this Court elects to move beyond Defendant's motion to dismiss to his motion for summary judgment, the belated and contradictory nature of Plaintiff's new affidavit is addressed below.

is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). This Court should therefore ignore Plaintiff's new affidavit in considering Defendant's motion to dismiss.

Moreover, Plaintiff's complaint leaves out key information needed to render any age discrimination claim plausible. For example, Plaintiff fails to allege any the relevant individuals' ages, including other applicants, the selectee, interviewees, or the selection panel members. Here also, this information is already available to Plaintiff, cited in Defendant's memorandum, and strongly rebuts any inference that Plaintiff was not selected for the position because of his age. *See* Dkt. 19 at 26–27.

### C.  Plaintiff's Reprisal Claim Merits Dismissal.

Like his other two claims, Plaintiff's reprisal claim offers no factual allegations to support causation. In his opposition, Plaintiff argues there was a causal connection between his non-selection and prior EEO complaints because of his conclusory allegation that "all of the panelists decided not to interview Plaintiff based on . . . their knowledge of his prior protected activity." Dkt. 23 at 26. But does not more than restate the causation element of a retaliation claim, which is not sufficient to overcome a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55 (2007) ("[A] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  (second alternation in original) (citation omitted)).

Once again, Plaintiff does not rebut any of Defendant's arguments and pleads around key, known facts. For example, Plaintiff does not allege when his prior EEO activity took place, or when or how the selection panel allegedly learned of it (besides speculating that the selection panel

researched him on the internet at some unknown point and discovered his court cases).  These omissions render his reprisal claim wholly implausible.

### D.  Plaintiff Should Not Be Permitted to Amend His Complaint or Take Discovery Before a Ruling on Defendant's Motion to Dismiss.

Plaintiff offers several other arguments for why the Court should delay dismissal of his claims.  All are baseless.  First, Plaintiff suggests that it would be premature to dismiss Plaintiff's claims before Defendant answers his complaint.  *See* Dkt. 23 at 32.  The Federal Rules of Civil Procedure, however, expressly stay a defendant's obligation to answer a complaint upon the filing of a motion to dismiss.  Under Rule 12(a)(4), a party may file a motion to dismiss in lieu of an answer and need not answer the complaint until *after* the court rules on its motion.  *See Kimbler v. Spear*, 2017 WL 1337276, at *2 (W.D. Va. Apr. 11, 2017) ("If a defendant timely files a motion under Rule 12, th[e] [answer] deadline is tolled pending the court's disposition of the motion.").  And of course, a defendant ultimately need not file an answer if the Court *grants* the motion to dismiss.  *See* Fed. R. Civ. P. 12(a)(4)(A).

Second, Plaintiff argues that he needs to take further discovery on these three claims to be able to oppose Defendant's motion.  *See* Dkt. 23 at 25–26.  But, as explained above, this formulation completely misstates the governing standard, and the items Plaintiff claims require discovery are already known to him and documented in the administrative record.  Accordingly, Plaintiff's lack of discovery during these judicial proceedings is no barrier to the Court's ruling, especially given his access to a fulsome investigation (including document collection and sworn testimony) during administrative proceedings.

Finally, Plaintiff makes a cursory request for an opportunity to amend his complaint "[t]o any extent the court believes that Plaintiff has not included sufficient information to show this his claims were plausible and probable."  Dkt. 23 at 32.  But granting Plaintiff leave to amend would

be futile, because he does not explain how amending his complaint would allow him to overcome Defendant's arguments and state a plausible claim of discrimination or retaliation. *See Jennings v. RoundPoint Mortg. Servicing Corp.*, 2018 WL 1065107, at *1 (E.D. Va. Feb. 27, 2018) ("[A]n amendment is "futile if it is apparent that the proposed amendments could not withstand a motion to dismiss." (quoting *Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 125, 127 (E.D. Va. 2017))). As discussed above, the facts Plaintiff suggests he needs discovery on to amend his complaint are already known to the parties. Moreover, Plaintiff already had one opportunity to amend his complaint. It is unclear what, if any, additional facts he seeks to add that would make his claims plausible; what is clear is that Plaintiff has not identified any. As such, Plaintiff does not make any showing that his planned amendment could sustain a plausible Title VII or ADEA claim. Thus, Plaintiff's claims for sex discrimination, age discrimination, and reprisal should be dismissed without leave to amend and with prejudice.

## II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE IS NO EVIDENCE OF DISCRIMINATION OR REPRISAL.

Even if Plaintiff's complaint stated a plausible claim of discrimination or retaliation, Defendant's opening memorandum also provided a detailed analysis of the merits of all of Plaintiff's claims, explaining—through citation of well-settled decisional authority and the extensive evidentiary materials collected during the agency's administrative investigation—how all of his claims fail. Plaintiff's opposition memorandum barely addresses these arguments, relying almost exclusively on bald legal statements and conclusory arguments devoid of any real analysis. Crucially, Plaintiff does not establish any genuine dispute of material fact. Indeed, his only "evidence" of discrimination is a self-serving affidavit that directly contradicts his prior sworn testimony in an attempt to save his case—which is of no probative value of all and should be

stricken from the record (or at least ignored by this Court in adjudicating this motion) under well-settled Fourth Circuit summary judgment authority.  As such, this Court should enter summary judgment on Plaintiff's remaining claims in Defendant's favor.

### A. Plaintiff Has Not Demonstrated the Existence of Any *Genuine* Issue of Material Fact.

#### i. Plaintiff Has Not Controverted Defendant's Statement of Undisputed Material Facts and Those Facts Should Be Deemed Admitted.

A party opposing a motion for summary judgment must respond to the statement of undisputed material facts in one of two ways.  First, a party may respond by "citing to particular parts of materials in the record" on which the party relies to establish a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A).[2]   Second, a party may respond by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  Pursuant to both Fed. R. Civ. P. 56(e) and Local Civil Rule 56(B), the court may consider the moving party's facts undisputed if the party opposing the motion fails to properly address the moving party's listing of undisputed material facts.   Such is the case here.

Plaintiff's opposition includes a section in which he purports to dispute Defendant's statement of undisputed material facts.  Dkt. 23 at 3–22.  However, Plaintiff does not cite to any cognizable evidence, or parts of the record, to support his position that a genuine dispute exists.[3] *Id.*  In some instances, Plaintiff "disputes" evidence in the record by pointing to his allegations in

---

[2] Local Civil Rule 56(B) also provides that a party opposing a motion for summary judgment must cite to "the parts of the record relied on to support the facts alleged to be in dispute."

[3] Plaintiff has included an affidavit in support of his opposition to the motion for summary judgment. Dkt. 23-1.  However, Plaintiff's affidavit does not address, much less refute, any of the undisputed material facts identified by Defendant.  And for the reasons detailed below, this Court should not consider Plaintiff's affidavit in considering Defendant's motion.

his complaint, *see id.* at 5, referring to his own memory, *see id.* at 14 ("<u>DISPUTED.</u>  Plaintiff

recalls . . . ."); *id.* at 22 ("<u>DISPUTED.</u>  Plaintiff has no memory of this occurring."), or simply

stating his disagreement without any citation to supporting evidence, *see id.* at 8 ("<u>DISPUTED.</u>

Plaintiff maintains that his age, race, sex, disability, religion, or EEO activity were both known

and discussed by the panelists.").[4]  But as this Court is well aware, one cannot create a genuine

issue of fact through one's *allegations.  See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986);

*see also Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

   Plaintiff otherwise attempts to controvert Defendant's statement of undisputed material

facts by asserting a series of objections and claiming—again, in conclusory fashion—that the

evidence on which Defendant relies does not establish the asserted facts.  For example, in one

instance, Plaintiff claims that "[n]o evidence is provided to substantiate these facts"—despite

Defendant's clear citation to record evidence in the same paragraph.  *Id.* at 8.  More egregiously,

Plaintiff "disputes" certain of Defendant's facts by characterizing them as "subjective guesses and

not true facts," *see id.* at 15, and objects to the selection panel member's sworn testimony as

"hearsay after the fact denials that are disingenuous."[5]  *Id.* at 16.  Likewise, Plaintiff discounts the

testimony of the selection panel in describing how they rated Plaintiff versus the selectee and

assigned scores to applicants, by reflexively claiming—without any rationale—that it does not

count as evidence.  *Compare id.* at 12 ("<u>DISPUTED.</u>  There is no evidence anywhere in the cited

exhibits that substantiates that Plaintiff was rated as "5" by anyone.") *with* Dkt. 19-2 at 43 ("All

four panel members scored Mr. Laber's resume as 5, which meant he ended up with an overall 5

---

[4] In disputing Paragraph 10 of Defendant's Statement of Undisputed Material Facts, Plaintiff refers to having a disability.  *See* Dkt. 23 at 8.  But Plaintiff does not bring a claim of disability discrimination, or allege what, if any, disability he may have in his complaint.

[5] Plaintiff repeatedly refers to the affidavits of the selection panel members as "hearsay," *see* Dkt. 23 at 31, 33, but fails to explain why his own affidavits escape such a condemnation.

rating."). But Plaintiff's mere subjective disagreement with a fact does not mean that the fact is genuinely disputed. These objections and challenges to Defendant's undisputed facts are specious and without merit and should be rejected.

The one instance where Plaintiff does engage with Defendant's undisputed facts through record evidence concerns the selection panel's process in evaluating and scoring applicant's resumes in order to decide who to interview. *See* Dkt. 23 at 9–12. Admittedly, there was a minor initial discrepancy in the panelists' memories as to whether they used a 1-9 scale or a 1-10 scale to rate applicants. *See* Dkt. 19-3 at 16, 33 (describing using a 1–10 to rate applicants). However, in supplemental declarations, the panel members reviewed the NGA's standard rating scale for evaluating selection criteria and agreed that the standard 1-9 scale was used. *See id.* at 28 ("The panel used a 1-9 scale."); *id.* at 43 ("I used the 1-9 scale."); *id.* at 52 ("Yes, the standard 1–9 rating scale was used by the panel to evaluate the applicants."). Regardless, the panel agrees that it used a common rating system, informed by the selection criteria in the vacancy announcement for the position, and no evidence exists to suggest otherwise. *See* Dkt. 19-2 at 20–22; Dkt. 19-3 at 26–28, 42–43, 46–47, 52, 55. As such, even where Plaintiff did cite to evidence in the record, he did not identify a genuine issue of material fact to overcome summary judgment.

Finally, as discussed below, Plaintiff's attempt to dispute facts by citing to his own affidavit is improper and should be disregarded pursuant to the sham affidavit doctrine.

### ii. Plaintiff's Sham Affidavit Should be Disregarded.

Plaintiff cannot create a genuine dispute of material fact by submitting a new affidavit that directly contradicts his own prior sworn testimony; as the Fourth Circuit has held, "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*,

591 F.3d 313, 325 n.7 (4th Cir. 2010).  Accordingly, "[a]t the summary judgment stage, if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit pursuant to the sham-affidavit rule." *Kinser v. United Methodist Agency*, 613 F. App'x 209, 210 (4th Cir. 2015); *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement.").  While it is Plaintiff's prior affidavit, not his deposition testimony, that is at issue here, that is a distinction without a difference (as both constitute sworn testimony).  Accordingly, federal courts have applied the sham affidavit doctrine to this exact situation.  *See Tatum v. Southern Co. Servs., Inc.*, 392 F. Supp. 3d 689, 698 (E.D. Tex. 2018) (striking plaintiff's affidavit at summary judgment as it conflicted with prior affidavit); *Mallory v. Hetzel*, 2016 WL 5030469, at \*9 (M.D. Ala. Aug. 26, 2016) (striking plaintiff's third affidavit as a sham at summary judgment where it directly contradicted his prior two affidavits).  And the same principles are at stake here: Plaintiff is attempting to manufacture a fact at the summary judgment stage, and there is "a bona fide inconsistency" between the affidavit and his prior sworn testimony.  *See Kinser*, 613 F. App'x at 210.

In his sworn affidavit during the administrative proceedings, Plaintiff made the following statements in response to questions from the EEO investigator:

Q.  How did agency officials discriminate against you in the selection process? What did they do to discriminate against you?

A.  . . . Where is the smoking gun?  Was it one person?  More than one person? Ill feelings?  My religion, age, or sex?  You'll have to talk to them because I can't cite overt comments made to me.  They have not notified me that I am too old, or too Jewish, to my face.  At this time I don't have any witnesses who will say that they made comments about my age, religion, or sex.

. . .

Q.  Have agency officials explained why they treated those individuals differently based on AGE with respect to the selection action?

A.    No, they don't talk to me about their selections. . . . I did not speak with any agency officials about this selection action; I knew how it turned out so I didn't talk to anyone.  It was not appropriate for me, for my religion, or for my person to go and question them about how the selection turned out.

. . .

Q:    How can you prove that you were discriminated against based on your AGE?  What evidence can you point to that proves age discrimination?

A.    I don't have an email from anyone who said that I didn't get the interview because I was too old.  I don't recall any comments that anybody made to me personally that said I was too old for the position.

. . .

Q:    Have agency officials explained why they treated those individuals differently based on RELIGION?

A.    I did not have any conversations with agency officials about how my religion played into the selection action because I never discussed the selection with anyone of them.

Dkt. 19-2 at 1-2 at 13–16.

In these statements made in 2014, Plaintiff clearly and unequivocally testified under the penalty of perjury that he did not speak to any of the members of the selection panel, and no agency official told him that he was not interviewed because he was either too old or too Jewish.  Yet, in his sworn affidavit attached to his opposition (dated May 31, 2022), Plaintiff testifies that he had an October 2013 conversation with Ms. Verdon to discuss why he was not chosen for an interview, and in this conversation she told him that "the panel had 'no intention of hiring [Plaintiff]'" because "the panel believed that it was important that employees have close rapport with their supervisors and [Plaintiff's] age, beard and yarmulke were barriers to achieving successful mentoring."  Dkt. 23-1 at 5.  Rather than explaining this inconsistency, Plaintiff avers that he "can't explain how or why [he] didn't report" this conversation earlier.  *Id.* at 6.  Plaintiff's May 31, 2022 affidavit is nothing more than an eleventh-hour attempt to save his claims after Defendant explained their weaknesses at length.

Given this direct and unexplained inconsistency in Plaintiff's testimony, "the only issue of fact is to determine which of the two conflicting versions of [Plaintiff's] testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984).  As such, this Court should strike Plaintiff's sham affidavit and disregard it in considering Defendant's motion.  *See Kaiser*, 613 F. App'x at 211 (upholding district court's decision to strike three sham affidavits and enter summary judgment for defendant in age discrimination case).

### B.  Plaintiff's Claims of Discrimination and Reprisal Are Without Merit.

Having established the undisputed nature of the record here, there can be little doubt that Defendant is entitled to the entry of summary judgment on each of Plaintiff's claims of discrimination and retaliation.  Plaintiff has no evidence of any discrimination or reprisal, and Defendant's legitimate reason for not selecting Plaintiff for the position stands unrebutted.

### i.    Plaintiff Has No Evidence of Discrimination or Reprisal.

In his opposition, Plaintiff argues that he has direct evidence of age and religious discrimination.  *See* Dkt. 23 at 28.  But all Plaintiff proffers in support is his affidavit, which contradicts his prior sworn testimony and details a conveniently remembered conversation with Ms. Verdon.  Dkt. 23 at 28.  As discussed above, Plaintiff's affidavit is a sham and holds no water. As such, Plaintiff cannot support *any* of his claims by way of direct evidence[6] and must proceed with circumstantial evidence.

But Plaintiff's so-called circumstantial evidence of discrimination (that a younger, non-Jewish woman was selected for the position) ignores the wider context of the selection process. As discussed in Defendant's memorandum, the factual circumstances of Plaintiff's non-selection

---

[6] Plaintiff's section headers state that there is "direct and circumstantial evidence" of retaliation and age discrimination as well, *see* Dkt. 23 at 30–31, but he does not explain what direct evidence exists of either anywhere in the body of his opposition.

are that other members of Plaintiff's protected class (male, Jewish, and/or over 40) were either: (1) amongst the decision-makers in the selection process; (2) amongst the selected applicants for interviews; or (3) promoted to other supervisory roles at NGA. *See* Dkt. 19 at 25–28. These circumstances dispel any inference that Plaintiff was not selected due to discrimination.

Likewise, the facts surrounding Plaintiff's retaliation claim dispel any inference of causation: the gap between Plaintiff's prior EEO activity and his rejection for the instant position spans seven years. In his opposition, Plaintiff argues that "there was no time gap between Hinchberger and the panelists learning of his prior [sic] making plausible that the two were linked." *Id.* at 30–31. But Plaintiff cannot point to any evidence that the panelists knew of his prior EEO activity (all testified to the opposite), let alone that they learned of it around the time of his application. Without such evidence, his reprisal claim must fail.

### ii. Defendant Had a Legitimate, Non-Pretextual Reason for Not Selecting Plaintiff for an Interview.

Without direct evidence of discrimination or reprisal, Plaintiff must overcome the *McDonnel Douglas* burden shifting framework. This he cannot do. Defendant had a legitimate and non-pretextual reason for not selecting Plaintiff for an interview and for promoting Ms. Eichelberger to the position instead. Simply put, the selection panel believed that Plaintiff was not as qualified for the position as the other applicants, including Ms. Eichelberger. No evidence proves this reason false.

In response, Plaintiff argues that "the alleged basis of no supervisory experience is clearly a pretext because a younger female with no supervisory experience was granted an interview." Dkt. 23 at 30; *see also id.* at 33 ("Plaintiff maintains that at least one applicant with no supervisory experience was granted an interview."). It is unclear which applicant, if any, Plaintiff is referring to, as he neither names the applicant nor cites to any supporting material. If Plaintiff refers to the

selectee, Ms. Eichelberger, this assertion is flatly contradicted by the record. *See* Dkt. 19-2 at 43; Dkt. 19-3 at 61–63. Plaintiff also argues "Defendant only compared him to the selectee and not the group from which he was rejected." Dkt. 23 at 30. But Defendant repeatedly compared Plaintiff to the larger applicant pool and the group of interviewees. *See* Dkt. 19 at 26–28. In fact, doing so proves Defendant's case: another man was interviewed for the position, almost all the interviewees were over 40, and the panel was unaware of the religious affiliations of the other applications. *See* Dkt. 19-2 at 44, 53; Dkt. 19-3 at 7–8, 17–18; Dkt. 19-5 at 63. In any event, Plaintiff's own belief that his qualifications made him superior to the other candidates does not hold any weight. *See Phillips v. Esper*, 2020 WL 3579796, at *15 (E.D. Va. June 30, 2020) ("Plaintiff's argument plainly relies on her self-assessment of her superior experience . . . as the basis for her superior qualifications, and this argument plainly fails."). Indeed, the evidence even suggests that Plaintiff's referral for the position was a mistake, as his "resume did not evidence the education requirement for business related courses." *See* Dkt. 91-5 at 26.

Plaintiff's final argument is equally specious. He claims that "Plaintiff's scores were purposefully destroyed and do not exist" and "[a]ll testimony regarding his scores are simply false after the fact hearsay." Dkt. 23 at 33. As a threshold matter, Plaintiff's claims that Defendant "destroyed all relevant records of the panels' proceedings" is belied by the extensive existing investigative record and speaks volumes about the legitimacy of Plaintiff's arguments here. Moreover, Plaintiff has no evidence that documents from the selection process were intentionally destroyed. It is true that the selection panel members failed to preserve their individual scores of the applicant's resumes, but the panel's scoring of the interviewed applicants was retained. *See* Dkt. 19-3 at 59; Dkt. 19-5 at 26 ("While NGA failed to comply with its own instruction regarding the retention of individual panel member notes form the initial ratings of applicants' resumes, each

panel member's score were recorded on a collective score sheet.").  And nothing in the record controverts the panel member's collective testimony that Plaintiff's own resume score (of 5) was below the cut-off for an interview (7).

In sum, while Plaintiff subjectively disagrees with the existing evidence, he has provided no evidence to this Court that creates a genuine issue of material fact that NGA's legitimate, non-discriminatory reasons for his non-selection were mere pretext for unlawful animus directed to his age, gender, religion, or prior protected activity.  Accordingly, this Court should grant summary judgment on all of Plaintiff's claims.

### III.    PLAINTIFF'S REQUEST THAT THE COURT DEFER RULING ON THIS MOTION PURSUANT TO FED. R. CIV. P. 56(D) SHOULD BE DENIED.

In opposing Defendant's motion, Plaintiff moves under Federal Rule of Civil Procedure 56(d) for "the opportunity to conduct discovery for information essential to oppose Defendants motions to dismiss and summary judgment."  Dkt. 23 at 2.[7]  Rule 56(d) provides that if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may defer or deny the motion, allow additional time, or issue any other appropriate order.  Fed. R. Civ. P. 56(d).  Plaintiff has not come anywhere close to demonstrating his entitlement to such relief.

As an initial matter, Plaintiff was afforded a robust report of investigation (spanning over 550 pages).  In the context of claims for federal sector employment discrimination, the Fourth Circuit has recognized that the availability of a report of investigation can obviate the need for Federal Rule 56(d) relief.  *See, e.g.*, *Amirmokri v. Abraham,* 266 F. App'x 274, 282 (4th Cir. 2008)

---

[7] Rule 56(d) has no application to Defendant's Rule 12(b)(6) motion to dismiss for failure to state a plausible claim for relief.  As such, and as discussed above, *see supra* Section I.D, there is no basis for deferring a ruling on Defendant's motion to dismiss.

(noting that plaintiff's claims were "thoroughly investigated at the administrative level"); *Volochayev v. Sebelius*, 513 F. App'x 348, 352 (4th Cir. 2013) (affirming the district court's grant of summary judgment based on the record developed during the administrative phase); *Boyd v. Guiterrez*, 214 F. App'x 322, 323 (4th Cir. 2007) ("Given the extent to which numerous documents and affidavits submitted during his EEOC proceedings were already available to Boyd, we find no abuse of the district court's discretion in denying Boyd's Rule 56([d]) motion.").

Moreover, in the Fourth Circuit is it well-settled that "a court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014). Here, Plaintiff has not identified any discovery that would create a genuine dispute of material fact. Instead, Plaintiff merely concludes over and over that his claims "will be supported by further discovery." *See* Dkt. 23 at 2, 31, 34. The Fourth Circuit has emphasized that a party may not—as Plaintiff does here—"simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56([d]) to set out reasons for the need for discovery." *Evans v. Techs. Apps. & Ser. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Critically, an application for further discovery pursuant to Federal Rule 56(d) before adjudication of summary judgment is "insufficient" if it "conclusorily states that discovery is required." *Radi v. Sebelius*, 434 F. App'x 177, 178 (4th Cir. 2011); *see also Morrow v. Farrell*, 50 Fed. Appx. 179, 179 (4th Cir. 2002) (affirming a district court's denial of a Rule 56 motion for additional discovery where the movant "failed to identify any specific facts that he was yet to discover" and instead, sought to use "generalized statements" to embark on a discovery "fishing expedition"). Indeed, Plaintiff's affidavit contains only one paragraph regarding his need for discovery:

> In order to absolutely identify that the meeting took place and the content of the meeting, I would require the opportunity for additional discovery of emails both before and after the meeting when she more likely that not reported back to Mr. Hinchberger wherein they discussed the meeting prior to it and the results of our meeting.  More likely than not, Ms. Verdon advised Mr. Hinchberger via that she didn't give me any details regarding my scores, ratings, or cut-off.  Depositions may also be required.

Dkt. 23-1 at 4.  But this is exact the type of speculative enterprise that the Fourth Circuit has prohibited for purposes of Rule 56(d).[8]

Plaintiff fails to present a more compelling case for discovery in his opposition.  Plaintiff does identify a few categories of information he allegedly needs, but he ignores that this information was already produced during the investigative record, including: (1) records and application packages for the job opening; (2) testimony from the hiring officials and HR personnel involved; and (3) demographic information regarding the applicants.  Dkt. 23 at 3.

Other discovery Plaintiff identifies would not produce any material disputed fact.  For example, Plaintiff argues that he was trained as an EEO counselor a few weeks before he was not selection for the position.  Dkt. 23 at 4.  But he does not explain how this fact, if substantiated, would support his reprisal claim—nor why he would need discovery on this point (or what discovery he would pursue).  All the selection panel members were unaware of Plaintiff's EEO activity, and he has no evidence they were aware of his training.  *See* Dkt. 19-2 at 45–46; Dkt. 19-3 at 3, 14, 32.  Plaintiff alleges they found out about his EEO activity from researching him on the

---

[8] And of course, the only disputed fact at issue here is which of Plaintiff's two contradicting affidavits are correct, and—as Defendant discussed above, this is not a disputed fact that can overcome summary judgment.  *See Kinser*, 613 F. App'x at 210.  In any event, Plaintiff's prior sworn statements, Ms. Verdon's testimony, and the existing emails between Mr. Hinchberger and Plaintiff all clearly indicate that no such meeting took place.  Dkt. 19-3 at 15–16, 66–67; Dkt. 19-2 at 1-2 at 13–16.  And Plaintiff does not identify which individuals would need to be deposed during discovery on this topic.

internet, *see* Dkt. 11 at ¶ 68, but does not demonstrate that his EEO training was publicly available on the internet such that the selection panel would have located it in these alleged internet searches. Without evidence of the panel's knowledge of his protected activity, Plaintiff cannot prevail on his reprisal claim. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.").

Next, Plaintiff claims he needs discovery to obtain evidence of "how his religion demands moral behavior which was incompatible with a supervisory role at NGA." *Id.* at 6.  But there is no evidence such behavior was considered by anyone on the selection panel, or even known to them.  Finally, Plaintiff "recalls that when he joined NGA, he filled out a form that requested his religion and therefore this is ripe for discovery if allowed." *Id.* at 14.  But Defendant already admits that the entire selection panel was aware Plaintiff was Jewish at the time of his selection. Dkt. 19 at 7.  Thus, there is no disputed fact at stake.

Thus, as Plaintiff does not identify any discovery outside of the existing investigatory record that would produce a genuine, disputed material fact, the Court should deny Plaintiff's Rule 56(d) motion.

## CONCLUSION

For the foregoing reasons, and those detailed in Defendant's memorandum and supporting exhibits, Plaintiff's claims for sex and age discrimination and retaliation should be dismissed for failure to state a claim upon which relief may be granted, or alternatively, this Court should grant summary judgment on all of Plaintiff's claims.

Dated: June 13, 2022                         Respectfully submitted,

                                               JESSICA D. ABER
                                               UNITED STATES ATTORNEY

*By*:                 /s/
                                               CAROLYN M. WESNOUSKY
                                               Assistant United States Attorney
                                             Office of the United States Attorney
                                             2100 Jamieson Avenue
                                             Alexandria, Virginia 22314
                                             Telephone: (703) 299-3996
                                             Fax:       (703) 299-3983
                                             Email: Carolyn.Wesnousky@usdoj.gov

                                             *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 13, 2022, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, and caused a copy to be served by first-class mail on the

following *pro se* plaintiff:

> Stan Laber
> 321 S. Main Ave.
> Albany, NY 12209
> 703-981-2793
> Email: 6133164129463c@gmail.com


＿＿＿＿＿＿/s/＿＿＿＿＿＿＿＿＿＿
CAROLYN M. WESNOUSKY
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3996
Fax:          (703) 299-3983
Email: Carolyn.Wesnousky@usdoj.gov

*Counsel for Defendant*