IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

STAN LABER,
                    *Plaintiff*,

            v.

                                                    Case No.: 1:22-cv-145 (MSN/IDD)

LLOYD J. AUSTIN, III, SECRETARY,
UNITED STATES DEPARTMENT OF
DEFENSE,
                    *Defendant*.

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendant's Motion to Dismiss and for Summary Judgment with Roseboro Notice (Dkt. No. 18). Upon consideration of the pleadings and for the reasons set forth below, the Court **GRANTS** the Motion to Dismiss the allegations of age and sex discrimination and retaliation and **GRANTS** the Motion for Summary Judgment on the sole remaining claim alleging religious discrimination.

## I.    PROCEDURAL HISTORY

Stan Laber, proceeding *pro se*, filed a complaint against Lloyd J. Austin, in his official capacity as the Secretary of the United States Department of Defense ("Defendant"), in the United States District Court for the Eastern District of Missouri on November 8, 2021. Compl. (Dkt. No. 1). On January 10, 2022, Defendant moved to transfer the case to this District. (Dkt. Nos. 4, 5). Laber did not file an opposition to that motion, and the court entered an order on January 26, 2022, transferring the case to this District. *See* Order (Dkt. No. 9). On the same day, Laber filed an opposition to transfer and request for reconsideration of the order, which the court denied the following day. (Dkt. Nos. 10, 12).

1

Also on January 26, 2022, Laber filed an amended complaint, in which he alleges that his employer discriminated against him on the basis of sex, age, and religion—in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act—when it failed to select him for a vacant position, and further alleges that his employer retaliated against him in two separate instances. *See* Am. Compl. (Dkt. No. 11). On March 28, 2022, Defendant moved to dismiss Laber's claims of sex discrimination, age discrimination, and retaliation (but not religious discrimination), or, in the alternative, for entry of summary judgment in favor of Defendant as to all claims. Mot. to Dismiss and for Summ. J. ("Mot." or "Motion") (Dkt. No. 18); Mem. in Supp. of Def. Mot. to Dismiss and for Summ. J. ("Def. Mem.") (Dkt. No. 19). Laber filed a response on June 2, 2022, ("Opp." or "Opposition") (Dkt. No. 23), and Defendant filed a reply on June 13, 2022, ("Reply") (Dkt. No. 24). The Court is satisfied that oral argument would not aid in the decisional process. Accordingly, this matter is ripe for resolution.

## II.    BACKGROUND

### A.    Plaintiff's Factual Allegations

Laber is a Jewish male who began his employment with the National Geospatial Intelligence Agency ("NGA") in October 2006 as a Defense Acquisition Workforce Improvement Act (DAWIA) Contract Specialist.   Am. Compl. ¶¶ 2, 31, 32. In 2013, Laber applied for a vacantDAWIA Supervisory Contract Specialist position in a category of federal contracting personnel known as "GS-1102". *Id.* ¶ 3. At the time he applied for the position, Laber was 68 years old. *Id.* ¶ 4. Laber was not selected for an interview nor was he ultimately selected for the position. *Id.* ¶¶ 4, 5. Laber alleges that Defendant used a cutoff score to determine which applicants would be interviewed. *Id.* ¶ 36. Laber provides no factual allegations as to his cutoff score but alleges that Defendant "purposefully destroyed Plaintiff's scoresheets and all records related to a 'cutoff' score used to determine which applicants would be interviewed." *Id.*

Laber claims he had three years of NGA supervisory experience and was "a supervisory or lead for nine years" before the NGA experience. *Id.* ¶ 42. He alleges to have had seven years of experience with the NGA, twenty-five years with the Department of Defense, and seventeen additional years in related Department of Defense acquisition positions. *Id.* ¶¶ 45–46. Laber claims that "[n]o performance evaluation issued at any time in Plaintiff's employment within the Defense Department or a Defense agency was below average, minimal, or resulted in an adverse action or loss of promotion, step increases, training, awards, or benefits." *Id.* ¶ 85.

Laber alleges the following with respect to the individuals selected for the position at issue. Of the nine women who applied for the position, six were selected to interview, and two of those women were ultimately selected. *Id.* 38. Laber alleges that Ms. Eichelberger, the first selectee, "had no 'senior' supervisory [experience] and supervised six persons." *Id.* ¶ 41. Ms. Eichelberger "was the only applicant without a college degree" and her resume included "no employment prior to 2012." *Id.* ¶¶ 43, 47. Ms. Ladson, the second selectee, was rated a "7" and a "9" by two of the panelists and she "met 'the minimum requirements.'" *Id.* ¶ 49. Laber alleges that Ms. Ladson "had less supervisory experience," "less 1102 experience," "less education, fewer DAWIA certifications, and fewer JDA (Joint Duty Assignments)" than Laber. *Id.* ¶¶ 50–51. Quoting from a portion of Ms. Ladson's cover letter, Laber alleges that she had "little or no skill" in written communication even though writing experience was a requirement of the position. *Id.* ¶ 52.

Laber also alleges that Cathy Smith, who was granted an interview for the vacancy, was rated by one of the panelists as an "8" even though her resume reflected no supervisory contracts experience. *Id.* ¶ 53. Laber alleges he was "significantly higher qualified" than Ms. Smith who had "4 months of experience at NGA"; "no supervisory experience"; 1102 contract experience between

2004 and 2009; no training, awards, and certifications other than one DAWIA certificate; and no JDA assignments. *Id.* ¶ 54.

Laber claims that his non-selection "was because of . . . or in retaliation for his sex, religion, or protected activity" based on prior EEO filings he has made. *Id.* ¶ 60. Specifically, Laber alleges that "[e]very panelist knew" that he was male, Jewish, and had participated in prior protected activity at the time of his rejection. *Id.* ¶¶ 31, 32, 34; *see also id.* ¶¶ 27, 30. Laber alleges that each panelist had such knowledge "by word of mouth, conversations with Plaintiff, or internet searches." *Id.* ¶ 59; *see also id.* ¶¶ 64–70 (discussing how Laber's history of EEO filings "is well documented on the internet" and that "hiring officials for contract specialist vacancies are the most frequent users of internet searches regarding applicants").[1] Laber alleges that "anyone" who read about his prior EEO filings "advised others," including colleagues and supervisors, of such activity. *Id.* ¶¶ 76–78. In addition, Laber alleges his age was "known to all selecting officials . . . and anyone who reviewed his application because his application always included the dates he graduated from high school, colleges, and universities." *Id.* ¶ 74. His "sex was evident from his name and the use of male pronouns in his evaluations and award citations." *Id.* ¶ 75. His religion was alleged to have been well-known because he "wore distinctly Jewish garb such as a skullcap" and "his beard, which is full and untrimmed, [is] a hallmark of Plaintiff's Jewish religious observance." *Id.* ¶ 80. Laber alleges that in October 2013 one of the selection panelists for the position, Ms. Verndon, "advised Plaintiff that the reason he was not interviewed was because the

---

[1]     Stan Laber has been the plaintiff in several cases alleging discrimination in his non-selection for various positions with his employers. *Laber v. Austin*, No. 18-1351-JWB, 2022 WL 17361437 (D. Kan. Dec. 1, 2022); *Laber v. United States Dep't of Def.*, No. 3:21cv502-HEH, 2021 WL 5893293 (E.D. Va. Dec. 13, 2021), *aff'd*, No. 22-1060, 2022 WL 2355509 (4th Cir. June 30, 2022); *Laber v. Geren*, 316 F. App'x 266 (4th Cir. 2009); *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006); *Laber v. Harvey*, No. CIV.A.05-0803, 2005 WL 3008510 (E.D. Va. Nov. 7, 2005), *aff'd*, 204 F. App'x 332 (4th Cir. 2006); *Laber v. Rumsfeld*, No. Civ.A 03-170-A, 2003 WL 23641779 (E.D. Va. Oct. 8, 2003), *aff'd*, 96 F. App'x 925 (4th Cir. 2004).

panel decided that Plaintiff would never be selected because of his religiously motivated dress and grooming, specifically his skullcap and untrimmed beard." *Id.* ¶ 73.

According to Laber, the "Defendant had a history of hiring or selecting females over males." *Id.* ¶ 25; *see also id.* ¶ 111. Although Laber claims that "Defendant has failed to preserve the demographics information of applicants," he also alleges that no other applicant for the vacancy was Jewish (*id.* ¶ 32), and that he was the oldest of the applicants, "significantly older than the selectee" as well as all other applicants referred or selected to interview (*id.* ¶ 84). Laber further alleges that he "was the only Jewish applicant with prior complaints based on his religion." *Id.* ¶ 91. With respect to accolades, Laber alleges that he was "the only applicant with a graduate degree and coursework toward his PhD" (*id.* ¶ 48; *see also id.* ¶ 92); that he "completed the highest number of training courses documented in any candidate's application" (*id.* ¶ 93); that he had the highest number of DAWIA certifications held by an applicant (*id.* ¶ 96; *see also id.* ¶¶ 97–101), and that he received performance awards nearly every year with NGA (*id.* ¶ 102).

On November 8, 2013, Laber filed an informal complaint with NGA alleging discrimination in his non-selection for the position and was notified of his right to file a formal complaint, which he filed on March 10, 2014. *Id.* ¶ 6. Defendant issued a Final Agency Decision ("FAD") on November 21, 2014 and a second FAD on September 11, 2016. *Id.* ¶¶ 7, 8. The Equal Employment Opportunity Commission's Office of Federal Operations ("EEOC OFO") reversed the second FAD on June 25, 2019. *Id.* ¶ 9. Defendant issued a third FAD on September 5, 2019. *Id.* ¶ 10. Laber appealed the third FAD to the EEOC OFO on October 4, 2019, and the EEOC OFO issued a final decision on August 16, 2021. *Id.* ¶¶ 11–12. Laber alleges he has exhausted his administrative appeals with this third FAD. *Id.* ¶ 12.

Laber alleges that "each selecting official, human resource specialist, EEO official, and NGA officials retaliated against" him after learning of his formal complaint regarding his non-selection "by failing to provide records and providing false or vague information in their declarations" in the subsequent investigation "to cover up [their] discriminatory acts." *Id.* ¶¶ 81, 83. Laber alleges that "NGA's investigation was purposefully deficient in order to prevent Plaintiff from pleading the facts of his case or meet his burden." *Id.* ¶ 20. He alleges that Defendant failed to retain or purposefully destroyed various underlying documents related to the hiring of the vacant position. *Id.* ¶¶ 35–36. Laber alleges that "his initial resume rating is not revealed on any record, nor is any applicant's initial resume rating revealed on any record." *Id.* ¶ 23; *see also id.* ¶ 26. Laber further alleges that "he was not evaluated using the same criteria as his comparators because no common criteria were applied; each panelist made a wholly subjective decision to interview or not interview, which was never recorded anywhere." *Id.* ¶ 24; *see also id.* ¶ 37.

Laber alleges that he retired in 2015 because he "was unable to achieve a promotion at NGA." *Id.* ¶ 116. Among other relief, Plaintiff seeks compensation for his lost wages and employment benefits. *See id.* at 16–17 (Request for Relief).

## B.    Statement of Undisputed Facts[2]

A party opposing summary judgment must respond to the statement of undisputed material facts either by (1) citing particular parts of materials in the record on which the party relies to establish that a fact is genuinely disputed, Fed. R. Civ. P. 56(c)(1)(A), or (2) "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that the [moving party]

---

[2]    This Court has considered evidence outside of the pleadings only for the purposes of evaluating the motion for summary judgment on the religious discrimination claim. In deciding Defendant's Motion to Dismiss on the sex discrimination, age discrimination, and retaliation claims, the Court has considered only the factual allegations as detailed in Laber's Amended Complaint and as recited in the section entitled "Plaintiff's Factual Allegations." *See supra* Section II.A.

cannot produce admissible evidence to support the fact," Fed. R. Civ. P. 56(c)(1)(B). If "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," a court may "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed— show that the movant is entitled to it." Fed. R. Civ. P. 56(e); *see also* Local R. 56(B) (a party responding to a statement of undisputed facts in moving party's brief must "cit[e] the parts of the record relied on to support the facts alleged to be in dispute" and the "Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

Pursuant to Local Rule 56(B), Defendant included forty-one paragraphs in its statement of undisputed facts. *See* Def.'s Stmt. of Facts ("SOF") (Dkt. No. 11) at 4–12. Laber purports to dispute or challenge twenty-eight of those paragraphs in his Opposition.  See Opp. at 3–23. However, Laber fails to adequately refute many of the constituent facts contained within those paragraphs. After a thorough examination of the record and as set forth below, the Court finds certain facts to be undisputed despite Laber's efforts to place them in dispute. *Cf. Apedjinou v. Inova Health Care Servs.*, No. 1:18-cv-00287, 2018 WL 11269174, at *1 (E.D. Va. Dec. 19, 2018) ("The nonmovant's failure to respond to a fact listed by the movant or to cite to admissible record evidence constitutes an admission that the fact is undisputed."); *Cincinnati Ins. Co. v. Am. Glass Indus.*, No. 1:07-cv-1133, 2008 WL 4642228, at *1 (E.D. Va. Oct. 15, 2008) ("[T]he Court assumes that facts alleged in the motion for summary judgment are admitted unless controverted

by the responding opposition brief.") (internal quotations omitted). The Court's review of the record reveals the following undisputed facts material to the religious discrimination claim:

Plaintiff started working at the NGA in October 2006 as a DAWIA contract specialist in Reston, Virginia. SOF ¶ 1. Plaintiff is Jewish and wears a skull cap in the office. *Id.* ¶ 2. On June 24, 2013, the NGA posted a job opening for a DAWIA supervisory contract specialist at a pay scale of Band 5 in Springfield, Virginia. *Id.* ¶ 5. Plaintiff applied for the position. *Id.* ¶ 6. The selection panel for this vacancy was comprised of four individuals: Daniel Hinchberger (male, aged 48), Richard Unis (male, aged 51), Tamara Verdon (female, aged 52), and Johnetta Williams (female, aged 54). *Id.* ¶ 8. Each member of the selection panel individually rated and ranked the resumes based on how well the applicant met the position's criteria, as outlined in the vacancy announcement. *Id.* ¶ 11. Mr. Hinchberger consolidated the panel's rankings and the panel met together to discuss their ratings, average out the scoring, and come up with a final ranking of the applicants. *Id.* ¶ 12. The panel then used a "logical cut point" in the scoring to determine who should be granted an interview, and the panel decided to interview all applicants who rated a "7" or above. *Id.* ¶ 13. Each member of the selection panel independently gave Laber a score of "5" based on his resume, and he, along with eight others, were not selected for an interview. *Id.* ¶ 14.

All four selection panel members knew Laber was Jewish at the time of his application. *Id.* ¶ 16. All four panel members swore under oath that Laber's religion did not factor into their decision not to interview or select Plaintiff for the vacancy. *Id.* ¶ 20. The panel recommend Karen Eichelberger for selection, and Danita Ladson as an alternate, and the approving official, Tonya Crawford, reviewed and signed-off on the panel's recommendation. *Id.* ¶¶ 22–23. Ms. Crawford stated in her declaration that she "looked at panel composition, how they rated resumes, how they selected interviewees, and how they rated the interviews. Then [she] made sure that the job was

given to the most qualified candidate." *Id.* ¶ 23. Ms. Crawford was aware of Laber's religion at the time of selection, but stated in her declaration that she did not consider Laber's religion as a factor in deciding to approve Ms. Eichelberger for the position. *Id.* ¶¶ 25–26. The NGA promoted Ms. Eichelberger to the position. *Id.* ¶ 27.

On October 15, 2013, Laber asked to be put in touch with an EEO counselor because he "believe[d] unfair discrimination may have occurred" when he was "not interviewed or selected" for the position. *Id.* ¶ 29. Laber filed an informal complaint on November 8, 2013. *Id.* ¶ 30. He then elected to pursue Alternative Dispute Resolution, which failed, and was issued a Notice of Right to file his formal complaint of discrimination on February 18, 2018. *Id.* On March 10, 2014, Laber filed his formal EEO Complaint, alleging that he was discriminated against on the basis of sex, religion, age, disability, and reprisal for prior EEO activity. *Id.* ¶ 31. Laber's complaint was investigated from July 3, 2014 through August 8, 2014. *Id.* ¶ 33.

In July 2014, Laber signed a declaration under the penalty of perjury in connection with his EEOC complaint ("July 2014 Declaration"). *Id.* ¶ 34; *see generally* Ex. 2 to Def. Mem. In his declaration, Plaintiff testified that no one made any overt comments to him to indicate he was denied the job because of discrimination:

> Where is the smoking gun? Was it one person? More than one person? Ill feelings? My religion, age, or sex? You'll have to talk to them because I can't cite overt comments made to me. They have not notified me that I am too old, or too Jewish, to my face. At this time I don't have any witnesses who will say that they made comments about my age, religion, or sex.

Ex. 2 to Def. Mem. at 7. Laber also stated:

- "I did not speak with any agency officials about this selection action; I knew how it turned out so I didn't talk to anyone." *Id.* at 9.

- "I did not have any conversations with agency officials about how my religion played into the selection action because I never discussed the selection with anyone of them." *Id.* at 10.

On November 21, 2014, the NGA issued a FAD finding that there was "no evidence of unlawful discrimination." SOF ¶ 37. Upon Laber's appeal, the EEOC OFO vacated the NGA decision, finding that the record was not yet sufficiently developed to determine if the NGA's reasons for not hiring Plaintiff were pretextual. *Id.* ¶ 37. Specifically, the EEOC held that the record needed to include the applications of the other candidates who were selected for an interview so it could determine whether they "also lacked supervisory experience in an operational contracting role." Ex. 31 to Def. Mem. at 5. The EEOC remanded the case and tasked the NGA with conducting a supplemental investigation. *Id.* at 5–6. On April 4, 2017, the NGA issued another FAD after supplementing the record with more application materials and demographic information for those who applied to the position. SOF ¶ 38. The issued a second FAD on September 11, 2017 to address its failure to use a letterhead on the earlier FAD. *Id.* ¶ 33. The NGA again concluded that there was no evidence of unlawful discrimination. *Id.* ¶ 38.

Upon Laber's appeal, the EEOC OFO reversed and remanded the FAD a second time. *Id.* ¶ 39. The EEOC OFO requested "an individualized assessment of the applicants and how they compare to [Plaintiff]," including the ranking criteria and worksheets used to score and rank applicants. Ex. 34 to Def. Mem. at 3–4. The EEOC ordered the NGA to perform another supplemental investigation to include "all documents used and created by panel members in determining those applicants selected for an interview" as well as "supplemental affidavits" regarding the scoring of those individuals offered an interview. *Id.* at 4.

On September 5, 2019, the NGA issued its fourth and final FAD, concluding there was no evidence of unlawful discrimination. *Id.* ¶ 40. On August 16, 2021, the EEOC affirmed the NGA's decision, finding that "the responsible Agency officials articulated legitimate, nondiscriminatory reasons for its actions." *Id.* ¶ 41; *see* Ex. 36 to Def. Mem. at 6.

### III.   LEGAL STANDARD

#### A.   RULE 12(B)(6)

This Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Nevertheless, a plaintiff must make more than bald accusations or mere speculation; "naked assertions devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" are insufficient under Rule 12(b)(6). *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A plaintiff's complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action. *Twombly*, 550 U.S. at 556 (internal quotation marks omitted). When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). A complaint by a *pro se* plaintiff should be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). But the Court's "task is not to discern the unexpressed intent of the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

#### B.   RULE 56

Summary judgment is proper where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Tech. Apps. & Servs. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996). The movant bears the burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Carrett*, 477 U.S. 317, 327 (1986). If the movant has met that burden, the non-moving party must demonstrate that such an issue of fact exists. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A party opposing . . . summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The court examines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–53. In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

"[T]he party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214 (4th Cir. 2002) (cleaned up). To adequately raise the issue that discovery is needed, the non-movant must file an affidavit or declaration pursuant to Rule 56(d), formerly Rule 56(f), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d). A court may, upon such an affidavit, defer considering the motion for summary judgment, deny the motion, or allow additional time for the nonmovant to obtain affidavits or declarations or to take discovery. *Id.* A court may also deny a request to conduct further discovery under Rule 56(d), particularly where plaintiff's allegations were

thoroughly investigated at the administrative level, producing a robust record by which this Court can assess plaintiff's claims. *See Amirmokri v. Abraham,* 266 F. App'x 274, 282 (4th Cir. 2008); *Volochayev v. Sebelius*, 513 F. App'x 348, 352 (4th Cir. 2013); *Boyd v. Guiterrez*, 214 F. App'x 322, 323 (4th Cir. 2007).

## IV.   DISCUSSION

### A.   Motion to Dismiss Claims of Sex Discrimination, Age Discrimination, and Retaliation

Laber's sex discrimination, age discrimination, and retaliation claims merit dismissal because Laber fails to plead facts sufficient to create a plausible inference that he was denied the vacant supervisory position as a result of his age or sex, that his non-selection was retaliation for prior protected activity, or that his employer retaliated against Laber following his filing of a complaint alleging discrimination during the selection process for the vacant supervisory position.

### 1.   Discrimination Based on Sex

Laber alleges that he was not selected for the vacant supervisory position because of his sex, in violation of Title VII. To make out a prima facie case of employment discrimination for failure to hire in the absence of direct evidence of discrimination, Laber must show that: (1) he "is a member of [a] protected class;" (2) "the employer had an open position for which [he] applied or sought to apply;" (3) he "was qualified for the position;" and (4) he "was rejected under the circumstances giving rise to an inference of unlawful discrimination." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin*., 780 F.3d 582, 584 (4th Cir. 2015). "In the context of a Title VII case, an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss," but he is "'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (cleaned up).

The Amended Complaint fails to allege facts from which the Court may plausibly infer the fourth *prima facie* factor—that Laber "was rejected under the circumstances giving rise to an inference of unlawful discrimination." *See McCleary-Evans*, 780 F.3d at 584. Laber alleges that his sex "was a significant factor" in the NGA's hiring decision because the NGA preferred hiring women over men. Am. Compl. ¶¶ 25, 111. But Laber does not plead facts sufficient to support such a conclusion. Laber asserts that "[s]ix of the nine female applicants were selected for interview and two females were selected" for the vacant supervisory position. *Id.* ¶ 38. He alleges that the first and second selectees were women and identifies a third woman who he alleges was selected to interview for the position. *Id.* ¶¶ 40, 49, 53. He further alleges that he had more supervisory experience and was more educated that the two selectees, and that he had more DAWIA certifications and more JDAs than the second selectee, Ms. Ladson. *Id.* ¶¶ 40–51.

These allegations do not provide a basis from which the Court can infer that Laber's non-selection was the result of sex-based discrimination. Laber does not, for instance, identify the gender breakdown of the total applicant pool, of those selected to be interviewed, or of the individuals on the selection panel. Nor does he allege that any of the selection panel members (as opposed to Defendant employer more generally) held a preference for hiring women over men. Other than the requirement of "writing experience," the Amended Complaint is also devoid of any details about the qualifications of the particular position for which Laber applied. *See* Am. Compl. ¶ 52. Without more, Laber's allegations—that (1) some of those selected to interview for the vacant position were women; (2) the two applicants ultimately selected for the position were women; and (3) Laber had more years of working or supervisory experience and more education than the two individuals ultimately selected—are not enough to raise his claim of sex discrimination above the speculative level. *See McCleary-Evans*, 780 F.3d at 585. Indeed, Laber's

14

allegation that there was a cutoff score by which applicants were assessed leads to the plausible inference that Laber's non-selection was the result of a measured process and that he received a cutoff score below that of the applicants selected for an interview. *See* Am. Compl. ¶ 36. Laber's claims of sex discrimination are insufficient to state a claim under Rule 12(b)(6). Accordingly, the Court **GRANTS** Defendant's motion to dismiss the claim of sex discrimination and **DISMISSES** the claim of sex discrimination.

### 2.   Discrimination Based on Age

The Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), "prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age because of the person's age." *EEOC v. Balt. Cty.*, 747 F.3d 267, 272 (4th Cir. 2014). A plaintiff is not required to plead a prima facie case of age discrimination to survive a motion to dismiss, but he must "allege facts to satisfy the elements of a[n] [ADEA] cause of action." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020) (citing *McCleary-Evans*, 780 F.3d at 585). A plaintiff must therefore allege facts from which the Court can infer that he is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age. *Song v. Becerra*, No. 20-1554, 2021 WL 3732961, at *1 (4th Cir. Aug. 24, 2021).

As a 68-year-old man at the time he applied for the position, Am. Compl. ¶ 4, Laber falls within the ambit of the ADEA. *See* 29 U.S.C. § 631(a). But he fails to allege any facts that would support a plausible inference that he was not selected for the vacant supervisory position because of his age. Laber only alleges that "he was the oldest applicant and significantly older than the selectee and all other applicants" who were considered for the position. Am. Compl. ¶ 84. Laber does not make any allegations as to the specific ages of any other applicants, the age gap between Laber and the selectees or the other applicants selected to interview. Nor does Laber identify the

ages of the selection panelists. The Amended Complaint is completely devoid of facts from which this Court can infer his non-selection was plausibly the result of age discrimination. Accordingly, the Court **GRANTS** Defendant's motion to dismiss the claim of age discrimination and **DISMISSES** the claim of age discrimination.

### 3. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must allege that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Coleman*, 626 F.3d at 190. With respect to the causal link, a prima facie showing is made by demonstrating either (1) the retaliation closely followed the protected activity, or (2) the plaintiff put forth a sufficient explanation for the delay between the protected activity and the alleged retaliation. *Reardon v. Herring*, 489 F. Supp. 3d 782, 784 (E.D. Va. 2016). As with both sex discrimination and age discrimination, a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, but the factual allegations must be enough to raise a right to relief above the speculative level. *Id.*

Laber claims that Defendant retaliated against him (1) because he was not selected for the vacant supervisory position due to his history of protected EEO activity unrelated to the non-selection at issue here, and (2) because, after he filed a complaint to the NGA alleging discrimination in his non-selection, various individuals "fail[ed] to provide records," "provid[ed] false or vague information in their declarations," and "provid[ed] false or incomplete information to the investigator" as retaliation. *See* Am. Compl. ¶¶ 81–83. Regarding the first alleged instance of retaliation, Laber offers no particularized allegations regarding his prior EEO activity or the temporal proximity of that prior activity to his non-selection such that the Court can infer a causal

link between that activity and his non-selection. Regarding the second alleged instance of retaliation—that individuals retaliated against Laber after he filed a discrimination complaint regarding his non-selection by failing to provide records and providing false or vague information in their declarations," Am. Compl. ¶ 81; *see also id.* ¶¶ 82–83—Laber does not allege what adverse action he suffered as a result of this alleged conduct. Laber thus fails to allege facts sufficient to infer the second element of a *prima facie* case of retaliation. Nor does Laber plead any temporal connection between the filing of his complaint with the subsequent conduct by these various individuals, and thus fails to sufficiently allege facts to infer the third element of a *prima facie* case of retaliation. Accordingly, the Court **GRANTS** Defendant's motion to dismiss the claim of retaliation and **DISMISSES** the claim of retaliation.

## B.  MOTION FOR SUMMARY JUDGMENT ON RELIGIOUS DISCRIMINATION CLAIM

Having dismissed the claims of sex discrimination, age discrimination, and retaliation under Rule 12(b)(6), the only remaining claim in the Amended Complaint alleges that Defendant discriminated against Laber based on his religion when it did not select him for the supervisory position. Defendant has not moved to dismiss the religious discrimination claim, but has moved, in the alternative, for entry of summary judgment in its favor on all claims, including religious discrimination.

### 1.  Evidentiary Burden

A plaintiff may prove religious discrimination under Title VII through direct or circumstantial evidence. *U.S. Postal Serv. Bd. Of Gov'rs v. Aikens*, 460 U.S. 711, 714 n.3 (1983). Absent direct evidence, a plaintiff may establish discrimination through the *McDonnell Douglas* burden-shifting scheme. In the failure-to-hire context, a plaintiff must first establish a *prima facie* case of discrimination by establishing by a preponderance of the evidence that: (1) he is a member

17

of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). If a plaintiff establishes a prima facie case of discrimination, the defendant must then articulate "a legitimate, non-discriminatory reason for its adverse employment decision." *Laber*, 438 F.3d at 430. If the defendant proffers a legitimate reason, the plaintiff must then show that the articulated reason is a pretext for discrimination. *Id.*

### 2.    Plaintiff's Conflicting Affidavits

Relying on the record produced during the course of the NGA and EEOC OFO investigation of Laber's claims of discrimination, Defendant argues that summary judgment is appropriate here because there is no genuine dispute of material fact and Defendant's legitimate reason for not selecting Laber for the position stands unrebutted. As to direct evidence of religious discrimination, Laber alleges in his Amended Complaint that in October 2013, one of the selection panelists for the position, Ms. Verndon, "advised Plaintiff that the reason he was not interviewed was because the panel decided that Plaintiff would never be selected because of his religiously motivated dress and grooming, specifically his skullcap and untrimmed beard." Am. Compl. ¶ 73. Defendant argues that Laber's sworn testimony during the administrative proceedings directly contradicts this allegation. *See* Def. Mem. at 21–23. Specifically, Laber made the following statements in his July 2014 Declaration—after the October 2013 conversation between Ms. Verndon and Laber is alleged to have occurred:

Q. How did agency officials discriminate against you in the selection process? What did they do to discriminate against you?

R. . . . Where is the smoking gun? Was it one person? More than one person? Ill feelings? My religion, age, or sex? *You'll have to talk to them because I can't cite overt comments made to me. They have not notified me that I am too old, or too*

18

*Jewish, to my face. At this time I don't have any witnesses who will say that they made comments about my age, religion, or sex.*

. . .

Q. Have agency officials explained why they treated those individuals differently based on **AGE** with respect to the selection action?

R. No, they don't talk to me about their selections. . . . *I did not speak with any agency officials about this selection action*; I knew how it turned out so I didn't talk to anyone. It was not appropriate for me, for my religion, or for my person to go and question them about how the selection turned out. I would not accuse anyone of Title VII discrimination to their face. I think that would be inappropriate.

. . .

Q. Have agency officials explained why they treated those individuals differently based on **RELIGION**?

R. *I did not have any conversations with agency officials about how my religion played into the selection action because I never discussed the selection with anyone of them.*

Ex. 2 to Def. Mem. (Dkt. No. 19-2) (emphasis added) at 7, 9, 10. Defendant argues that because

Laber's allegation is contradicted by his July 2014 Declaration, his claims cannot be sustained at

the summary judgment stage, Def. Mem. at 22 (citing *Chappell v. Sch. Bd. Of City of Va. Beach*,

F. Supp. 2d 509, 517–18 (E.D. Va. 1998)), and that there is no genuine issue of material fact where

the "'only issue of fact is to determine which of the two conflicting versions of the plaintiff's

testimony is correct,'" *id.* (citing *Jessup v. Barnes Grp.*, 23 F.4th 360, 367 (4th Cir. 2022)).

In response, Laber argues that the record supports both direct and circumstantial evidence

of religious discrimination. *See, e.g.*, Opp. at 32. To support his allegation that Ms. Verndon

"admitted in a meeting with Plaintiff that the panel determined it did not want to interview Plaintiff

because it had no intention of selecting him based on his religious observances," Laber cites only

to an affidavit that he has attached to his Opposition. *See* Ex. 1 to Opp. ("June 2022 Affidavit")

(Dkt. No. 23-1). In that affidavit, Laber provides additional details surrounding the alleged conversation with Ms. Verndon.

Laber concedes that he did not disclose the remarks allegedly made by Ms. Verndon in either his July 2014 Declaration made during the administrative proceedings or in his original complaint filed in this action. *See* June 2022 Aff. at 1. He also failed to raise this purported conversation at any point during the more than eight years between the filing of his informal complaint with NGA in November 2013 until the filing of his Amended Complaint in this action in January 2022. Not only did he *fail to raise* the conversation at any point prior to his Amended Complaint, but his July 2014 affidavit *affirmatively contradicts* the testimony in his new affidavit. Laber's July 2014 Declaration states that he cannot "cite overt comments made," that "[t]hey have not notified me that I am . . . too Jewish, to my face," and that he "did not have any conversations with agency officials about how my religion played into the selection action." Ex. 2 to Def. Mem. at 13, 16. Laber's only explanation for failing to raise this conversation is that "either [he] simply forgot about the event entirely during the administrative phase" or he "chose not to reveal it at that time for some reason that [he] cannot recall." June 2022 Aff. at 2. These unsupported assertions cannot form the basis of a genuine issue of material fact in dispute.

Nor can Laber manufacture a genuine dispute of material fact by attaching a new affidavit to his Opposition to Defendant's Motion for Summary Judgment that directly contradicts his previously-sworn testimony during the administrative proceedings. Indeed, "[i]t is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (cleaned up); *see also S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 273 n.12 (4th Cir. 1998) (a party's "later denial of her [earlier] statements does not create a genuine

issue of a material fact"); *Kinser v. United Methodist Agency*, 613 F. App'x 209, 210 (4th Cir. 2015) (at summary judgment, "if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit"); *Tatum v. Southern Co. Servs., Inc.*, 392 F. Supp. 3d 689, 698 (E.D. Tex. 2018) (striking portions of plaintiff's affidavit at summary judgment stage because statements were conclusory and contradicted earlier affidavit). Here, the statements made in Laber's June 2022 Affidavit regarding the conversation with Ms. Verndon directly contradict the statements made in his July 2014 Declaration that he never spoke to any of the selection panelists regarding his selection. Because Laber's June 2022 Affidavit directly contradicts the statements made in his July 2014 Affidavit, and because Laber has failed to provide a reasonable explanation for this inconsistency, the Court will strike Laber's June 2022 Affidavit in considering Defendant's Motion for Summary Judgment.

### 3. Plaintiff's Religious Discrimination Claim

Having stricken the June 2022 Affidavit, the Court finds that there is no evidence in the record of direct religious discrimination. The Court also finds that Laber fails to establish a prima facie case for religious discrimination. Specifically, the record lacks evidence to support the conclusion that Laber was rejected under circumstances giving rise to an inference of unlawful discrimination—the fourth element of a *prima facie* case of discrimination. Laber has not shown that he was treated less favorably than a member outside of his protected class. The selection panelists attested that religion did not factor into Laber's non-selection. Ex. 7 to Def. Mem. at 8; Ex. 11 to Def. Mem. at 6; Ex. 12 to Def. Mem. at 7; Ex. 14 to Def. Mem. at 5–6; Ex. 10 to Def. Mem. at 5. While one member of the selection panel believed Ms. Eichelberger to be Catholic, there is no other evidence of her or other applicants' religious beliefs. Indeed, the panel was largely unaware of the religious beliefs of the other applicants. *See* Ex. 7 to Def. Mem. at 6; Ex. 11 to

Def. Mem. at 6–7; Ex. 12 to Def. Mem. at 5–6. Additionally, several members of the selection panel attested that they had promoted individuals who were Jewish in supervisory roles at the NGA. *See* Ex. 10 to Def. Mem. at 8; Ex. 7 to Def. Mem. at 11; Ex. 17 to Def. Mem. at 3–4; Ex. 12 at 9. With no other evidence, Laber cannot establish that an individual outside of his protected class was given more favorable treatment.

### 4. Plaintiff's 56(d) Request

Laber also moves under Federal Rule of Civil Procedure 56(d) for "the opportunity to conduct discovery for information essential to oppose Defendants motions to dismiss and summary judgment." Opp. at 2–3. Given the thoroughness of the investigation during the administrative proceedings and the robust record produced during those proceedings, the Court denies Laber's 56(d) request. *See, e.g.*, *Amirmokri*, 266 F. App'x at 282; *Volochayev*, 513 F. App'x at 352. Additional discovery regarding any purported meeting between Ms. Verndon and Laber would be unlikely to create a genuine issue of material fact, given that the only material issue at this stage results from Laber's two conflicting sworn statements. And Laber has already received during the administrative investigation much of the information he allegedly needs, including records and applications packages for the position, testimony from the selection panelists and HR personnel, and demographic information regarding the applicants. *See* Opp. at 3. Where "the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment," this Court may deny a Rule 56(d) motion. *See Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014). The Court therefore denies Laber's Rule 56(d) request.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (Dkt. No. 18) is **GRANTED**, and the allegations of age and sex discrimination and retaliation are **DISMISSED**. The Court

**GRANTS** Defendant's Motion for Summary Judgment as to the sole remaining claim alleging religious discrimination and enters judgment in favor of Defendant on the claim of religious discrimination.

It is **SO ORDERED**.

*        *        *

Should Plaintiff wish to appeal this Memorandum Opinion and Order, Plaintiff must file a written notice of appeal with the Clerk of this Court within thirty (30) days of the date of the entry of this Memorandum Opinion and Order. A written notice of appeal is a short statement stating a desire to appeal an order and identifying the date of the order plaintiff wants to appeal. Failure to file a notice of appeal within the stated period may result in the loss of the right to appeal.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record and plaintiff *pro se*, and close this civil action.

_____ /s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
March 20, 2023

23